UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re | Chapter 11 Case |
| ADELPHIA COMMUNICATIONS CORP., et al., a Delaware corporation, | Case No. 02-41729(REG) |
| Debtors. | |
| ADELPHIA RECOVERY TRUST, | CIVIL ACTION FILE |
| Plaintiff, | NO. 07 CIV. 11152(LMM) |
| v. | (Related to 03 MDL 1529(LMM) and 05 Civ. 9050(LMM) |
| PRESTIGE COMMUNICATIONS OF NC, INC., et al. | |
| Defendants. | |

## DEFENDANTS' BRIEF IN OPPOSITION TO MOTION TO WITHDRAW THE REFERENCE

Dated: December 17, 2007.

TROUTMAN SANDERS LLP
HARRIS B. WINSBERG (Pro Hac Vice Pending)
(Ga. Bar No. 770892)
DOUGLAS E. ERNST (Pro Hac Vice Pending)
(Ga. Bar No. 2449956)
Bank of America Plaza, Suite 5200
600 Peachtree Street, N.E.
Atlanta, Georgia 30308-2216
Telephone No.:    (404) 885-3000
Facsimile No.:    (404) 885-3900

*Counsel for Prestige Communications of N.C., Inc., et al.*

# **TABLE OF CONTENTS**

I.    FACTUAL BACKGROUND .................................................................................. 1

   A.    The Rule 30(b)(6) Dispute ....................................................................... 3
   B.    Plaintiff Sues Defendants to Stay Discovery ........................................... 4
   C.    The Parties' First Motions to Compel ...................................................... 4
   D.    Plaintiff's Motion for Leave to Amend the Complaint ............................ 6
   E.    The Parties' Second Motions to Compel .................................................. 6
   F.    The Scheduling Orders Entered in this Case ............................................ 7
   G.    Discovery Efforts .................................................................................... 8

II.   ARGUMENT AND CITATION OF AUTHORITIES ....................................... 9

   A.    Applicable Legal Standard ....................................................................... 9
   B.    Plaintiff's Motion Does Not Meet the Timeliness Threshold, and Thus Should Be Denied. ...........................................................................................9
   C.    Plaintiff Has Failed to Show Cause for Withdrawing the Reference, and Thus the Motion Should Be Denied. ....................................................... 16

     1.    This Case is a Core Proceeding .................................................... 17
     2.    Judicial Economy, Potential for Delay, Cost to the Parties, and Uniformity of Bankruptcy Administration All Strongly Weigh in Favor of Denying Plaintiff's Motion ............................................. 19
     3.    Plaintiff's Motion Is a Veiled Attempt at Judge Shopping .......... 24

III.  CONCLUSION ................................................................................................... 25

## <u>TABLE OF AUTHORITIES</u>

### FEDERAL CASES

*In re Adelphia Communs. Corp. Sec. & Derivative Litig.*, No. 03-MDL-1529
   (LMM), 2006 U.S. Dist. LEXIS 8700 (S.D.N.Y. 2006)............................11, 16, 17, 24

*In re Adelphia Communs Corp. v. Bank of America*, No. 02-41729, 365 B.R. 24
   (Bankr. S.D.N.Y. 2007) ...........................................................................................22

*Amerada Hess Corp. v. Enron Corp.*, No. 03 Civ. 5288 (DC), 2004 U.S. Dist.
   LEXIS 19123 (S.D.N.Y. Sept. 24, 2004) ...................................................................25

*In re Baldwin United Corp.*, 43 B.R. 888 (S.D. Ohio 1984) ............................................10

*In re Bennett Funding Group, Inc.*, 367 B.R. 269 (N.D.N.Y. 2007)................................19

*Burger King Corp., v. B-K of Kansas, Inc.*, 64 B.R. 728 (D. Kan. 1986) ........................10

*Connolly*, 1996 U.S. Dist. LEXIS 8059.............................................................................10

*Connolly v. Biderman Indust. USA, Inc.*, No. 95 Civ. 1791, 1996 U.S. Dist.
   LEXIS 8059 (S.D.N.Y., June 13, 1996) .......................................................................9

*Davis v. Mahlmann*, 149 B.R. 866 (N.D. Ill. 1993).........................................................10

*In re Enron*, No. 04-7693 (RJH), 2004 U.S. Dist. LEXIS 25259 (S.D.N.Y. Dec.
   14, 2004) .................................................................................................................24, 25

*Enron Wind Energy Systems, LLC v. Marathon Elec. Man. Corp.*, No. 04 Civ.
   7950 (NRB), 2005 U.S. Dist. LEXIS 2132 (S.D.N.Y. Feb. 15, 2005) ......................17

*Horwitz v. Alloy Automobile Co.*, 992 F.2d 100 (7th Cir. 1993) ......................................19

*Kester v. Shouse*, No. 05-2121-KHV, 2005 U.S. Dist. LEXIS 23066 (D. Kan.
   Oct. 7, 2005) ..............................................................................................................25

*In re Men's Sportswear, Inc.*, 834 F.2d 1134 (2d. Cir. 1987)............................................19

*Mishkin v. Ageloff (In re Adler, Coleman Clearing Corp.)*, 270 B.R. 562
   (S.D.N.Y. 2001)...........................................................................................................19

*In re Orion Pictures Corp.*, 4 F.3d 1095 (2d Cir. 1993)...............................................17, 19

*In re Ranch 1, Inc.*, No. 02 Civ. 4417 (WK), 2002 U.S. Dist. LEXIS 18264
(S.D.N.Y. Sept. 27, 2002) ..............................................................................17

*In re Rickel & Associates Inc.*, 2003 U.S. Dist. LEXIS 23136 ..........................................16

*In re Rickel & Associates  Inc.*, No. 03-7236, 2003 U.S. Dist. LEXIS 23136
(S.D.N.Y., Dec. 24, 2003) ...............................................................................9

*Seaway Painting*, 1998 U.S. Dist. LEXIS 18629 ...........................................................18

*Seaway Painting v. Cornell & Co.*, No. 98-158, 1998 U.S. Dist. LEXIS 18629
(E.D. Pa. Nov. 16, 1998) .................................................................................17

*In re Texaco, Inc.*, 84 B.R. 911 (Bankr. S.D.N.Y. 1988) ..........................................9, 10

*United States v. Kaplan*, 146 B.R. 500 (D. Mass. 1992) .............................................13

*Vista Metals Corp. v. Metal Brokers Intern. Inc.*, 161 B.R. 454 (E.D. Wis. 1993) .....10, 16

## DOCKETED CASES

*In re Adelphia Communications Corp., et al.*, Adv. Proc. No. 03-4942 (REG) .................9

*In re Adelphia Communs. Corp.*, Adv. Proc. No. 04-03293 (CGM) ...................................1

*Adelphia Communs Corp. v. Dibbern, et al.*, Adv. Proc. No. 06-01355 (REG) .................4

*Adelphia v. Rigas*, Adv. Proc. No. 02-8051 (Bankr. S.D.N.Y.) ........................................18

## FEDERAL STATUTES

28 U.S.C. § 157(b)(2)(H) ...................................................................................17

28 U.S.C.§ 157(b)(3) .........................................................................................17

28 U.S.C. § 157(c)(2) .........................................................................................19

Under 28 U.S.C. § 157(d) ..............................................................................9-11, 16

## I.    <u>PRELIMINARY STATEMENT</u>

Plaintiff seeks to withdraw the reference of this case, which has been before Judge Morris for almost two years.  Judge Morris is deeply involved in the facts of this case due to the painstaking analysis she has devoted to resolving discovery disputes.  An example is her analysis in an order just entered sanctioning Plaintiff for a failure to produce documents.[1]  Plaintiff does not criticize Judge Morris' administration of the case.  Indeed, Plaintiff writes, "The Trust has great respect for the manner in which Judge Morris and Judge Gerber have administered the Adversary Proceedings."  Generally, parties to a case want to continue to have their case adjudicated by an outstanding jurist, like Judge Morris, who has gained great familiarity with the case.  Furthermore, the efficient administration of justice would compel leaving the case with her, so that the District Court or the Magistrate Judge will not have to expend prodigious effort to replicate her knowledge of the facts and the bankruptcy issues.

Plaintiff seeks withdrawal based on alleged overlapping issues in the Prestige Case and in the other litigation.  However, this is not true as the Prestige Case is essentially an action for fraudulent conveyance based on a pre-bankruptcy sale of cable systems by certain Defendants to Adelphia.  Plaintiff does not contend that the total purchase price of $1.1 billion is too much. Rather, Plaintiff takes issue with the allocation of the purchase price.  This allocation is not the subject of scrutiny in the Bank Case or the FPL Case.  Because Plaintiff fails to show that its motion is timely or that there is cause for granting it, its motion should be denied.

## II.    <u>FACTUAL BACKGROUND</u>

On June 24, 2004, Adelphia Communications Corporation ("Adelphia"), Adelphia Cablevision L.L.C. ("Adelphia Cablevision") and the Official Committee of Unsecured Creditors

---

[1] *See* In re Adelphia Communs. Corp., Adv. Proc. No. 04-03293(CGM), Order Granting Sanctions to Defendants for Plaintiff's Failure to Produce Documents, dated December 14, 2007 (Doc. No. 114).  This matter was under advisement at the time Plaintiff filed the withdraw motion.

of Adelphia Communications Corporation, *et al.* (the "Committee")(collectively, "Plaintiff") filed a complaint (the "Complaint") against Prestige Communications of NC, Inc., Jonathan J. Oscher, Lorraine Oscher McClain, Robert F. Buckfelder, Buckfelder Investment Trust, and Anverse, Inc. (collectively, the "Defendants") in the United States Bankruptcy Court for the Southern District of New York (the "Prestige Case").  In the Complaint, Plaintiff asserted three claims for relief:  a constructive fraudulent transfer claim either under Pennsylvania or Georgia law; an intentional fraudulent transfer claim either under Pennsylvania or Georgia law; and an aiding and abetting breach of fiduciary duty claim.  Plaintiff did not demand a jury trial.

On the same day, June 24, 2004, the Committee filed a motion for order approving a stipulation among the Debtor and the Committee authorizing the Committee to prosecute claims against Florida Power & Light ("FPL") and the Defendants (the "Standing Motion") (See Case No. 02-41729, Doc. No. 5417).  On July 14, 2004, the Bankruptcy Court granted the Standing Motion, thereby authorizing the Committee to proceed against FPL and Defendants. (Doc. No. 5540).[2]

By way of background, Prestige Communications, Inc. ("Prestige Georgia") and Prestige Communications of NC, Inc. ("Prestige NC") (collectively, the "Corporation") owned cable systems in Georgia, North Carolina, Virginia and Maryland, with Prestige Georgia owning the cable systems in Georgia and Prestige NC owning the cable systems in the other three states.  In the fall of 1999, the Corporation's owners decided to sell all of the cable systems.  After extensive marketing, Adelphia and Comcast submitted bids.  The Adelphia bid, via letter dated November 5, 1999, proposed to purchase 100% of the assets of Prestige NC and 100% of the stock of Prestige Georgia for $1.1 billion.

---

[2] For ease of reference, Defendants have filed a declaration attaching the Sanctions Order, the Standing Motion, the Standing Order, correspondence between the parties, the joint submission on moving for summary judgment, and the Bankruptcy Court transcripts as Exhibits A through N.

On December 6, 1999, Adelphia entered into an Asset Purchase Agreement and a Stock Purchase Agreement, wherein approximately $795 million of the $1.1 billion purchase price was allocated to the assets of Prestige NC and approximately $300 million was allocated to the stock of Prestige Georgia. The remaining approximately $5.0 million was allocated to the real estate sold to Adelphia as part of the transaction. On July 5, 2000, the sale closed. Thereafter, unbeknownst to Defendants, Adelphia alleges that it resold the stock of Prestige Georgia to Highland Prestige Georgia, a company allegedly controlled by the Rigas Family, for approximately $300 million. The crux of Plaintiff's claims is that following the acceptance of Adelphia's $1.1 billion offer, the Rigases caused the price of the Prestige NC assets to be inflated relative to the price of the Prestige Georgia stock, so that the purchase price of the Prestige Georgia systems sold to the Rigas Family would be substantially discounted from the amount Adelphia paid. Plaintiff further alleges that Defendants aided and abetted the Rigases in this alleged misconduct.

## A.   The Rule 30(b)(6) Dispute

On November 6, 2005, the Defendants served Rule 30(b)(6) deposition notices on Adelphia and Adelphia Cablevision. Plaintiff objected to the notices and submitted a letter to the Bankruptcy Court on December 21, 2005, requesting a pre-motion conference, and seeking to obtain a protective order quashing the Rule 30(b)(6) notices in their entirety. On January 3, 2006, Defendants submitted a letter to the Bankruptcy Court in response to Plaintiff's letter.

In January 2006, this case was transferred from the Honorable Robert E. Gerber to the Honorable Cecelia G. Morris. On February 3, 2006, Judge Morris conducted a hearing on Plaintiff's request to quash Defendants' Rule 30(b)(6) notices. At that hearing, Judge Morris denied Plaintiff's request and ordered the parties to meet and confer about each of the topics.

(Feb. 3, 2006 Trans., p. 19). Under Judge Morris' direction, the parties ultimately agreed to a list of topics and set a date for the deposition.

**B.**      <u>Plaintiff Sues Defendants to Stay Discovery</u>

Prior to the taking of the Rule 30(b)(6) depositions, on March 16, 2006, Adelphia filed an adversary proceeding in the United States Bankruptcy Court for the Southern District of New York, in a case styled *Adelphia Communs Corp. v. Dibbern, et al.*, Adv. Proc. No. 06-01355 (REG). There, Adelphia sought a stay of discovery in, among other cases, the Prestige Case. On March 29, 2006, Judge Gerber entered an order granting Adelphia's request for a stay of discovery, effective for thirty (30) days. This order prohibited Defendants from going forward with their Rule 30(b)(6) depositions in April 2006. On August 9, 2006, Judge Gerber extended the stay in the Prestige Case until September 4, 2006. The order, however, authorized the parties to confer on submitting a proposed scheduling order to Judge Morris in light of the stay.

**C.**      <u>The Parties' First Motions to Compel</u>

On September 4, 2006, Judge Gerber's stay of discovery in this case expired. The next day, Plaintiff filed a motion to compel the production of documents ("Plaintiff's First Motion to Compel"), seeking documents listed on Defendants' privilege log. (Doc. No. 29). On September 14, 2006, Defendants filed a motion to compel the production of documents ("Defendants' First Motion to Compel"), seeking the following relief: (a) the production of documents outside of the 1999-2001 time frame; (b) a ruling that the electronic database that Adelphia made available to the Defendants was not a production under Rule 34(b) of the Federal Rules of Civil Procedure; (c) the production of handwritten notes of Adelphia board meetings; (d) drafts of board meeting minutes; and (e) a finding that Adelphia waived privilege by failing to provide a privilege log. (Doc. Nos. 33 & 34).

On October 18, 2006, Judge Morris conducted an informal conference regarding Plaintiff's First Motion to Compel and Defendants' First Motion to Compel. Judge Morris found that the electronic database Adelphia provided was not a production under Rule 34(b), because it was not thoroughly indexed. Judge Morris further ordered the parties to meet and confer on the issues raised in Plaintiff's First Motion to Compel and Defendants' First Motion to Compel.

Thereafter, Judge Morris held an informal discovery conference on November 16, 2006, and held a hearing on the pending motions to compel on December 13, 2006. At the December 13, 2006 hearing, Judge Morris ruled that Adelphia's creation of a new database for the Defendants was a production under Rule 34(b), but ordered the parties to meet and confer if the Defendants could not locate certain documents. (Dec. 13, 2006 Trans., pp. 7-12). Judge Morris further ordered the parties to present joint submissions on the Defendants' privilege log and on whether Plaintiff waived privilege with respect to certain PriceWaterhouseCoopers ("PWC") forensic documents by January 17, 2007. (Dec. 13, 2006 Trans., pp. 33 & 43-46).

On January 17, 2007, the parties submitted to Judge Morris a joint submission on Defendants' privilege log and on Plaintiff's privilege assertion in certain PWC forensic documents, which was docketed later. (Doc. Nos. 51 & 66). On February 21, 2007, Judge Morris orally ruled on Plaintiff's First Motion to Compel (Feb. 21, 2007 Trans., pp. 31-35), making findings in favor of both parties, but not requiring the Defendants to revise their privilege log. On April 3, 2007, Judge Morris entered an order consistent with her ruling. (Doc. No. 63).

On May 16, 2007, Judge Morris orally ruled that Plaintiff waived privilege with respect to PWC forensic documents (May 16, 2007 Trans., pp. 9-28), and on May 25, 2007, entered a consistent written order. (Doc. No. 68).

- 5 -

**D.**    <u>**Plaintiff's Motion for Leave to Amend the Complaint**</u>

On January 2, 2007, Plaintiff filed a motion for leave to amend their complaint (Doc. No. 46), and on February 15, 2007, Defendants filed an objection (Doc. No. 48).  On March 21, 2007, Judge Morris orally granted Plaintiff's motion, stating "it is important to emphasize nothing in this ruling constitutes a factual finding in the case, except that the amended complaint should be permitted and is sufficient to state a prima facie cause of action, or causes of action." (Mar. 21, 2007 Trans., p. 10).  Judge Morris also noted that "the Court may agree with the defendants when they suggest that perhaps the amended complaint is less forceful than the original."  On March 22, 2007, Judge Morris entered an order consistent with her oral ruling. (Doc. No. 59).  On March 26, 2007, Plaintiff filed its amended complaint, which Defendants timely answered on April 20, 2007.  (Doc. Nos. 60 & 65).

**E.**    <u>**The Parties' Second Motions to Compel**</u>

On September 24, 2007, the Defendants filed their second motion to compel production of documents ("Defendants' Second Motion to Compel") (Doc. No. 77), seeking: (i) unredacted transcripts of the independent directors taken in the *Adelphia v. Deloitte* case, (ii) the complete corporate minute books of Highland Prestige Georgia, Inc. and Prestige Communications, Inc., and (iii) documents relating to Adelphia acquisitions made in 1999 and 2000.  On October 4, 2007, Plaintiff filed its second motion to compel the production of documents ("Plaintiff's Second Motion to Compel") (Doc. No. 80), essentially seeking the Defendants' individual federal and state tax returns for 1999 and 2000.

On October 17, 2007, at a hearing on Defendants' Second Motion to Compel, Judge Morris ordered Plaintiff to produce the independent director transcripts in unredacted form from the *Deloitte* case, the corporate minute books for Highland Prestige and Prestige Communications, and ordered the parties to meet and confer on the documents relating to

Adelphia acquisitions made in 1999 and 2000.  (Oct. 17, 2007 Trans., pp.14-22, 32 & 37-39).

Judge Morris reserved ruling on whether to grant fees and expenses.  On October 19, 2007,

Judge Morris entered a written order consistent with her oral ruling.  (Doc. No. 92).

On October 24, 2007, Judge Morris held a hearing where the parties agreed to the scope

of the documents Plaintiff would have to produce with respect to Adelphia acquisitions made in

1999 and 2000.  (Oct. 24, 2007 Trans., p. 10).  Judge Morris requested that the Defendants

inform the Bankruptcy Court in writing when all of the transaction documents are produced.  To

date, Defendants have not received all of the transaction documents.

Judge Morris entered on November 30, 2007, a consent protective order, which resolved

Plaintiff's Second Motion to Compel.  (Doc. No. 104).  At the October 24, 2007 hearing, Judge

Morris also requested that Defendants file an affidavit outlining the time and expense for

bringing the Second Motion to Compel.  (Oct. 24, 2007 Trans., pp. 16-19).  On November 7,

2007, Defendants filed their affirmation (Doc. No. 99), and on December 14, 2007, Judge Morris

entered an order sanctioning Plaintiff.  (Doc. No. 114).

At the request of Plaintiff, on November 1, 2007, Judge Morris held an additional hearing

related to four (4) legal memorandums that were included in the corporate minute books that

were ordered to be produced.  At that hearing, while Judge Morris did not rule these legal

memorandum were privileged, Judge Morris did rule that they did not have to be produced

because they were irrelevant to the litigation.  (Nov. 1, 2007 Trans., pp. 6-10).

**F.**    **The Scheduling Orders Entered in this Case**

On October 20, 2004, the parties filed with the Bankruptcy Court a Report of Proposed

Discovery Plan pursuant to Federal Rule of Civil Procedure.  (Doc. No. 14).  In this Report, the

parties agreed to certain deadlines to complete fact and expert discovery.  Pursuant to the Report,

the parties exchanged Rule 26(a)(1) disclosures on October 21, 2004.  On August 24, 2005, the

Bankruptcy Court entered the First Amended Scheduling Order in this case.  (Doc. No. 18).  The stated purpose of the First Amended Scheduling Order is "to coordinate discovery in this action with discovery in the adversary proceeding *Adelphia Communs Corp, et al. v. Bank of America, N.A., et al.*, Adv. Pro. No. 03-04942 (REG), which is also pending in the above-captioned bankruptcy proceeding . . . ."  (the "Bank Case") (First Am. Scheduling Order at p. 1).

Subsequently, on September 27, 2006 and January 31, 2007, the parties entered into the Second and Third Amended Scheduling Orders, respectively.  Neither subsequent scheduling order mentioned any coordination of discovery with the Bank Case.  (Doc. Nos. 37, 47).

On June 12, 2007 and October 30, 2007, the parties entered into the Fourth and Fifth Amended Scheduling Orders, respectively, which, like all the prior scheduling orders with the exception of the first one, did not mention any coordination of discovery with the Bank Case. (Doc. Nos 71, 97).  The Fifth Amended Scheduling Order—the current and final scheduling order in this case—provides for fact discovery to conclude on March 15, 2008.  And regarding this Order, Judge Morris specifically noted that "[w]e're going to put it in a fifth amended, and we're going to use it, and we're going to obey that order."  (Oct. 24, 2007 Trans., pp. 7-8).

**G.    Discovery Efforts**

Except for the stay of discovery requested by Plaintiff, the parties have been in active discovery since the lawsuit was filed.  Twenty-five witnesses have been deposed so far.  As to the remaining Adelphia witnesses, three of the four independent directors at the time of the Prestige acquisition will be deposed by the end of December.  Significant document discovery is complete: Defendants have served seven requests for production of documents and Plaintiff has served three; the parties collectively have served more than thirty subpoenas requesting documents from third parties; and millions of pages have been produced.

### III.    ARGUMENT AND CITATION OF AUTHORITIES

**A.    Applicable Legal Standard.**

Plaintiff filed the Complaint as an adversary proceeding in the Bankruptcy Court for this District.  Plaintiff now seeks a permissive withdrawal of the reference of this case to the United States District Court for the Southern District of New York.[3]  Under 28 U.S.C. § 157(d), "[t]he district court may withdraw, in whole or in part, any case or proceeding referred under this section, on its own motion or on *timely motion* of any party, *for cause shown*."  (emphasis added).  Accordingly, Defendants address below whether Plaintiff's motion first meets the timeliness requirement of Section 157(d); then, assuming for the sake of argument it does (which it does not), whether Plaintiff has shown cause for granting its motion.  Defendants submit that Plaintiff fails both hurdles, and the motion should be denied.

**B.    Plaintiff's Motion Does Not Meet the Timeliness Threshold, and Thus Should Be Denied.**

The parties agree that Section 157(d) expressly requires that a motion to withdraw the reference be "timely."[4]  Indeed, timeliness is the threshold inquiry in granting or denying a motion under 28 U.S.C. § 157(d).  If a motion is untimely, it should be denied without consideration of the other elements of the motion or their merit.  *In re Texaco, Inc.*, 84 B.R. 911, 919 (Bankr. S.D.N.Y. 1988); *Connolly v. Biderman Indust. USA, Inc.*, No. 95 Civ. 1791, 1996 US Dist. LEXIS 8059, at *7 (S.D.N.Y., June 13, 1996).

"While there is no bright line test for timeliness, the motion should be made at the earliest opportunity after it is apparent that there is a basis for such a motion."  *In re Rickel & Assocs.*

---

[3]  Mandatory withdraw, under Section 157(d), is not proper here because this proceeding does not implicate non-bankruptcy federal law and Plaintiff does not allege otherwise.

[4]  (*See* Memorandum of Law of the Official Committee of Unsecured Creditors in Opposition to Defendants' Motions to Withdraw the Reference, filed by Plaintiff before this Court on January 6, 2005 regarding motions to withdraw the reference to *In re Adelphia Communications Corp., et al.*, Adv. Case No. 03-4942 (REG) (the "Opposition Memorandum" or "Opp. Memo."), pp. 18-19.) (Case No. 05-9050 (LMM); Doc No. 11).

*Inc.*, No. 03-7236, 2003 U.S. Dist. LEXIS 23136, at *5 (S.D.N.Y., Dec. 24, 2003).  Timeliness should be determined by "the particular facts of the case, including whether the moving party has a legitimate interest in the withdrawal or is merely employing 'stalling tactics' designed to prejudice [the] non-moving party."  *Vista Metals Corp. v. Metal Brokers Intern. Inc.*, 161 B.R. 454, 457 (E.D. Wis. 1993); *accord In re Texaco, Inc.*, 84 B.R. at 919.

From a practical standpoint, parties must file their motion relatively soon after the grounds giving rise to it become apparent for it to be considered timely under 28 U.S.C. § 157(d).  For example, Courts in this Circuit, as well as others, have denied motions to withdraw the reference as untimely where the parties delayed in filing by only a few months.  In fact, Plaintiff's counsel has previously presented this Court with an abundance of authority supporting this stance on timeliness,[5] and Defendants respectfully submit that authority controls the resolution of this motion.  *See, e.g., Connolly*, 1996 U.S. Dist. LEXIS 8059, at *7 (denying motion as untimely where movant waited eight months to file); *Davis v. Mahlmann*, 149 B.R. 866 (N.D. Ill. 1993) (holding motion filed one month after the complaint untimely); *Burger King Corp., v. B-K of Kansas, Inc.*, 64 B.R. 728 (D. Kan. 1986) (holding motion to withdraw reference filed ten months after the filing of a claim was "at the outer limit" of timeliness); *In re Baldwin United Corp.*, 43 B.R. 888 (S.D. Ohio 1984) (holding motion to withdraw reference was untimely, even though it was filed only 17 days after debtors filed motion that movants sought to have adjudicated by district court).

By all accounts then, under the controlling law, which Plaintiff cannot contest, Plaintiff's motion does not meet the timeliness threshold.  These facts are irrefutable:  Plaintiff filed the Complaint on June 24, 2004 in the Bankruptcy Court for the Southern District of New York; the

---

[5]  (Opp. Memo., p. 19: "Courts in this district and elsewhere have routinely held that motions to withdraw the reference must be denied as untimely where the movants had delayed several months, and or even as little as 17 days, in filing their motion.")

Bankruptcy Court granted the Committee standing on July 14, 2004; the case was administratively transferred from Judge Gerber to Judge Morris in January 2006; now, nearly two years after the case first came to Judge Morris' court and three and one-half years since Plaintiff filed the case, Plaintiff seeks to withdraw the reference and move the entire case to the District Court.  Simply put, regardless of the merits of Plaintiff's motion, of which Defendants claim there are none, the time for filing this motion has long past.

Unlike in its Opposition Memorandum to the Motions to Withdraw the Reference in the Bank Case, Plaintiff does not cite the prevailing authority on timeliness in this motion.  Instead, Plaintiff ostensibly argues that the context of this case warrants withdrawal despite the several years which have elapsed between the filing of the Complaint and this motion.  Plaintiff relies on this Court's decision in *In re Adelphia Communs. Corp. Sec. & Derivative Litig.*, No. 03-MDL-1529 (LMM), 2006 U.S. Dist. LEXIS 8700, at *11 (S.D.N.Y. 2006), as support.  (Pls. Mot., 14).  Plaintiff's reliance is misplaced, however.  Defendants respectfully submit that the Court's holding in *Adelphia* was correct, but the circumstances on which it was based are quite distinct from this case.  While it is true that in *Adelphia*, there was a two and one-half year gap between the filing of the complaint and the motions to withdraw, the Court considered the motions timely under 28 U.S.C. § 157(d) because, initially, there was a substantial and significant issue over whether the Committee had standing to file the Bank Case.  As the Court concluded, until that issue was resolved, and standing was affirmed, the complaint was essentially a proposed complaint.  Once the ruling on standing was issued, giving the complaint full effect, the defendants soon after moved to withdraw the case to the District Court; the latest motion came a mere nine weeks following the standing decision.  Thus, the Court concluded that the standing decision was the point in time from which to measure the timeliness of the motions.  *Id.* at *11.

Here, unlike *Adelphia*, Plaintiff cannot point to a pivotal date subsequent to the filing of the Complaint in this case from which it would be appropriate to measure the timeliness of its present motion. Indeed, the non-bankruptcy nature of one of Plaintiff's claims, as well as Plaintiff's standing to assert these claims, was evident from the start of this case. In fact, unlike the Bank Case, the Committee was granted standing in this case on July 14, 2004, pursuant to the Standing Motion. (Doc. No. 5540). Also, in stark comparison to *Adelphia*, the parties here have been vigorously litigating this case since its inception (with the exception of a ten-month stay of discovery requested by Plaintiff).

Nevertheless, Plaintiff asserts that "as the timetables and issues attendant to the three cases have come into ***sharper focus over the past month***, it has become abundantly evident that the overlap of legal, factual and scheduling issues among these three cases continually increases, as does the inefficiency of proceeding in three separate courts." (Pl. Mot., p. 1, emphasis added). Defendants disagree with this contention (both that there are significantly overlapping issues and that these issues have only recently come into focus).

Plaintiff's assertions of timeliness are belied by its own pleadings. For instance, Plaintiff pled issues related to the Debtors' insolvency during 1999-2000 and whether certain of the Debtors had unreasonably small capital during that time in the Bank Case (filed on July 6, 2003). (Bank Complaint, Counts 2, 4, 6, 8, 14, 16). Plaintiff pled the same issues—thereby at least tacitly acknowledging the purported overlap—in the Prestige Complaint (filed on June 24, 2004) and in the Amended Complaint (filed on March 26, 2007). Indeed, a comparison of the Bank Case and Prestige Case will show Plaintiff was aware of any alleged overlap of issues years ago; the alleged overlap has not come into "sharper focus over the past month."

Plaintiff's assertions of timeliness are also belied by its prior assertions to the District Court. Plaintiff openly admitted its awareness of the purported overlap between the cases to the Bankruptcy Court as early as June 24, 2004[6] and again on January 6, 2005 to the District Court, when Plaintiff opposed the Bank Defendants' motions to withdraw the reference.[7]

Thus, Plaintiff has had ample opportunity over the past two-plus years to bring this motion, yet it chose not to. Instead, Plaintiff waited until the eleventh hour—the final stretch of fact discovery—in the Prestige Case to file this motion. In *United States v. Kaplan*, 146 B.R. 500 (D. Mass. 1992), the court held that the IRS' motion to withdraw the reference to the bankruptcy court was untimely because it waited until the "final stretch" of litigation to file. In that case, the motion was filed a mere five months after the adversary proceeding, plus the court found that judicial economy favored withdrawal. Nevertheless, because the motion was untimely (in that it was filed five months after the complaint), the court held that the IRS sacrificed the opportunity for withdrawal through its own lack of diligence. *Id.* at 504. Compared to *Kaplan*, Plaintiff's lack of diligence in this case is even more egregious, and warrants denial of its motion.

Moreover, Plaintiff's attempt at justifying its dilatoriness lacks merit. Plaintiff argues: "First, only in the very recent past have scheduling orders been extant in all three cases—and the result is three practically simultaneous trials, nearly a physical impossibility." (Pl. Mot., p. 14). The overlap of dates in scheduling orders among the three cases hardly lends credence to a motion to rip this case out from under Judge Morris, who has been actively overseeing it for the

---

[6]  See Standing Motion at 14 (Doc. No. 5417) ("Moreover, there is substantial overlap between the claims filed by the Creditors Committee against the Debtor's former lender filed in this Court. Indeed, both cases include fraudulent conveyance claims for transactions occurring in 1999 and thereafter.").

[7]  (Opp. Memo., pp. 36-37 n.41: "Debtors and Creditors Committee have also commenced other adversary proceedings to recover for fraudulent conveyances related to some of the same financing transactions that are at issue here, *which raise many of the same insolvency and other issues that will need to be determined in this proceeding,*" emphasis added)) (referring to the Prestige Case and FPL Case).

past two years, especially when, as Plaintiff knows, schedules change.  In fact, five scheduling orders were entered in the Prestige Case before final dates were determined.

Another reason to dismiss this justification is Plaintiff's involvement in setting the schedules for which it now complains.  Plaintiff fully participated in the drafting of every scheduling order in the Prestige Case—all five of them.  Aside from mentioning the need to coordinate discovery in this action with the Bank Case in the first amended scheduling order, entered on August 24, 2005, Plaintiff has been silent on the need for coordinated efforts in all subsequent orders.  Particularly, the parties recently discussed setting the dates for the Fifth Amended Scheduling Order in this case.  At no point during these discussions did Plaintiff express some concern over the possibility of conflicting trial dates with the other cases.  Plaintiff was even willing to move up the trial date in this case.  (Oct. 29, 2007 e-mail; Exhibit E to Defendants' Declaration).  Ultimately, Judge Morris set January 20, 2009 as the trial date.  And when the parties were before Judge Morris on October 24, 2007, for a hearing to enter the scheduling order, Plaintiff never once mentioned any concern with the possibility of "three practically simultaneous trials."  At that point, however, Plaintiff already knew the trial dates in the other cases.   (Oct. 24, 2007 Bank Case Scheduling Order; Aug. 13, 2007 FPL Case Scheduling Order).[8]  At any rate, to accommodate Plaintiff's concerns over the trial schedules, Defendants will, subject to Judge Morris' approval, consent to a trial date at a time more suitable to Plaintiff.

Plaintiff also argues:  "Second, discovery has recently begun to overlap across the three cases in a way that it never did before."  (Pl. Mot. 14).  With this argument, Plaintiff tries to exploit a single discovery issue concerning Defendants' November 6, 2007 document request for the Deloitte expert reports.  Plaintiff's contention that this case should be withdrawn to the

---

[8]  *See* Exhibits A and E to Plaintiff's motion to withdraw the reference.

District Court because defendants in different cases seek the same few documents is also without merit. Plaintiff has known that the Deloitte expert reports could become the subject of discovery in this case for quite some time. In fact, the issues regarding Deloitte deposition materials came up during the discovery conferences in front of Judge Morris in 2006. (*See* Oct. 17, 2007 Trans., pp. 14-17). Plaintiff also knew they could become subject to discovery back in April 2007, when Defendants noticed the depositions of the independent directors and had requested unredacted transcripts from depositions of the independent directors in the Deloitte Case. Even more, Plaintiff freely acknowledged the relevance of the Deloitte case to this case and others in its Opposition Memorandum to the Bank Defendants' motions to withdraw the reference.[9]

Also, it should not be overlooked that Plaintiff initially refused to produce the unredacted transcripts last spring, and Defendants had to move to compel their production. Judge Morris ordered their production on October 17, 2007, noting the court's view on relevance—"Produce them. Discovery if it goes to the possibility of any financial condition, produce." (Oct. 17, 2007 Trans., p. 25). When Plaintiff finally produced the unredacted transcripts pursuant to Judge Morris' order, Defendants learned, for the first time, that the Deloitte expert reports were relevant in the Prestige Case.[10] Had Plaintiff not stonewalled on producing the director transcripts, the issue of the Deloitte reports would have arisen much sooner than Plaintiff contends.

Thus, Plaintiff should not be afforded the extraordinary relief of taking this case from Judge Morris simply because it failed to anticipate conflicting dates among its cases and plan

---

[9] (See Opp. Memo., p. 37: "Furthermore, other litigation is pending before other courts regarding some of these same issues that will not under any circumstances be consolidated with this proceeding or the MDL Proceeding, i.e., Adelphia Communications Corp., et al. v. Deloitte & Touche, LLP, et al., Case No. 021100598 (Court of Common Pleas Philadelphia Co.)").

[10] After the October 17 hearing, Defendants also requested unredacted transcripts of other Adelphia consultants and employees that were involved in Adelphia's restatement of its financials. After reviewing these transcripts, it became abundantly clear that Deloitte's expert reports were relevant to the Prestige Case.

accordingly, or because a small portion of Deloitte materials may be subject to discovery in more than one case—a fact which Plaintiff has know about, or should have known about, for years. [11] Simply put, Plaintiff's motion is untimely on its face—all the grounds giving rise to it have been apparent to Plaintiff for years. Indeed, it is abundantly clear from Plaintiff's motion and the undisputed factual record that they have no "legitimate interest in the withdrawal or [are] merely employing 'stalling tactics' designed to prejudice [the] non-moving party." *Vista Metals Corp.*, 161 B.R. at 457. [12] Because Plaintiff's motion is untimely, it should be denied, without regard to its merits.

**C.    Plaintiff Has Failed to Show Cause for Withdrawing the Reference, and Thus the Motion Should Be Denied.**

Section 157(d) states that a motion to withdraw the reference may be granted for "cause shown." This Court, in *In re Adelphia Communs. Corp. Sec. & Derivative Litig.*, 2006 U.S. Dist. LEXIS 8700, considered the following factors in determining whether cause for granting a permissive motion to withdraw the reference under section 157(d) had been shown:

> In cases where permissive withdrawal is sought (28 U.S.C. § 157(d) (first sentence)), the district court shall weigh several factors, of which the first is the most important: (1) whether the claim is core or non-core, (2) what is the most efficient use of judicial resources, (3) what is the delay and what are the costs to the parties, (4) what will promote uniformity of bankruptcy administration, (5) what will prevent forum shopping, and (6) other related factors.

*Id.* at *9-10 (citing *In re Burger Boys, Inc.*, 94 F.3d 755, 762 (2d Cir. 1996)).

Weighing these factors, Plaintiff fails to show adequate cause for granting the motion.

---

[11] Plaintiff also asserts Defendants are coordinating their litigation strategy efforts with defendants in the other cases with respect to the Deloitte expert reports. That is simply not true.

[12] Although "the presence or absence of prejudice is a factor in assessing timeliness," actual prejudice to the nonmovant need not be shown in order to find that a motion to withdraw the reference is untimely. *In re Rickel & Assocs. Inc.*, 2003 U.S. Dist. LEXIS 23136, at *8.

1.    **This Case is a Core Proceeding**

"In considering permissive withdrawal, the first and most important relevant factor is whether the claim sought to be withdrawn is core or non-core." *In re Adelphia Communs. Corp. Sec. and Derivative Litig.*, 2006 U.S. Dist. LEXIS 8700, at *14.  This is so because "[h]earing core matters in a district court could be an inefficient allocation of judicial resources given that the bankruptcy court generally will be more familiar with the facts and issues." *In re Orion Pictures Corp.*, 4 F.3d 1095 (2d Cir. 1993).[13]  Likewise, district courts are more likely to withdraw the reference when non-core claims dominate the adversary proceeding because keeping a non-core "proceeding in the bankruptcy court wastes judicial resources because the district court must review the bankruptcy court's proposed findings of fact and conclusions de novo." *Seaway Painting v. Cornell & Co.*, No. 98-158, 1998 U.S. Dist. LEXIS 18629, at *5 (E.D. Pa. Nov. 16, 1998).  "Although not dispositive of the withdrawal decision, this determination influences the remainder of the court's analysis because 'it is upon this issue that questions of efficiency and uniformity will turn.'"  *Enron Wind Energy Systems, LLC v. Marathon Elec. Man. Corp.*, No. 04 Civ. 7950 (NRB), 2005 U.S. Dist. LEXIS 2132, at *5 (S.D.N.Y. Feb. 15, 2005).

Plaintiff's Complaint alleges three claims:  (1) constructive fraudulent transfer; (2) actual fraudulent transfer; and (3) aiding and abetting breach of fiduciary duty.  The fraudulent transfer claims are purely core claims.  *See* 28 U.S.C. § 157(b)(2)(H).  Plaintiff pled the aiding and abetting breach of fiduciary duty claim (the "Aiding Claim") as a core claim, as well.  (Compl. 5;

---

[13]  There is authority in this district, among others, holding that the bankruptcy court should determine in the first instance whether the proceeding is core or non-core, and that the failure to do so is fatal to a motion to withdraw the reference.  See 28 U.S.C.§ 157(b)(3).  Indeed, in *In re Ranch 1, Inc.*, No. 02 Civ. 4417 (WK), 2002 U.S. Dist. LEXIS 18264, at **5-6 (S.D.N.Y. Sept. 27, 2002), the court denied a motion to withdraw the reference, finding that it was premature because the bankruptcy court had not yet determined whether the proceeding was core or non-core.  Other decisions reach a different result.  *See In re Adelphia Comm. Sec. & Derivative Lit.*, 2006 U.S. Dist. LEXIS 8700 at *14.  Here, Judge Morris noted that the sanction order was a core proceeding. (Doc. No. 114 at p. 6).

Doc. No. 1).  Two years and ten months later (after significant discovery had been taken and after Adelphia's plan went effective on February 13, 2007), Plaintiff reaffirmed its contention that the Aiding Claim is part of a core proceeding.  (Am. Compl. 4; Doc No. 60).  Defendants answered both complaints, and consented to the Bankruptcy Court's entry of final orders and judgments on the Aiding Claim, pursuant to Bankruptcy Rule 7012.  (Answer 5; Answer to Am. Compl. 4; Doc. Nos. 4, 65).  As a result, for the past three and one-half years, the parties have been operating under the presumption that the Aiding Claim is part of the core proceeding.

    In addition, the crux of Plaintiff's case concerns the fraudulent transfer claims.  Since Plaintiff filed the Complaint (and Amended Complaint), the focus of the litigation has been on whether Adelphia received reasonably equivalent value under the Asset Purchase Agreement and whether the transaction rendered Adelphia insolvent—classic fraudulent transfer-related issues. And these issues have predominated fact discovery.  In fact, Plaintiff is relying on the same fact discovery related to the fraudulent transfer claims as support for the Aiding Claim.  Another way of looking at it, the Aiding Claim is dependent on the fraudulent transfer claims.  Given the posture of Plaintiff's case, it is apparent that the Aiding Claim is a tack-on claim, and represents a small aspect of the overall case.[14]   Simply put, the Aiding Claim does not dominate the adversary proceeding.  *Seaway Painting*, 1998 U.S. Dist. LEXIS 18629, at *5.

    Notwithstanding the above, Plaintiff now contends the Aiding Claim is a non-core claim, which warrants removing the entire case, including the predominating fraudulent transfer claims, to the District Court.  This contention lacks merit.

---

[14]  In fact, Defendants intend to move for summary judgment against Plaintiff on all claims, including the Aiding Claim.  (December 14, 2007 letter to the Judge Morris; Exhibit F to Defendants' Declaration).  Defendants also note that Plaintiff's allegations in this case are inconsistent with the allegations made in *Adelphia v. Rigas*, Adv. Proc. No. 02-8051 (Bankr. S.D.N.Y.), and the conclusions reached by Adelphia's restatement team at the end of the restatement of Adelphia's financials.

Even if the Aiding Claim were non-core, section 157(c) of Title 28 of the United States Code gives Judge Morris the authority to hear this claim and enter proposed findings of fact and conclusions of law. Moreover, Plaintiff consented to the Bankruptcy Court issuing final orders in this proceeding. 28 U.S.C. § 157(c)(2). Indeed, Plaintiff gave Judge Morris this authority by "affirmatively invoking the bankruptcy court's jurisdiction." *Horwitz v. Alloy Auto. Co.*, 992 F.2d 100, 103 (7th Cir. 1993); *accord In re Bennett Funding Group, Inc.*, 367 B.R. 269 (N.D.N.Y. 2007) (citing *In re Men's Sportswear, Inc.*, 834 F.2d 1134, 1138 (2d. Cir. 1987)).[15]

Furthermore, Judge Morris' adjudication of the Aiding Claim poses no greater burden on the District Court. The District Court will review determinations of fact under a clearly erroneous standard. *See* Fed. R. Bankr. P. 8013. More important, Plaintiff has waived its right to a jury trial, so there is no need for a transfer to the District Court when the case reaches the trial stage. *See Orion*, 4 F.3d at 1101 (recognizing only district courts may conduct jury trials with respect to non-core matters, and this factor may weigh in favor of granting a motion to withdraw the reference to the bankruptcy court).

Given the above, no reasonable basis exists for not continuing to treat this case as a core proceeding. This factor strongly weighs in favor of denying Plaintiff's motion.

### 2. Judicial Economy, Potential for Delay, Cost to the Parties, and Uniformity of Bankruptcy Administration All Strongly Weigh in Favor of Denying Plaintiff's Motion.

Judicial economy is best served by this case remaining with Judge Morris. In *Mishkin v. Ageloff (In re Adler, Coleman Clearing Corp.)*, 270 B.R. 562 (S.D.N.Y. 2001), the court held:

> The bankruptcy judge is intimately familiar with the facts of both proceedings and stands in the best position to oversee the interests of both the estate and the parties. . . . Because the bankruptcy court is in the best position to assess the claims of the

---

[15]  To the extent Plaintiff now alleges this proceeding is non-core, notwithstanding that pursuant to Rule 7008 the Plaintiff affirmatively stated that this was a core proceeding, Plaintiff failed to comply with the Rule's requirement for an express statement either consenting or not consenting to the Bankruptcy Court's entry of final orders.

parties and the interests of the estate, judicial resources will be conserved by having the bankruptcy court retain its oversight of the remaining discovery stages and of the potentially dispositive pre-trial motion practice.

*Id.* at 566.

Likewise, here, Judge Morris has had substantial active involvement in the litigation of this case over the past two years; Judge Morris is intimately familiar with the facts and proceedings, and is in the best position to oversee the interests of the parties going forward. Indeed, the Judge Morris' thumbprint is all over this case.

For example, less than a month after the case was transferred from Judge Gerber to Judge Morris, on February 3, 2006, Judge Morris resolved the dispute over the scope of the Rule 30(b)(6) deposition notices Defendants served on Plaintiff. (Feb. 3, 2006 Trans., p. 19).

Judge Morris has heard and resolved numerous discovery disputes that culminated in two rounds of motions to compel discovery filed by each side. In the first round of motions to compel, Judge Morris conducted multiple informal discovery conferences and hearings over seven months (October 2006—May 2007). Judge Morris' orders led to Plaintiff having to create a separate electronic database to meet Rule 34 standards, a finding that Plaintiff waived work product protection with respect to the PWC forensic documents, and a finding that Defendants did not need to revise their privilege log. (Dec. 13, 2006 Trans., pp. 7-12, 33, 43-46; Doc. Nos. 51, 66; Feb. 21, 2007 Trans., pp. 31-35; Doc. No. 63; May 16, 2007 Trans., pp. 9-28; Doc. No. 68).

In the second round of motions to compel, Judge Morris held two hearings, and ordered Plaintiff to produce the independent director transcripts in the *Deloitte* case and the corporate minute books. Judge Morris also helped the parties reach agreement on the scope of the Adelphia acquisition documents to be produced and the production of Defendants' individual tax documents, the latter of which a consent protective order was entered to facilitate discovery.

(Oct. 17, 2007 Trans., pp.14-22, 32, 37-39; Doc. No. 92.); (Oct. 24, 2007 Trans., pp. 10-16; Doc. No. 104). In connection with the second motions to compel, Judge Morris also entered an order sanctioning Plaintiff. (Doc. No. 114).

Furthermore, Judge Morris has worked with the parties on scheduling—entering four proposed scheduling orders to date, September 27, 2006, January 31, 2007, June 13, 2007, and October 30, 2007, respectively. (Doc. Nos. 37, 47, 71, 97). The fifth and latest scheduling order, which Judge Morris has indicated will not be amended further, provides for fact discovery to conclude on March 15, 2008, dispositive motions to be filed by October 24, 2008, and trial commencing on January 20, 2009. (Oct. 24, 2007 Trans., pp. 7-8).

Undeniably, Judge Morris' involvement in this case to date has been substantial, and Plaintiff would be hard-pressed to argue otherwise.[16] Indeed, Judge Morris' considerable involvement in this case militates in favor of denying Plaintiff's Motion, if for no other reason, to preserve the judicial economy that has already been created.

Keeping this case with Judge Morris will also prevent undue delay and increased costs to Defendants. Plaintiff argues that withdrawal of this case to the District Court, where discovery can be coordinated with the Bank Case, will save time and expense. Plaintiff is wrong.

On their face, the Bank Case and Prestige Case are drastically different—so much so that any potential benefit from coordinating discovery is specious, at best. To put it in perspective, the Bank Case involves hundreds of Adelphia debtors as plaintiffs and hundreds of defendants. The Bank complaint is over 400 pages long, contains over 1000 allegations and over 50 counts. The Bank Case is a jury trial. One of the transactions in the Bank Case—and the subject of avoidance—is the CCH co-borrowing facility, and Adelphia's solvency regarding that transaction will be tested at the subsidiary level. (Am. Compl. Bank Case, ¶¶ 1140, 1162

---

[16] (*Cf.* Opp. Memo., pp. 32-39.)

(alleging that CCH Co-Borrowing Debtors were insolvent).  *See In re Adelphia Communs Corp.*

*v. Bank of America*, 365 B.R. 24, 37 (Bankr. S.D.N.Y. 2007)(noting that determining solvency in

the Bank Case requires a "Debtor-by-Debtor analysis").

In contrast, the Prestige Case involves two Adelphia debtors and six defendants.  The

amended complaint is 15 pages long, contains 46 allegations and three counts.  The Prestige

Case is not a jury trial.  The Prestige transaction—the only transaction allegedly the subject of

avoidance (which, incidentally, only accounted for about 178,000 out of Adelphia's 5+ million

cable subscribers)—is not the subject of any challenge in the Bank Case.  Nor has Plaintiff even

made any allegation in the Amended Complaint about Defendants' knowledge of the CCH co-

borrowing transaction.  Adelphia's solvency related to the Prestige transaction will be tested at

the parent level on one of two possible dates—December 6, 1999, *i.e.*, the execution of the

transaction documents, or July 5, 2000, *i.e.*, the closing of the transaction. (Am. Compl. 30).

Another key difference is fact discovery is almost over in the Prestige Case, which

further demonstrates the impracticality of shifting this case away from Judge Morris.  Under the

recently entered Fifth Amended Scheduling Order, fact discovery ends March 15, 2008; and

regarding this latest order, Judge Morris has forewarned the parties that "we're going to use it . . .

and we're going to obey that order."  (Oct. 24, 2007 Trans., pp. 7-8).  To date, Defendants have

served seven requests for production of documents and Plaintiff has served three; the parties

collectively have served over 30 subpoenas related to third-party document production; and

millions of pages of documents have been produced.  Twenty-five depositions have been taken,

including the depositions of key witnesses, such as Adelphia's former chief accounting officer,

the principals leading Adelphia's restatement of its accounting records, and Adelphia's valuation

firm hired in the restatement process.  Only a few depositions remain to be taken by Defendants

(as of the date of this opposition), including three out of the four independent directors of Adelphia, an Adelphia tax representative, the valuation firm which assisted PWC, and PWC itself. Even Plaintiff has indicated that it only intends to take a few more depositions, mainly of Defendants themselves, for which tentative dates in January and February 2008 have already been discussed by the parties. Accordingly, within the next three months, the parties will be finished with fact discovery in this case, and can shift their focus to expert discovery and dispositive motions. By comparison, discovery in the Bank Case and other Adversary Proceedings is far from over.

Simply put, the Bank Case and Prestige Case do not substantially overlap—they involve significantly different issues and are at significantly different points in discovery. Trying to coordinate discovery between these cases would be unwieldy. For instance, although defendants in both cases will seek discovery related to whether Adelphia received reasonably equivalent value in various transactions and whether Adelphia was solvent at the time of these transactions, the "transactions" at issue are not the same in both cases, and will involve different issues and require separate fact and expert discovery. Moreover, because fact discovery is almost over in this case, if it is withdrawn to the District Court, Defendants will essentially have to wait while the other litigants "catch up" to them in the discovery process before moving forward towards resolving this case. Thus, the only result of withdrawal will be delay and added costs of being mired in discovery longer than if the case stayed with Judge Morris.

Finally, Plaintiff's chief concern over the uniformity of administration relates to one isolated event: the request for the Deloitte expert reports. But even that will not lead to an inconsistent ruling. The due date for the Deloitte document request for production has passed,

and Plaintiff did not timely object to this request.[17]   In addition, Defendants first learned there was a potential dispute over the Deloitte expert reports from Plaintiff when Defendants reviewed the motion to withdraw the reference.   As such, Plaintiff raised a discovery dispute without even meeting and conferring with Defendants.   In any event, relevance in discovery is determined on a case by case basis.   What is relevant in the Prestige Case may or may not be relevant in other cases.   Thus, Plaintiff's request is without merit.

       3.    **Plaintiff's Motion Is a Veiled Attempt at Judge Shopping.**

      Plaintiff's argument regarding forum shopping is a red herring.   Forum shopping, in the traditional sense, is not at issue, nor could it be.   As this Court has recognized, even if the case were withdrawn, both the bankruptcy court and district court must follow the same controlling law.   *In re Adelphia Communs. Corp. Sec. & Derivative Litig*., 2006 U.S. Dist. LEXIS 8700, at *21.   Thus, Plaintiff's assurance that it is not shopping for more favorable law is meaningless.

      Here, nothing has happened in the past month to warrant withdrawal and to start over in a new court three and one-half years later.   In essence, Plaintiff's motion is "another litigation tactic . . . to find a way out of bankruptcy court."   *In re Enron*, No. 04-7693 (RJH), 2004 U.S. Dist. LEXIS 25259, at *6 (S.D.N.Y. Dec. 14, 2004).   As Judge Morris observed at the October 17, 2007 hearing:

> You're hedging.  I -- and I'm really tired of Adelphia's hedging.  So I – and I've had it. I looked at this case from the very beginning.  It's your case.  Then once when it comes down to getting to the meat of it, you just keep putting the brakes up, and I'm not going to put up with it.

(pp. 21-22).

      The law simply will not countenance motions to withdraw the reference brought for this purpose.   *See, e.g., In re Enron,*  2004 U.S. Dist. LEXIS 25259, at *6 (preventing a motion to

---

[17]   Defendants received Plaintiff's response on December 14, which is after the deadline to respond.

withdraw the reference "from becoming just another litigation tactic for parties eager to find a way out of bankruptcy court"). *Kester v. Shouse*, No. 05-2121-KHV, 2005 U.S. Dist. LEXIS 23066, at *6 (D. Kan. Oct. 7, 2005) (stating withdrawal is improper when a party "seeks withdrawal of the reference so that he can challenge the adverse rulings of the bankruptcy court" and "[s]uch a blatant attempt at forum shopping should be discouraged and does not constitute 'cause' to withdraw the bankruptcy reference").

Here, Plaintiff's motion is, in this context, "forum" shopping. (*See* Dec. 14, 2007 Order). "Withdrawal of the reference would promote forum shopping: upset with a bankruptcy court's decision . . . a party could simply seek to withdraw the reference, hoping for better results in a case heard by the district court directly, rather than on appeal." *Amerada Hess Corp. v. Enron Corp.*, No. 03 Civ. 5288 (DC), 2004 U.S. Dist. LEXIS 19123, at *8 (S.D.N.Y. Sept. 24, 2004). As such, this factor strongly supports a denial of the Plaintiff's motion.

## IV.    CONCLUSION

For the foregoing reasons, Defendants respectfully request this Court deny Plaintiff's motion.

Respectfully submitted,

TROUTMAN SANDERS LLP

By: /s/ Harris B. Winsberg
        Harris B. Winsberg (Pro Hac Vice Pending)
        Douglas E. Ernst (Pro Hac Vice Pending)
Bank of America Plaza, Suite 5200
600 Peachtree Street, N.E.
Atlanta, Georgia 30308-2216
Telephone No.:    Phone No.:(404) 885-3000
Facsimile No.      (404) 885-3900

Counsel to Defendants Prestige Communications of N.C., Inc., *et al.*