UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

ADELPHIA RECOVERY TRUST,

            Plaintiff,

v.

PRESTIGE COMMUNICATIONS OF NC, INC.,
JONATHAN J. OSCHER, LORRAINE OSCHER
McCLAIN, ROBERT F. BUCKFELDER,
BUCKFELDER INVESTMENT TRUST, and
ANVERSE, INC.,

            Defendants.

CIVIL ACTION FILE

NO. 07-11152 (LMM)

---

## DEFENDANTS' BRIEF IN OPPOSITION TO CONSOLIDATION OF THE PRESTIGE AND BANK CASES

Dated: January 25, 2008

TROUTMAN SANDERS LLP
DAVID J. SHEEHAN
HARRIS B. WINSBERG (Pro Hac Vice)
(Ga. Bar No. 770892)
DOUGLAS E. ERNST (Pro Hac Vice)
(Ga. Bar No. 249956)
Bank of America Plaza, Suite 5200
600 Peachtree Street, N.E.
Atlanta, Georgia 30308-2216
Telephone No.:     (404) 885-3000
Facsimile No.:     (404) 885-3900

*Counsel for Prestige Communications of N.C., Inc., et al.*

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES .................................................................................................. i

PRELIMINARY STATEMENT .......................................................................................... 1

FACTUAL BACKGROUND ............................................................................................... 1

ARGUMENT ......................................................................................................................... 4

**I.**  Consolidating Discovery in the Prestige and Bank Cases Would Be Inefficient and Highly Prejudicial to the Defendants. .................................................................... 4

   A.  Consolidation Would Create Inefficiency ........................................................ 5

   B.  Consolidation Substantially Prejudices Defendants ......................................... 6

**II.**  Distinct Questions of Fact and Law Predominate ................................................. 8

**III.**  Defendants' Proposed Scheduling Order ............................................................. 11

CONCLUSION .................................................................................................................... 14

## <u>TABLE OF AUTHORITIES</u>

### FEDERAL CASES

*In re Adventist Centers*, 174 B.R. 505 (Bankr. N.D. Ill. 1994) ..........................................12

*Aerotel, Ltd. v. Verizon Communs., Inc.*, 234 F.R.D. 64 (S.D.N.Y. 2005)..................7, 8, 9

*Dashnaw v. Usen*, No. 1:05-CV-1592, 2006 U.S. Dist. LEXIS 41498 (N.D.N.Y. June 21, 2006)...........................................................................................................5

*Envirco Corp. v. Clestra Cleanroom, Inc.*, 2002 U.S. Dist. LEXIS 17917 (N.D.N.Y. Sept. 24, 2002) ......................................................................................4, 8

*In re Rezulin Products Liability Litigation*, 390 F. Supp. 2d 319 (S.D.N.Y. 2005) ...........5

*Smith v. Everson,* No. CV 06-0791, 2007 U.S. Dist. LEXIS 58293 (E.D.N.Y. Aug. 6, 2007) ...............................................................................................................6

*Tucker v. Arthur Andersen & Co.*, 73 F.R.D. 316 (S.D.N.Y. 1976)...................................5

### DOCKETED CASES

*Adelphia v. Rigas*, No. 02-8051 ..........................................................................................12

### FEDERAL STATUTES

Fed. R. Civ. P. 42(a) .......................................................................................................4, 8

Prestige Communications of North Carolina, Inc., Jonathan J. Oscher, Lorraine Oscher McClain, Robert F. Buckfelder, Buckfelder Investment Trust, and Anverse, Inc. (collectively, the "Defendants") hereby submit this *Brief in Opposition to Consolidation of the Prestige and Bank Cases*, showing the Court as follows:

## PRELIMINARY STATEMENT

Defendants respectfully submit this Brief in response to the Court's January 16, 2008 Order directing the Parties to submit comments and suggestions regarding consolidation. Defendants, having read the Court's Order withdrawing the reference to the Bankruptcy Court (the "Order"), endeavor herein to propose a schedule which addresses the Court's concerns for efficiency and the potential for inconsistent rulings, and yet avoids the prejudice that would result from consolidation. Indeed, simple consolidation would be both unnecessary and unfair. It is unnecessary, because: (1) the Court can already preclude inconsistent discovery rulings, and (2) as for trial, the Bank case will be before a jury while the Prestige case will be a bench trial; thus, consolidation will not affect trial results because the fact-finders will be different. Moreover, consolidation would be unfair because it would delay and increase the expense of the Prestige case. In effect, consolidation would stay the Prestige case for a number of years (as the Bank case catches up) and this would dramatically increase Defendants' costs. As an alternative to consolidation, Defendants propose a schedule that addresses the Court's concerns described in the Order, while affording Defendants the opportunity to continue litigation and have their day in court.

## FACTUAL BACKGROUND

More than three years ago, on June 24, 2004, Adelphia Recovery Trust ("Plaintiff") commenced this lawsuit against Prestige Communications of NC, Inc., Jonathan J. Oscher,

Lorraine Oscher McClain, Robert F. Buckfelder, Buckfelder Investment Trust, and Anverse, Inc. The suit arises from Adelphia's purchase of the Defendants' cable systems, which were located in Georgia, North Carolina, Virginia and Maryland. Plaintiff alleges that a portion of the transaction (the acquisition of the North Carolina, Virginia and Maryland assets) constituted a fraudulent conveyance, both constructively and actually, and that the Defendants aided and abetted alleged breaches of fiduciary duties by Adelphia's management.

Although there are six named Defendants, Mr. Oscher is the principal defendant—he received the majority of the proceeds from the sale of the cable systems.[1] Mr. Oscher began acquiring the cable systems over 30 years ago. Mr. Oscher retired in 2000, when he sold the businesses. At 75 years old, Mr. Oscher now devotes a majority of his energies toward community and charitable work.

Discovery in the case proceeded for 18 months, until March 16, 2006, when Plaintiff sought a stay. Judge Gerber then ordered discovery stayed until September 4, 2006. After the stay was lifted, the Parties engaged in extensive discovery: 28 fact depositions; production of millions of pages of documents; over 30 non-party document subpoenas were issued; and the Bankruptcy Court adjudicated four motions to compel. In fact, when the reference was withdrawn, the Parties were operating under the consensual Fifth Amended Scheduling Order, which required the completion of fact discovery by March 15, 2008, and which set a firm trial date for January 2009 (the "Agreed Schedule")(attached hereto as **"Exhibit A"**). The Parties drafted and consented to the Agreed Schedule, and Judge Morris indicated that it would be the

---

[1] Prestige Communications of NC, Inc. is no longer an active corporation; Anverse, Inc. is a charitable foundation; and Buckfelder Investment Trust is Mr. Buckfelder's private investment trust.

final amendment.  At the time this case was transferred to the District Court, there were approximately 15 noticed depositions remaining, and the Defendants had sought permission to file a motion for summary judgment.[2]

In contrast, discovery in the Bank case is just beginning, with the parties operating under a phased discovery schedule (the "Bank Schedule")(attached hereto as **"Exhibit B").**  The effect is that discovery is essentially stayed while the parties attempt to settle the case through mediation.  Plaintiff recently amended the Bank Complaint and added hundreds of defendants. *See Dec. 14, 2007 Letter from Jean-Marie L. Atamian to the Court* (attached hereto as **"Exhibit C")**;[3] *Dec. 17, 2007 Letter from Michael Harwood to the Court* (attached hereto as **"Exhibit D").**[4]  Mr. Harwood's letter indicates that Plaintiff recently named more than 400 additional parties as defendants in the Bank case, some of whom are yet to be served.  This confirms the infancy of the Bank case:  that case must essentially stop and reset because the new parties must file an answer (or otherwise respond) and take time to familiarize themselves with the Bank Schedule, the Merrill database, and the pleadings submitted to date.

Once permitted, it appears the parties in the Bank case will take, at least, hundreds of fact depositions.  Although the Bank Schedule provides that fact discovery will last six months, given the expected number of depositions, the likelihood of extensive discovery disputes, and the sheer

---

[2]     Depending upon the testimony by some witnesses, Defendants believe fewer depositions will be required.
[3]     Defendants did not receive Mr. Atamian's letter because they are not parties in the Bank case.  Plaintiff, however, not only received the letter, which directly impacts the Prestige case, but responded to the letter via Mr. Harwood's letter.  Although Plaintiff had access to the letter by virtue of being a party in the Bank case, Plaintiff did not provide to the Defendants a copy of the letter or its response until January 18, 2008.
[4]     Mr. Harwood's letter erroneously claims that the Merrill database was "modified in a cooperative manner for the parties in the Prestige Litigation."  As the record indicates, Plaintiff was ordered to create a new database after Judge Morris found that the Merrill database was not a production.  *Def Br. Opp. to Mot. to Withdraw the Ref.*, pp 4-5.

size of the case, it is unlikely fact discovery will complete within this timeframe. Moreover, the schedule for expert discovery has not been determined, while trial "will commence no earlier than March 1, 2009." Bank Schedule at ¶ 13. Considering the current status of the Bank case, it appears that an amendment is required, thus further extending the overall schedule.

In sum, virtually all of the fact discovery remains to be done in the Bank case, whereas fact discovery in the Prestige case is nearly complete. *See Gershman email dated January 7, 2008* (attached hereto as "**Exhibit E**") (confirming the Defendants' understanding that the only remaining fact depositions Adelphia plans to take are of the Defendants, individually and as Rule 30(b)(6) representatives, and one Buchanan Ingersoll witness).

## ARGUMENT

### I.    Consolidating Discovery in the Prestige and Bank Cases Would Be Inefficient and Highly Prejudicial to the Defendants.

In determining whether to consolidate a case under Fed. R. Civ. P. 42(a),[5] a court must consider whether the resulting delay, prejudice and confusion outweigh the potential benefits of consolidation. *Envirco Corp. v. Clestra Cleanroom, Inc*., No. 5:98-CV-120, 2002 U.S. Dist. LEXIS 17917, at *7-8 (N.D.N.Y. Sept. 24, 2002). Although consolidation is a judicial tool used to promote efficiency, district courts must ensure that justice is not sacrificed: "[T]he systematic urge to aggregate litigation [must not] trump our dedication to individual justice, and we must take care that each individual . . . defendant's cause not be lost in the shadows." *Dashnaw v. Usen*, No. 1:05-CV-1592, 2006 U.S. Dist. LEXIS 41498, *8 (N.D.N.Y. June 21, 2006) (internal citations omitted). Indeed, where prejudice will result, "it is inappropriate for a court to order

---

[5]    Rule 42(a) provides: "If actions before the court involve a common question of law or fact, the court may (1) join for hearing or trial any or all matters at issue in the actions; (2) consolidate the actions; or (3) issue any other orders to avoid unnecessary cost or delay."

consolidation." *Tucker v. Arthur Andersen & Co.*, 73 F.R.D. 316, 317 (S.D.N.Y. 1976). Here, Plaintiff's efficiency claims are illusory, but the resulting prejudice is undeniable.

### A.    Consolidation Would Create Inefficiency

Consolidation will yield inefficiency, not efficiency, and thus frustrate the very purpose for which this judicial tool was created. Plaintiff's argument for consolidation depends on a handful of "common" depositions (same deponents in both cases) and the related preparation.[6] However, Plaintiff's claims that consolidation would generate efficiencies are meritless; Defendants have noticed approximately seven remaining depositions that might be common to the Bank case, and with regard to those depositions, "consolidation does not change the rights of the parties in the separate suits." *In re Rezulin Prods. Liab. Litig.*, 390 F. Supp. 2d 319, 330 (S.D.N.Y. 2005). Accordingly, pursuant to Rule 30(d), Defendants retain the right to a seven hour deposition of all witnesses, common or otherwise. Thus, Plaintiff's counsel will have to spend the same amount of time attending depositions regardless of consolidation—having a witness testify at separate depositions in succession requires no less time than having a witness testify at separate depositions more than 180 days apart.

Moreover, the facts and claims at issue in the Prestige case, including the alleged aiding and abetting breach of fiduciary duty claim, are entirely distinct from those at issue in the Bank case. For instance, solvency in the Prestige case will be measured at the parent level, whereas in the Bank case, it will have to be determined for numerous subsidiaries, individually and without reference to the parent entity—a completely different financial analysis based upon many

---

[6]     The alleged common witnesses include one of Adelphia's former directors, an Adelphia tax representative, one member of Adelphia's Restatement team, members of PricewaterhouseCoopers (the auditor of Adelphia), and a member of a valuation firm that assisted PWC. Because fact discovery is in its infancy in the Bank Case, it is uncertain whether all of the few alleged common witnesses will actually be deposed in the Bank Case.

different sets of financial statements. (Indeed, it is entirely possible that the parent may be solvent while an individual subsidiary, one of hundreds involved in the Bank financings, may or may not be solvent.) Neither the allocation of the purchase price in the Prestige transaction nor the parent's solvency is an issue in the Bank case. Thus, preparation for the deponents' examinations in the Prestige case will be very different than that for the Bank examinations, as the questioning will be different. Plaintiff will need to prepare common witnesses for two different sets of facts and issues, regardless of consolidation. *See Smith v. Everson*, No. CV 06-0791, 2007 U.S. Dist. LEXIS 58293, at *9 (E.D.N.Y. Aug. 6, 2007)("[J]udicial economy would not be furthered by consolidation, since the same number of witnesses . . . would be required to be deposed and testify . . . and the same amount of discovery would be required with or without consolidation."). Thus, because no efficiency in deposition preparation would be gained from consolidation, it is not appropriate here.

Finally, instead of saving money, consolidation would greatly increase the administrative cost to all parties, particularly and most dramatically to Defendants. Defendants, who have diligently and efficiently conducted discovery to this point, would have to coordinate all aspects of discovery with the hundreds of lawyers representing the Bank defendants, including the attempts to schedule depositions of the few common witnesses—which, in practice, will likely become a logistical nightmare and result in substantial delay. Simply put, consolidation would increase, not decrease, the cost of this litigation.

**B.      Consolidation Substantially Prejudices Defendants**

The prejudice suffered by Defendants will be substantial. The primary defendant, Jonathan J. Oscher, the founder and majority shareholder of Prestige Communications, is 75 years old. He has already suffered through nearly four years of litigation and has already

incurred substantial defense costs.  Consolidation would only magnify this hardship, both in terms of time and cost.  The Bank case, due to Plaintiff's filing its amended complaint, has been effectively reset to square one.  Once it gets going again, the Bank discovery, due to its complexity, is likely to take place over a period of years, not months.  Meanwhile, Defendants' attorneys would need to attend hundreds of fact depositions (to ensure Defendants' interests are protected), virtually all of which are not relevant to the Prestige case, and they would have to monitor, coordinate and join various discovery disputes, many of which are already settled in the Prestige case.  The increased costs of defense will be material and severely prejudicial.

Plaintiff filed this lawsuit and yet this is the second time it has effectively sought a stay.[7] Rather than argue the facts or the law, Plaintiff now reneges on the Agreed Schedule to further a war of attrition.  In contrast, Defendants have tried to facilitate and streamline the discovery process.  Plaintiff has had every opportunity to prove its case, but because it cannot, Plaintiff now seeks a second stay in an attempt to increase the pressure on the Defendants to settle a flawed lawsuit.

This case is nearly identical to *Aerotel, Ltd. v. Verizon Communications., Inc.*, where the court refused to consolidate the cases, holding that:

> Consolidating these actions would also significantly delay the present case in which discovery is due to be completed by early February 2006.  The parties in the IDT litigation have conducted only minimal discovery, while the parties in the present case have already engaged in significant discovery currently scheduled to be completed within approximately two months.

---

[7]    In fact, Plaintiff's position is that the Defendants cannot take the remaining fact depositions until these witnesses are sought to be deposed in the Bank Case (thus effectively staying Defendants' fact discovery) while Plaintiff is free to depose the Defendants in the interim.

234 F.R.D. 64, 67 (S.D.N.Y. 2005). *See also Envirco*, 2002 U.S. Dist. LEXIS, at *8 (finding that consolidating the cases "would create unnecessary delay that would not outweigh the interest of judicial convenience"); *Aerotel*, 234 F.R.D. at 66 ("[J]udicial economy would be impeded rather than enhanced by consolidation as each defendant would have to attend to significant discovery relevant primarily to the other.").

Consolidating the cases would sacrifice justice, *Dashnaw*, 2006 U.S. Dist. LEXIS at *8, as this would force Defendants to stand by idly — while incurring millions of dollars in costs and while bearing the emotional burden of being defendants in substantial litigation with no end in sight. Certainly, Mr. Oscher and his fellow Defendants did not ask to be participants in this suit — they were sued by Plaintiff, who has since delayed the case time and time again and have fought discovery at every turn.[8] Justice requires, and the Defendants are entitled to, a reasonably efficient adjudication of the case; a result not possible under the Bank Schedule.

## II.    Distinct Questions of Fact and Law Predominate

The cases are comprised of substantially distinct questions of law and fact; this militates against consolidation, as there is little to be gained by placing the cases on the same discovery track. Although a district court may consolidate cases "involving a common question of law or fact," *Fed. R. Civ. P. 42(a)*, where the differences between the cases far outweigh the similarities, consolidation is improper. *Aerotel*, 234 F.R.D. at 66.

---

[8]    Indeed, Judge Morris had grown weary of Plaintiff's attempts to stall progression of the case. *See Dec. 14, 2007 Order Sanctioning Plaintiff*, No. 04-03293 (Bankr. S.D.N.Y.) Dkt. # 114; *Trans. Oct. 17 Hear'g,* p.20:7-13 (Exhibit L, *Defendants' Brief in Opposition to Motion to Withdraw the Reference*) ("When you went running to Judge Gerber and said, stop – it's your case. You're not giving me a case. I have to tell you I've been so frustrated from the very beginning. It's been your case. You're the one that has said that this didn't happen, and yet then you're the one that keeps putting the brakes on and we're trying to move to find out what's going on in this case.").

The following chart highlights some of the differences between the Prestige and Bank cases:

| | BANK CASE | PRESTIGE CASE |
|---|---|---|
| Plaintiffs | Hundreds | 2 |
| Defendants | Hundreds (Institutional) | 6 (Primarily Individuals) |
| Jury Trial | Yes | No |
| Length of Complaint | 475+ pages | 15 pages |
| Counts | 50+ | 3 |
| Solvency Test | Multiple Individual Subsidiaries | Parent Entity |
| Stage of Litigation | Amended Complaint 400 New Defendants | Fact Discovery Nearly Complete |
| Various Causes of Action | 16<br><br>(Fraudulent Conveyance; Violation of Bank Holding Company Act; Equitable Disallowance of Claims; Equitable Subordination of Claims; Recharacterization of Debt as Equity*; Breach of Fiduciary Duty*; Aiding and Abetting Breach of Fiduciary Duty; Aiding and Abetting Fraud; Gross Negligence*; Declaratory Judgment ;  Avoidance and Recovery of Preference Payments; Unjust Enrichment*; Equitable Estoppel*; Negligence; Fraudulent Concealment; Fraud ; Aiding and Abetting Breach of Fiduciary Duty)<br><br>*Denotes claims plead to preserve earlier dismissal for appeal | 2<br><br>(Fraudulent Conveyance; Aiding and Abetting Breach of Fiduciary Duty) |

To prove a claim for fraudulent conveyance, Plaintiff must show that (1) Defendants' cable systems were less than reasonably equivalent value, and (2) that Plaintiff was insolvent at the very time of the transaction. The transaction at issue in the Prestige case is an asset purchase agreement between Adelphia, the parent entity, and some of the Defendants. It is entirely distinct from the transactions at issue in the Bank case, which were loan agreements among numerous Adelphia subsidiaries and the Bank case defendants executed at various different times. From 1999 to 2001, the subsidiaries borrowed money to fund various acquisitions; it is those transactions and those entities that are at issue in the Bank case. Indeed, a loan to an Adelphia subsidiary may or may not have rendered that subsidiary insolvent, but may have had minimal effect on the parent company, which is consolidated with its hundreds of subsidiaries for public reporting purposes. Adelphia used the borrowing agreements to grow exponentially during this time period, and with each cable system purchase, Adelphia also acquired debt. Plaintiff's capitalization changed substantially and frequently during the 1999-2001 timeframe, leaving entirely open the possibility that, while Plaintiff was solvent during the Prestige transaction, it may or may not have been solvent on a different date. Thus, the Prestige and Bank cases involve different financial statements, different entities and different measurement dates. Accordingly, the analysis concerning Plaintiff's solvency in the Prestige case is materially different than the solvency analysis in the Bank case; and the minimal overlap in facts is insufficient to warrant consolidating the cases.

With respect to the aiding and abetting breach of fiduciary duty claims, the issues are, again, entirely different. In the Prestige case, Plaintiff must show that Defendants' actions aided and abetted an alleged attempt by the Rigas family to acquire the Prestige Georgia assets at a below market price. In contrast, the Prestige transaction is not even at issue in the Bank case.

Therefore, although Plaintiff may have pled the same cause of action, the alleged violations themselves are completely different.   When the evidence, transactions and legal issues are different, there is no efficiency to be gained from consolidation.

### III.     Defendants' Proposed Scheduling Order

In light of the fact that consolidation would not increase efficiency, but instead would waste money, time and severely prejudice the Defendants, a different approach is required. Defendants submit that the following proposed schedule ("Suggested Schedule") would maximize judicial efficiency, isolate solvency and minimize prejudice to other parties:

> **Phase One (Fact Discovery):** The parties would have 90 days from the entry of this scheduling order to complete fact discovery. During this period, if the Suggested Schedule is adopted, Defendants expect to take the depositions of approximately seven witnesses (maybe less) that Plaintiff might consider common to the Bank case. (Prior to the entry of the Order, Plaintiff noticed one potentially common witness for a deposition, an attorney at Buchanan Ingersoll, and had remaining a few depositions of other witnesses, including the Defendants individually and as Rule 30(b)(6) representatives.)

> **Phase Two (Summary Judgment):** After fact discovery is complete, expert discovery would be stayed pending the resolution of summary judgment motions. The parties would have 60 days from the end of fact discovery to file a motion for summary judgment. Responsive briefs would be due at an agreeable date, i.e. approximately two months later.

> **Phase Three (Expert Discovery-Reasonably Equivalent Value):** To the extent claims survive motions for summary judgment, Defendants propose bifurcating the case. During Phase Three, the parties would conduct expert discovery regarding whether Defendants' cable systems were of reasonably equivalent value.[9] Thereafter, a trial would be held on all issues except for solvency.

---

[9]      The Defendants believe Georgia fraudulent conveyance law will apply in the Prestige Case, which only requires that the Defendants provide valuable consideration.

**Phase Four** (**Expert Discovery-Solvency**):    During Phase Four, the parties would conduct expert discovery regarding whether Plaintiff was solvent at the time of the transaction at issue.

Defendants believe this case will be disposed of at the summary judgment stage. For instance, if Plaintiff received reasonably equivalent value, the fraudulent transfer claims fail as a matter of law, regardless of solvency. Plaintiff clearly did receive reasonably equivalent value. Plaintiff's own professionals have already examined the Prestige assets at issue under a microscope. After a $100 million restatement of its financials, Adelphia, along with its professionals, concluded and reported to the SEC in its restated financials that the value of the cable systems at issue were within 6% of the contract amount—which is well within the established range of reasonably equivalent value as set forth by fraudulent transfer jurisprudence. *See In re Adventist Centers*, 174 B.R. 505, 517 (Bankr. N.D. Ill. 1994) (finding that a payment of $360,821 was reasonably equivalent value when compared with releasing a lien worth $315,921 (14%)). Moreover, Plaintiff cannot point to any evidence supporting its aiding and abetting breach of fiduciary duty claim. Indeed, the primary alleged violation by the Rigas family in the Prestige case is not even at issue in the Bank case, and, in fact, is inconsistent with Plaintiff's allegations in the *Adelphia v. Rigas* case. *Compare Adelphia v. Rigas*, No. 02-8051, Amended Compl., at ¶ ¶ 147-150; 283-295 (noting that the Rigas's primary breach of fiduciary duty was not paying the ***$400 million*** agreed price to purchase from Adelphia the stock of Prestige GA) *with Adelphia v. Prestige* Am. Compl., ¶21 (alleging the price for the stock of Prestige GA was ***$300 million***). Accordingly, the Prestige case may be disposed of without reference to Plaintiff's financial status, thereby eliminating any concerns of inconsistent findings with respect to solvency. Similarly, the Court may determine whether Plaintiff's aiding and abetting claim survives summary judgment without reference to any actions allegedly taken by the Bank defendants.

During Phase One, the Parties would complete the approximately 15 remaining depositions (maybe fewer). At the current stage of the litigation, document production is nearly complete, including requests to third parties for documents. Accordingly, Defendants anticipate only a few discovery disputes. To the extent a discovery dispute arises, however, this Court would resolve the dispute, ensuring consistency with the Bank case. Defendants note that discovery rulings may differ, as the cases are based upon distinct transactions, without being inconsistent; for example, what is relevant in the Prestige case very well may have no relevance to the Bank case.

At the conclusion of Phase One, discovery would cease while the Parties brief and argue motions for summary judgment during Phase Two. Should Plaintiff's case survive summary judgment, Defendants propose entering Phase Three, which entails conducting expert discovery as to whether Plaintiff received reasonably equivalent value. This analysis involves valuing the Defendants' cable systems, and in no way implicates Plaintiff's financial condition. Moreover, this approach allays Plaintiff's concerns. As to duplicative discovery, this track would permit independent discovery to proceed in both cases without potential overlap. As to efficiency, the resources of the Court and the Parties are saved by narrowing expert discovery.

At the conclusion of Phase Three, if needed, Defendants are amenable to a trial on all issues except for Adelphia's financial condition. This allows for potential adjudication of the case without reference to Plaintiff's financial condition at the time of the transfer; thus foreclosing the possibility of inconsistent rulings at this stage. Indeed, findings of fact by the Court would not have res judicata effect on any issue in the Bank case, as Plaintiff's allegations are based on independent facts and independent transactions.

Finally, in the event Plaintiff's case continues beyond Phase Three, which Defendants submit is highly unlikely, the Parties would conduct expert discovery regarding Plaintiff's solvency.  By this point, the Defendants could, if necessary, consolidate expert discovery on the issue of solvency with the Bank case defendants.  Discovery disputes will be adjudicated simultaneously before the Court, and the Parties will have the opportunity to work together to attain efficiency, notwithstanding that the expert discovery will differ because solvency in the Prestige case is measured at the parent level whereas solvency in the Bank case is measured at the subsidiary level and at a different measuring dates.

## CONCLUSION

For these reasons, Defendants respectfully request the Court adopt the Suggested Schedule and decline to consolidate the Prestige case with the Bank case.

Respectfully submitted,

TROUTMAN SANDERS LLP

By:  /s/ Harris B. Winsberg
    David J. Sheehan
    Harris B. Winsberg (Pro Hac Vice)
    Douglas E. Ernst (Pro Hac Vice)
Bank of America Plaza, Suite 5200
600 Peachtree Street, N.E.
Atlanta, Georgia 30308-2216
Telephone  No.:    (404) 885-3000
Facsimile  No.:    (404) 885-3900

*Counsel to Defendants Prestige Communications of N.C., Inc., et al.*

# EXHIBIT A

TROUTMAN SANDERS LLP
Harris B. Winsberg (Ga. Bar No. 770892)
Douglas E. Ernst (Ga. Bar No. 249956)
600 Peachtree Street, N.E., Suite 5200
Atlanta, Georgia 30308-2216
(404) 885-3000

Counsel for the Defendants

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re: | Chapter 11 |
| ADELPHIA COMMUNICATIONS CORP., et al., a Delaware corporation | Case No. 02-4-1729 (REG) |
| | Jointly Administered |
| Debtors. | |
| ADELPHIA RECOVERY TRUST, | Adv. Pro. No. 04-03293 (CGM) |
| Plaintiff, | |
| v. | |
| PRESTIGE COMMUNICATIONS OF NC, INC., JONATHAN J. OSCHER, LORRAINE OSCHER McCLAIN, ROBERT F. BUCKFELDER, BUCKFELDER INVESTMENT TRUST, and ANVERSE, INC., | |
| Defendants. | |

## FIFTH AMENDED SCHEDULING ORDER

In an effort to coordinate discovery in this action, the parties jointly have agreed to, and propose to the Court, the following amended discovery plan:

1.    March 15, 2008—Fact Discovery Must Be Completed;

2.    April 30, 2008—The Party Bearing the Burden of Proof as to a Particular Issue Shall Serve Expert Reports;

3.      July ~~5~~ *3*, 2008—Responsive Expert Reports Shall be Served;

4.      August ~~10~~ *8*, 2008—All Expert Discovery, including expert depositions, to be completed;

5.      October ~~26~~ *24*, 2008—Deadline to File and Serve All Dispositive Motions;

6.      November ~~28~~ *21*, 2008—Final Pre-trial Order, provided that, in the event that dispositive motions are pending, this deadline shall be suspended until such time as the Court orders otherwise;

7.      December ~~12~~ *17*, 2008—Final Pre-trial Conference, provided that, in the event that dispositive motions are pending, this deadline shall be suspended until such time as the Court orders otherwise;

8.      ~~April 2~~ *January 20,* 2009—Trial Date, provided that, in the event that dispositive motions are pending, this deadline shall be suspended until such time as the Court orders otherwise;

9.      Each Party reserves the right to file a motion to seek a stay of Expert Discovery in the event that a motion for summary judgment is filed.  Each Party also recognizes that any motion for summary judgment filed in this action must comply with S.D.N.Y. Local Bankruptcy Rule 7056-1.

Dated: Poughkeepsie, New York
        October 30, 2007.


                                    /s/ Cecelia Morris
                                    _____
                                    Honorable Cecelia G. Morris
                                    United States Bankruptcy Judge


[SIGNATURES CONTINUED ON NEXT PAGE]


2

Respectfully submitted,


KASOWITZ, BENSON, TORRES &
FRIEDMAN LLP

By:    /s/ David M. Friedman
       David M. Friedman (DF-4278)
       Joseph A. Gershman (JG-8275)
       1633 Broadway
       New York, New York 10019
       Telephone No.:    (212) 506-1700
       *Counsel for Plaintiff*


TROUTMAN SANDERS LLP

By:    /s/ Harris B. Winsberg
       Harris B. Winsberg (Ga. Bar No. 770892)
       Douglas E. Ernst (Ga. Bar No. 249956)
       Bank of America Plaza, Suite 5200
       600 Peachtree Street, N.E.
       Atlanta, Georgia 30308
       Telephone No.:    (404) 885-3000
       *Counsel for Defendants*

# EXHIBIT B

SIMPSON THACHER & BARTLETT LLP

425 LEXINGTON AVENUE
NEW YORK, N.Y. 10017-3954
(212) 455-2000

FACSIMILE (212) 455-2502

## MEMO ENDORSED

E-MAIL ADDRESS
wrussell@stblaw.com

DIRECT DIAL NUMBER

212-455-3979

BY HAND

October 23, 2007

Re: *Adelphia Recovery Trust v. Bank of America, N.A., et al.,*
    Case No. 05 Civ. 9050 (LMM)

The Honorable Lawrence M. McKenna
United States District Judge
United States District Court
Southern District of New York
Daniel Patrick Moynihan United States
Courthouse
500 Pearl Street, Room 1640
New York, New York 10007

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 10/24/07

OCT 2 4 2007

Dear Judge McKenna:

We represent Wachovia Bank, National Association and Wachovia Capital Markets, LLC (f/k/a Wachovia Securities, Inc.), named defendants in the above-captioned action. We write this letter on behalf of the parties who have appeared in the above-captioned action.

On September 21, 2007, we submitted to Your Honor a proposed discovery plan for Your Honor's consideration in accordance with the Court's Memorandum and Order dated August 1, 2007 (as amended by the Court's Memorandum and Order dated September 7, 2007). In our cover letter accompanying this proposed discovery plan, we indicated that there were a few defendants who had not yet decided whether they would participate in the Phase One process described in the proposed discovery plan.

We write this letter to report to Your Honor that each of the defendants listed in footnote 1 of the proposed discovery plan, with the exception of one defendant, has confirmed its agreement to participate in the Phase One process. The parties expect that the remaining defendant, who only recently retained outside counsel, will likewise agree to participate in the Phase One process once its counsel has had the opportunity to familiarize itself with these proceedings and with the proposed discovery plan.

Regardless of whether that defendant decides to sign on to the Phase One process, all other parties are prepared to declare effective the agreement concerning the Phase One process, and agree that the Court should approve the proposed discovery plan at this time. Several of the dates in the proposed discovery plan are triggered by this Court's

LOS ANGELES    PALO ALTO    WASHINGTON, D.C.    BEIJING    HONG KONG    LONDON    TOKYO



SIMPSON THACHER & BARTLETT LLP

The Honorable Lawrence M. McKenna      -2-                    October 23, 2007

entry of an order embodying the schedule set forth in the proposed discovery plan, and the
parties who have appeared in this action agree that there is no need to wait any longer for
this one defendant. The parties hope to provide the Court with a status report as to this
defendant as soon as possible.

        We are available at Your Honor's convenience if the Court has any questions
or wishes to discuss this matter.

                                        Respectfully,

                                        *[signature]*

                                        William T. Russell, Jr.

cc:    The Honorable Daniel H. Weinstein (by email)
       Jed Melnick, Esq. (by email)
       All counsel of record (by email)

*[handwritten note:]*

The discovery plan annexed
to Mr. Russell's letter to the
Court of 9/21/07 is approved.
(The one defendant who has
not, as of this date, decided
to agree to participation may, if
necessary, write to the Court
setting forth with specificity[1]
its objections.) So ordered!

    *[signature]*
    (LMM) 10/24/07

1. Mr. Russell is requested to commu-
nicate a copy of this endorsement
to all interested counsel.

## "PHASE ONE" AND "PHASE TWO" DISCOVERY

WHEREAS, the parties have made substantial progress in agreeing to the scope and schedule for the consensual discovery to be implemented during "Phase One" of a discovery process, the parties suggest the following schedule to govern other aspects of a "Phase One" and a "Phase Two" schedule for this proceeding (although the parties reserve the right to seek a modification of the Phase Two schedule in the event that final agreement to the consensual Phase One process cannot be achieved).

### PHASE ONE

1.      Notwithstanding anything to the contrary contained herein, there shall be no discovery among plaintiff and the Non-Agent Banks[1] during Phase One absent Order of the Court; provided that nothing shall preclude plaintiff and the Non-Agent Banks from making voluntary disclosures during Phase One for the purpose of facilitating settlement negotiations.

---

[1] "Non-Agent Bank" means any defendant that is not an Administrative Agent, Nominal Agent Bank or Investment Bank.

"Administrative Agents" means, collectively, Bank of America, N.A., Bank of Montreal, Citibank, N.A., JPMorgan Chase Bank, N.A., The Bank of Nova Scotia, and Wachovia Bank, National Association.

"Nominal Agent Banks" means, collectively, ABN AMRO Bank N.V., Bankers Trust Company (n/k/a Deutsche Bank AG), Barclays Bank PLC, Calyon New York Branch (f/k/a Credit Lyonnais New York Branch), CIBC, Inc., Cooperatieve Centrale Raiffeisen-Boerenleenbank B.A. (Rabobank Nederland, New York Branch), Credit Suisse Capital Funding, Inc. (f/k/a DLJ Capital Funding, Inc.), Credit Suisse, New York Branch (f/k/a Credit Suisse First Boston, New York Branch), Merrill Lynch Capital Corp., Morgan Stanley Senior Funding, Inc., PNC Bank, National Association, Societe Generale, S.A., SunTrust Bank, The Bank of New York, The Fuji Bank, Limited, The Royal Bank of Scotland plc, and Toronto Dominion (Texas) LLC.

"Investment Banks" means, collectively, Banc of America Securities LLC, BMO Nesbitt Burns Corp., Wachovia Capital Markets LLC (f/k/a Wachovia Securities, Inc.), Citigroup Global Markets Holdings, Inc. (f/k/a Salomon Smith Barney Holdings Inc.), ABN AMRO Securities LLC, BNY Capital Corp., Scotia Capital (USA), Inc., Barclays Capital, Inc., CIBC World Markets Corp., Chase Securities, Inc., Calyon Securities (USA) Inc. (f/k/a Credit Lyonnais Securities (USA), Inc.), Credit Suisse (USA), Inc. (f/k/a Credit Suisse First Boston (USA), Inc. and Donaldson, Lufkin & Jenrette, Inc.), Deutsche Banc Alex Brown, Inc. (f/k/a BT Alex Brown, Inc.), Fleet Securities, Inc., Merrill Lynch & Co., Inc., Morgan Stanley & Co., Inc., PNC Capital Markets, Inc., The Royal Bank of Scotland plc, SG Cowen Securities Corporation, SunTrust Securities, Inc., and TD Securities (USA) Inc.

2

2.   The parties may serve interrogatories in accordance with the Federal Rules of Civil

Procedure and the Local Rules concerning the identity of potential witnesses and calculation of

damages on or after October 1, 2007.  Plaintiff's pending interrogatories shall be responded to

within 30 days of the date of an Order approving this discovery schedule.

3.   On or after October 15, 2007 (i) plaintiff may serve document requests on any defendant,

and (ii) any defendant may serve document requests on plaintiff.  Plaintiff's pending document

requests shall be answered within 30 days of the date of an Order approving this discovery

schedule.

4.   On or after October 15, 2007, the parties may serve subpoenas seeking documents but not

testimony on non-parties.

5.   The parties will work out a deposition protocol for Phase Two that will include

reasonable deposition schedules, time limits on depositions and provisions to prevent duplication

of effort.

6.   Any disputes concerning the scope of discovery that cannot be resolved consensually

with the assistance of The Honorable Daniel Weinstein (the "Mediator") will be submitted to the

Court so that remaining discovery can proceed expeditiously during Phase Two.

PHASE TWO

7.   The parties will commence Phase Two on the earlier of (i) March 15, 2008, and (ii) the

date on which the Mediator declares that an impasse has been reached in settlement negotiations.

Phase Two will include depositions, any further electronic discovery that may be agreed to by

the parties or ordered by the Court, and any discovery commenced but not completed during

3

Phase One. Prior to the commencement of Phase Two, the parties shall take the steps necessary to preserve and make reasonably available the materials necessary to begin document production promptly after Phase Two commences. Nothing herein shall require the parties to commence the process of actually restoring any electronic storage media prior to the commencement of Phase Two.

8.     Fact depositions shall commence 6 months after Merrill completes substantially all of the changes to the Merrill database set forth in the separate agreement between the parties concerning the Merrill database. Merrill estimates completion of those changes by late October. Plaintiff shall notify defendants and the Court when it believes that these changes have been substantially completed. To the extent defendants maintain that these changes have not been substantially completed, defendants shall immediately notify plaintiff and the Court. Any dispute regarding the substantial completion of the changes to the Merrill database shall be decided by the Mediator.

9.     Status conference with Judge McKenna one month prior to commencement of fact depositions.

10.     The parties will make good faith efforts to complete fact depositions within 6 months after commencement.

11.     Status conference with Judge McKenna one month prior to the end of fact depositions.

12.     A schedule for "Phase Three" expert discovery and summary judgment motions, if any, to be established at or before the status conference referred to in paragraph 11 above.

4

13.     Trial will commence no earlier than March 1, 2009.

Dated: September 21, 2007

# EXHIBIT C

*The reference having been withdrawn as to the Prestige case, counsel may submit comments or suggestions to the Court regarding consolidation, within 14 days of the date hereof. Counsel are to docurment a copy of this endorsement to all attached counsel. So ordered.*

*~~~ L.M.M. (LMM) 1/16/08*

**MAYER · BROWN**

December 14, 2007

Mayer Brown LLP
1675 Broadway
New York, New York 10019-5820

Main Tel (212) 506-2500
Main Fax (212) 262-1910
www.mayerbrown.com

Jean-Marie L. Atamian
Direct Tel (212) 506-2678
Direct Fax (212) 849-5678
jatamian@mayerbrown.com

BY HAND

The Honorable Lawrence M. McKenna
United States District Judge
United States District Court
Southern District of New York
Daniel Patrick Moynihan United States Courthouse
500 Pearl Street, Room 1640
New York, NY 10007

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 1/16/07

DEC 1 7 2007

Re:    *Adelphia Recovery Trust v. Bank of America, N.A.,
       et al.,* 05 Civ. 9050 (LMM)

# MEMO ENDORSED

Dear Judge McKenna:

We represent Bank of Montreal and BMO Capital Markets Corp., named defendants in the above-referenced action (the "Bank Litigation"). We respectfully submit this letter on behalf of Bank of Montreal, BMO Capital Markets Corp. and certain other defendants named in the Bank Litigation (the "Bank Litigation Defendants").

On December 3, 2007, plaintiff Adelphia Recovery Trust ("Plaintiff") filed, in the United States Bankruptcy Court for the Southern District of New York ("Bankruptcy Court"), a Motion to Withdraw the Reference of two adversary proceedings currently pending in the Bankruptcy Court. Those two adversary proceedings are captioned, *Adelphia Recovery Trust v. Prestige Communications of NC, Inc. et al.,* No. 02-41729 (REG), Adv. Pro. No. 04-03293 (CGM) (Bankr. S.D.N.Y.) (the "Prestige Case") and *Adelphia Recovery Trust v. FPL Group, Inc. et al.,* No. 02-41729 (REG), Adv. Pro. No. 04-03295 (REG) (Bankr. S.D.N.Y.) (the "FPL Case").

Although styled as a "Motion to Withdraw the Reference," Plaintiff's motion appears to go beyond a simple request that the Court withdraw the reference of the Prestige and FPL Cases, pursuant to 28 U.S.C. § 157(d). Rather, Plaintiff, in its memorandum of law, has raised the issue of consolidating the Prestige and FPL Cases with the Bank Litigation and has, among other things, implicated the Bank Litigation's mediation process before Judge Daniel Weinstein.

In view of the fact that any potential consolidation will necessarily and directly impact mediation, discovery, motion practice and trial in the Bank Litigation, Defendants respectfully request that -- in the event Plaintiff's withdrawal motion is granted, and the Prestige and FPL Cases are transferred to Your Honor's docket -- the Bank Litigation Defendants have the

Mayer Brown LLP

The Honorable Lawrence M. McKenna
December 14, 2007
Page 2

opportunity to be heard prior to any determination on the issue of consolidation. Indeed, among
other things, the Prestige and FPL Cases have discovery cutoffs that expire in just a few months.
In contrast, with the amended complaint filed by Adelphia a few weeks ago, over 500 new
defendants have just been added to the Bank Litigation, the vast majority of which (to our
knowledge) have not even been served, and while Adelphia has had access to millions of pages
of records produced by the defendants that are already in the Bank Litigation (including dozens
of depositions taken in the Bankruptcy and in related litigation), even the pre-existing defendants
(themselves numbering in the hundreds) have yet to get meaningful access to Adelphia's records
(which are electronically housed on a database Adelphia concedes is broken, has repeatedly
promised to fix, but has not yet succeeded in fixing).

To that end, we are available at Your Honor's convenience for a conference, hearing or to
otherwise discuss the matter.

Respectfully,

Jean-Marie Atamian

Jean-Marie L. Atamian

cc:    The Honorable Daniel H. Weinstein (by e-mail)
       Jed Melnick, Esq. (by e-mail)
       All Counsel of Record (by e-mail)

17484210

# EXHIBIT D

KASOWITZ, BENSON, TORRES & FRIEDMAN LLP

1633 BROADWAY

NEW YORK, NEW YORK 10019-6799

212-506-1700

FACSIMILE: 212-506-1800

MICHAEL C. HARWOOD
212-506-1709

700 LOUISIANA STREET
HOUSTON, TEXAS 77002
713-220-8800

ONE GATEWAY CENTER
NEWARK, NEW JERSEY 07102
973-645-9462

December 17, 2007

**VIA HAND DELIVERY**

The Honorable Lawrence M. McKenna
United States District Judge
United States Courthouse
500 Pearl Street, Room 1640
New York, New York 10007

Re:    *Adelphia Recovery Trust v. Bank of America, N.A. et al.*;
       Index No. 05-9050 (LMM)

Dear Judge McKenna:

We represent the Adelphia Recovery Trust, plaintiff in the above-referenced action. We write in response to the letter dated December 14, 2007 from Mr. Atamian of Mayer Brown regarding the Trust's motions in two other actions (the Prestige Litigation and the FPL Litigation) to withdraw the reference from the bankruptcy court to this Court. Mr. Atamian says he submitted his letter on behalf of his clients Bank of Montreal and BMO Capital Markets "and certain other defendants named in the Bank Litigation," but he never identifies those "certain other defendants." Nor can we hazard a guess as to who he might be including inasmuch as Mr. Atamian never contacted us regarding the subject of his letter or the pending motions and no party in this action has sought to confer on the impact that the motions to withdraw might have on the Bank Litigation. BMO and the other defendants in the Bank Litigation are not parties to the withdrawal motions nor do those motions seek any substantive relief against them. Nonetheless, they are welcome to discuss with us, and will all have ample opportunity to be heard by the Court regarding, the procedural aspects of a possible consolidation for administrative purposes of the Prestige and FPL Litigations with the Bank Litigation if the withdrawal motions are granted.

Ordinarily, we would simply have left Mr. Atamian's entirely unnecessary letter unanswered if not for his unfortunate misstatements of the current pre-trial record, which we are constrained to correct, and his failure to abide by the spirit of cooperation that the parties and the Mediator have fostered to date. First, Mr. Atamian asserts that the nearly 400 additional assignee defendants (not "over 500," as he states) "have not even been served." This is simply false. Plaintiff has served the Amended Complaint on every new assignee defendant either at the address they provided in their assignment agreements, at their last known address, or through their designated agents for service. Some of those complaints have been returned and we have attempted to re-serve them. As of this time, nearly every new defendant was effectively served

KASOWITZ, BENSON, TORRES & FRIEDMAN LLP

The Honorable Lawrence M. McKenna
December 17, 2007
Page 2

within two weeks after the Amended Complaint was filed, and there remain at most 25 defendants that we are still seeking to serve, some of which are investment funds that may no longer exist.  Second, Mr. Atamian repeats an attack on Plaintiff's electronic discovery database that is both untrue and inconsistent with the agreement between Plaintiff and the entire defense group (including counsel for BMO), which was brokered with the assistance of Judge Weinstein. Plaintiff has never "conceded" that its electronic database is "broken" – indeed, it was used successfully by the parties in the Deloitte Litigation and was modified in a cooperative manner for the parties in the Prestige Litigation.  At the request of the Bank Litigation defendants and in keeping with the spirit of the mediation, we agreed to various upgrades of the database that will make searches faster and more effective.  Those upgrades were scheduled as part of the Phase One/Phase Two discovery stipulations and are presently on target.  No other defendant has complained about this process since the agreement was reached.

We apologize for burdening the Court with these issues, but we could not leave Mr. Atamian's misstatements uncorrected.  The parties' cooperative efforts, with the assistance of Judge Weinstein, have worked well and have until now kept these kinds of exchanges from the Court's inbox.  As to the withdrawal motions, we reiterate that we are fully prepared to discuss with the parties the procedures that would be followed if this Court were to grant those motions. But it is premature for Mr. Atamian to raise it with the Court before talking to us and it would be both premature and presumptuous for the Trust to have raised it with the Court before the pending motions are resolved.

Respectfully submitted,

Michael C. Harwood

cc:    Honorable Daniel H. Weinstein
       Jed Melnick
       All Counsel of Record
             (via e-mail)

# EXHIBIT E

**From:**     Joseph Gershman [JGershman@kasowitz.com]
**Sent:**     Monday, January 07, 2008 7:27 PM
**To:**     Ernst, Douglas E.
**Cc:**     David M. Friedman; Paul G. Williams
**Subject:** Depos & Docs - Summary of 1/3/08 Call

Doug -

I belive that your recitation is accurate, other than as set forth below.

P. J. Charlton's deposition will be this Friday at 10 a.m. at the offices of Klehr Harrison - an Amended Notice was sent to you last week.

With respect to the Deloitte expert reports, Adelphia does not object to your access to, or review of, the reports submitted by Deloitte's experts provided that the disclosure of Deloitte's experts' reports is without prejudice to, and does not waive, our objection to the relevance or admissibility of any expert materials from the Deloitte Action, and provided further that the Prestige Defendants do not argue that the production of these materials in any way undermines or affects our objection to the request for production of Adelphia's expert reports.

I am available to discuss the 6th and 7th Requests tomorrow, at either 11 or 2, or on Thursday at 2. Let's also add Plaintiff's Third Document Request to Defendants, and our Rule 11 letter to this discussion as well. Let me know if any of these times work for you.

With respect to the 2006 tax documents you have requested, Adelphia has asked for an explanation of the relevance of the tax documents relating to the gain on the sale to the Prestige case. Adelphia is in the process of reviewing your proposal with respect to the tax documents.

Also, in our conversation Defendants confirmed that Earline Holmes will be the 30(b)(6) designee for both Anverse and Prestige Communications of NC, Inc. as to all topics other than topics 3, 4, 5, 12, and 14.

                                                                 - Joe


-----Original Message-----
**From:** Ernst, Douglas E. [mailto:douglas.ernst@troutmansanders.com]
**Sent:** Friday, January 04, 2008 3:05 PM
**To:** Joseph Gershman
**Cc:** Winsberg, Harris B.; Nail, Garrett A.
**Subject:** Depos & Docs - Summary of 1/3/08 Call

Hi Joe,

In order to avoid any confusion and delay, I had the following summary prepared of our call yesterday:


**A. Deposition Scheduling:**

PJ Charlton's deposition will be in Philadelphia on Friday, January 11, at 10:00 am. Joe is to confirm the date and location.

Stephanie Gill's deposition is scheduled for Thursday, January 24, at 10:00 am, and will be at Thorpe, Reed & Armstrong in Pittsburgh.

With regard to Paul Quinn's work papers related to the issue summaries, you indicated that they have been produced, and are stamped with ADPR bates numbers. Paul Quinn's deposition is confirmed for Friday, January 25, 10:00 am, and will be at Thorpe, Reed & Armstrong in Pittsburgh.

Jon Oscher's deposition is scheduled for January 17 and 18, in Atlanta. The parties disagree as to the specific location...you have requested your local Atlanta office, we have requested our Atlanta office.

We will check to see Earline Holmes' availability for February 6 and 7 in Atlanta. Again, the parties disagree as to the specific location.

We will check to see Robert Buckfelder's availability for the Buckfelder Investment Trust for February 28, either in Atlanta or in Charlotte.

Tom Garrett's deposition will be March 7, 10:00 am, at Troutman Sanders' Washington D.C. offices. If necessary Tom Pickette's deposition will be the following week in Boston.

You will contact Chambers, Coyle, and Naes to determine available dates. We would like to confirm those dates as soon as possible. So it would help if you could get several potential dates for each witness. Coyle's deposition is likely to take place in West Palm Beach. You said you would promptly email Harris with possible dates for Lorraine Oscher McClain.

You indicated that, at this time, the only remaining fact depositions Adelphia plans to take are as follows: Jon Oscher, individually and as 30(b)(6) deponent for Anverse, Lorraine Oscher McClain, Earline Holmes, individually and as 30(b)(6) deponent for Anverse, Robert Buckfelder as 30(b)(6) deponent for Buckfelder Investment Trust and the Prestige NC Rule 30(b)(6) notice.

As far as the Prestige NC Rule 30(b)(6) notice, Jon Oscher can testify as to topics nos. 3, 4, 5, 12 & 14. These are the identical topics found in the Anverse Rule 30(b)(6).

**B. 7th Request For Documents:**

We need to have a meet and confer as to the 6th request for documents and the 7th request for documents. Please give us some dates and times when you are available to discuss.

We told you that we have had discussions with Deloitte about reviewing their expert reports and then returning the reports to Deloitte so that we may narrow our requests to Deloitte. Deloitte has asked us to see whether Adelphia objects to us reviewing the Deloitte expert reports under these conditions. Does Adelphia object to us looking at the Deloitte Expert Reports? Please let us know as soon as possible.

With regard to the tax documents requested for year 2006, you will see if Adelphia is willing to produce the 2006 tax return and the work papers showing how Adelphia reported and calculated the total gain on the sale, including, but not limited to, the work papers showing the gain calculation on the four cost centers. Should these documents prove insufficient, we reserve the right to our entire request.

With regard to the request for any amended 2000 tax return, you informed us for the first time that you believe an amended return was filed in the Fall of 2007. You will see if Adelphia is willing to produce the amended tax return, as well as any working papers discussing any aspect of the tax treatment of the Prestige Transaction. Should these documents prove to be insufficient, we reserve the right to our entire request. You asked whether we would agree that any of these tax documents produced to us be produced under a protective order similar to the order entered for the defendants' individual tax returns. While we believe that corporate tax returns are in no way analogous to individual tax returns (particularly when Adelphia has liquidated), we will agree to a similar consent protective order to expedite the production of these tax documents.

That's all I have.  If this summary of our call is incorrect or incomplete, please let me know at your earliest convenience.

Thanks Joe.  See you next week!

---

IRS Circular 230 disclosure: To ensure compliance with requirements imposed by the IRS, we inform you that any tax advice that may be contained in this communication (including any attachments) is not intended or written to be used, and cannot be used, for the purpose of (i) avoiding any penalties under the Internal Revenue Code or (ii) promoting, marketing or recommending to another party any transaction(s) or tax-related matter(s) that may be addressed herein.

This e-mail communication (including any attachments) may contain legally privileged and confidential information intended solely for the use of the intended recipient. If you are not the intended recipient, you should immediately stop reading this message and delete it from your system. Any unauthorized reading, distribution, copying or other use of this communication (or its attachments) is strictly prohibited.

This e-mail and any files transmitted with it are confidential and may be subject to the attorney-client privilege.  Use or disclosure of this e-mail or any such files by anyone other than a designated addressee is unauthorized.  If you are not an intended recipient, please notify the sender by e-mail and delete this e-mail without making a copy.