UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

ADELPHIA RECOVERY TRUST,

    Plaintiff,

v.

PRESTIGE COMMUNICATIONS OF NC, INC.
*et al.*,

    Defendants.

Case No. 1:07 Civ. 11152 (LMM)

## MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' THIRD MOTION TO COMPEL THE PRODUCTION OF DISCOVERY

Dated: July 14, 2008

TROUTMAN SANDERS LLP

Harris B. Winsberg (*Pro Hac Vice*)
   (Ga. Bar No. 770892)
Douglas E. Ernst (*Pro Hac Vice*)
   (Ga. Bar No. 249956)
Sean P. Dailey (*Pro Hac Vice*)
   (Ga. Bar No. 441395)

Bank of America Plaza – Suite 5200
600 Peachtree Street, N.E.
Atlanta, Georgia  30308-2216

(404) 885-3000 (tel.)
(404) 885-3900 (fax)

*Counsel to Defendants*

# TABLE OF CONTENTS

TABLE OF CONTENTS ........................................................................................................... i

TABLE OF AUTHORITIES ................................................................................................... ii

INTRODUCTION ................................................................................................................... 2

FACTUAL BACKGROUND .................................................................................................. 3

    A.    The Deloitte Litigation .................................................................................... 3

    B.    Defendants' Efforts to Obtain The Deloitte Materials ................................... 4

        1.    Defendants' Document Requests to Plaintiff ................................... 4

        2.    Defendants' Subpoena to Deloitte .................................................... 5

        3.    Defendants' Subpoena to the Rigas Family ...................................... 6

    C.    Negotiations Among The Parties .................................................................... 6

ARGUMENT AND CITATION OF AUTHORITY ................................................................ 7

    I.    The Deloitte Materials Are Relevant And Not Privileged ............................. 7

    II.    Plaintiff's Claims Of Confidentiality Are Not Credible ................................. 9

    III.    Defendants' Requests Are Authorized by The Federal Rules ..................... 10

CONCLUSION ...................................................................................................................... 11

## **TABLE OF AUTHORITIES**

### **FEDERAL CASES**

*In re Bairnco Corp. Sec. Litig.*, 148 F.R.D. 91 (S.D.N.Y. 1993) ..................................................7

*Burke v. New York City Police Dep't*, 115 F.R.D. 220 (S.D.N.Y. 1987) .........................................8

*Convermat Corp. v. St. Paul Fire & Marine Ins. Co.*, No. CV 06-1045,
    2007 U.S. Dist. LEXIS 69102 (S.D.N.Y. Sept. 18, 2007).....................................................8

*Daval Steel Prods. v. M/V Fakredine*, 951 F.2d 1357 (2d Cir. 1991) ............................................7

*Fletcher v. Atex, Inc.*, 156 F.R.D. 45 (S.D.N.Y. 1994)....................................................................7

*Flying J Inc. v. TA Operating Corp.*, No. 1:06-CV-30, 2007 U.S. Dist. LEXIS 55574
    (D. Utah July 30, 2007)........................................................................................................11

*Griffith v. U.S.*, No. Part I M8-85, 2007 U.S. Dist. LEXIS 36672
    (S.D.N.Y. Apr. 24, 2007).......................................................................................................8

*Heat & Control, Inc. v. Hester Indus., Inc.*, 785 F.2d 1017 (Fed. Cir. 1986)..................................9

*Jans v. Gap Stores, Inc.*, No. 6:05-cv-1534-Orl-31JGG, 2006 U.S. Dist. LEXIS 67266
    (M.D. Fla. Sept. 20, 2006) ...................................................................................................11

*Mac-Ray Corp. v. Ricotta*, No. 03-CV-524S(F), 2004 WL 1368857
    (W.D.N.Y. June 16, 2004) ...................................................................................................10

*Martin v. Valley Nat'l Bank*, 140 F.R.D. 291 (S.D.N.Y. 1991).......................................................7

*Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340 (1978).............................................................7

*Sullivan v. Sturm, Ruger & Co.*, 80 F.R.D. 489 (D. Mont. 1978)..................................................11

### **DOCKETED CASES**

*Adelphia Commc'ns Corp. v. Deloitte & Touche, LLP*, No. 000598 (Pa. Commw. Ct.,
    Phil. Co., November Term 2002).........................................................................................1

### **FEDERAL RULES**

Fed. R. Civ. P. 26(b)(1) ...............................................................................................................7, 8

Fed. R. Civ. P. 26(b)(4)(B) ............................................................................................................10

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| ADELPHIA RECOVERY TRUST,<br><br>Plaintiff,<br><br>v.<br><br>PRESTIGE COMMUNICATIONS OF NC, INC. *et al.*,<br><br>Defendants. | Case No. 1:07 Civ. 11152 (LMM) |

### MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' THIRD MOTION TO COMPEL THE PRODUCTION OF DISCOVERY

Defendants Prestige Communications of NC, Inc., Jonathan J. Oscher, Lorraine Oscher McLain, Robert F. Buckfelder, The Buckfelder Investment Trust, and Anverse, Inc. (collectively, "Defendants"), by and through counsel, and pursuant to Rule 37(a) of the Federal Rules of Civil Procedure and Local Rule 37.2, respectfully submit this memorandum of law, together with the accompanying Affirmation of Douglas E. Ernst, in support of their motion to compel the Adelphia Recovery Trust ("Plaintiff") to produce all withheld expert materials to the Defendants from another, prior action, filed against Adelphia's prior auditors, styled *Adelphia Commc'ns Corp. v. Deloitte & Touche, LLP*, No. 000598 (Pa. Commw. Ct., Phil. Co., November Term 2002) (the "Deloitte Litigation"), including but not limited to: (i) Adelphia Communications Corporation's ("Adelphia") expert reports and expert deposition transcripts, including any exhibits thereto; and (ii) Deloitte's expert deposition transcripts, including any exhibits thereto (collectively, the "Deloitte Materials").

**INTRODUCTION**

Discovery in this case has been long and arduous. Despite commencing this lawsuit, Plaintiff never misses a chance to resist discovery, regardless of merit.[1] Plaintiff's repeated attempts to frustrate Defendants' efforts to obtain even the most basic discovery are costing Defendants considerable time and money. Despite substantially losing the prior two discovery contests, Plaintiff's actions have caused the filing of Defendants' *third* motion to compel in less than two years.[2]

In this case, Plaintiff is prosecuting a fraudulent transfer against the Defendants, relying on Adelphia's restated financials as evidence of the fact that Adelphia was allegedly insolvent and/or inadequately capitalized at the time of the transfer. (*See* Affirmation of Douglas E. Ernst ("Ernst Aff."), Ex. "A", ¶ 30). The Deloitte Materials concern the very documents that will be used to determine solvency and adequate capitalization: Adelphia's financial statements and the validity of the information contained therein. Thus, the Deloitte Materials are directly relevant to these proceedings.[3]

While Deloitte has produced certain of its expert materials to Defendants, Plaintiff has refused. Defendants have conferred, in good faith, with Plaintiff by phone and in writing, but to no avail. Accordingly, Defendants respectfully request that Plaintiff be compelled to produce the Deloitte Materials without further delay.

---

[1]    *See, e.g.*, Order Granting Sanctions to Defs. for Pl.'s Failure to Produc. Docs., dated Dec. 14, 2007, Adv. Pro. No. 04-3293 (Bankr. S.D.N.Y.) (ECF Doc. No. 114).

[2]    *See generally* Defs.' Mot. to Compel the Produc. of Docs., dated Sept. 14, 2006, Adv. Pro. No. 04-03293 (Bankr. S.D.N.Y.) (ECF Doc. No. 34); Defs.' Second Mot. to Compel the Produc. of Docs., dated Sept. 24, 2007, Adv. Pro. No. 04-03293 (Bankr. S.D.N.Y.) (ECF Doc. No. 78).

[3]    Certain of the defendants in the Bank Litigation (the "Bank Defendants") have filed a motion to compel, seeking the same documents from Plaintiff. *See generally* Mem. of Law in Supp. of Bank Defs.' Mot. to Compel Pl.'s Produc. of Expert Materials from Related Action, dated Nov. 21, 2007, No. 05 Civ. 9050 (S.D.N.Y.) (ECF Doc. No. 149).

**FACTUAL BACKGROUND**

A.  **The Deloitte Litigation**

The Deloitte Litigation included claims of professional negligence, breach of contract, and fraud. (*See generally* Ernst Aff., Ex. "B"). The core questions were whether Adelphia's consolidated financials "presented fairly, in all material respects, the financial position" of the company "in conformity" with Generally Accepted Accounting Principles and whether Deloitte violated Generally Accepted Accounting Standards in issuing "clean" opinions on those statements. (Ernst Aff., Ex. "B", ¶ 10). Plaintiff alleged that Deloitte caused Adelphia's bankruptcy. (Ernst Aff., Ex. "B", ¶ 170).

On December 23, 2004, Adelphia filed its Form 10-K (sometimes referred to as the "Super 10-K"), which concluded a massive restatement effort of Adelphia's financials that cost the bankruptcy estate in excess of $100 million.[4] During the restatement, Adelphia addressed in excess of 120 accounting issues (the "Issue Summaries"), which were resolved before Adelphia filed the Super 10-K. (Ernst Aff., Ex. "C", p. 321). As a result of the restatement process, Adelphia reduced its stockholders' equity for the year-ended December 31, 2000 from $4.15 billion to $1.38 billion – meaning that Adelphia *reduced* its stockholders' equity by $2.76 billion for a fiscal year in which Deloitte had previously certified Adelphia's financial statements. (*See* Ernst Aff., Ex. "D"). Adelphia also reduced its cash flow or "EBITDA" (Earnings Before Interest Taxes Depreciation and Amortization) for the same year from approximately $1.1 billion to approximately $221 million. Not surprisingly, the vast majority of the expert discovery that took place in the Deloitte Litigation concerned the accuracy and precision of Adelphia's original *versus* its restated financials. The parties settled the Deloitte Litigation in August 2007.

---

[4]   *See generally Bench Decision on Confirmation*, dated Jan. 3, 2007, No. 02-41729 (Bankr. S.D.N.Y.) (ECF Doc. No. 12920) (discussing history of the restatement of Adelphia's financial statements).

3

When the litigation was still pending, the Deloitte Litigation parties executed a confidentiality agreement to govern the use and dissemination of, among other things, the Deloitte Materials (the "Deloitte Confidentiality Agreement").  (*See generally* Ernst Aff., Ex. "E").  Specifically, the Deloitte Confidentiality Agreement prohibits, among other things, the disclosure of "Confidential Information" to "any person" other than the parties to that agreement. (Ernst Aff., Ex. "E", ¶ 7.4).  On September 22, 2006, in order to obtain documents from the Deloitte Litigation, Defendants entered into an agreement to maintain the confidentiality of any materials designated as "confidential" or "highly confidential" under the Deloitte Confidentiality Agreement.[5]  (Ernst Aff., Ex. "G").

### B.  Defendants' Efforts to Obtain The Deloitte Materials

#### 1.  Defendants' Document Requests to Plaintiff

Defendants specifically requested production of certain of the Deloitte Materials over a year ago.  Defendants' Fourth Request for Production of Documents (Request No. 9), served in June 2007, sought "expert reports prepared on behalf of Adelphia, the Adelphia Creditors' Committee, … or their opposition … in connection with" the Deloitte Litigation (the "Fourth Request").  (Ernst Aff., Ex. "H", pp. 10-11).  On July 23, 2007, Plaintiff objected to the Fourth Request on relevancy grounds and because certain of the requested documents "are believed to be covered by confidentiality agreements."  (Ernst Aff., Ex. "I", pp. 10-12).  Plaintiff agreed, subject to these objections, to produce documents "relate[d] to the Prestige Transaction."

Defendants' Sixth Request for Production of Documents (Request No. 2), served in November 2007, requested certain additional Deloitte Materials including, but not limited to "all expert reports, summary judgment pleadings and briefs, and all exhibits related thereto, filed on behalf of Adelphia, Deloitte … and the Rigas [F]amily … in the Deloitte Litigation" (the "Sixth

---

[5]  On March 8, 2005, Plaintiff and Defendants entered into a confidentiality agreement in this case (the "Prestige Confidentiality Agreement").  (Ernst Aff., Ex. "F").

4

Request").[6]  (Ernst Aff., Ex. "J", p. 6).  Plaintiff again objected on relevancy grounds and because the documents are "designated confidential under a confidentiality agreement."  (Ernst Aff., Ex. "K", pp. 4-5).  Plaintiff further objected to Request No. 2 as "duplicative of Request No. 9, subpart (d) of Defendants' Fourth Request."[7]  Notwithstanding the forgoing objections, Plaintiff agreed to produce "relevant documents" responsive to Request No. 2.[8]

Finally, Defendants' Seventh Request for Production of Documents (Request No. 12), also served in November 2007, sought "[u]nredacted deposition transcripts with exhibits of the expert witnesses" in the Deloitte Litigation (the "Seventh Request").  (Ernst Aff., Ex. "L", p. 7).  Plaintiff objected as to privilege and again as to relevancy and that "certain of the requested transcripts and exhibits are protected by a Confidentially Agreement."  (Ernst Aff., Ex. "M", pp. 8-9).  Despite the privilege objection, Plaintiff has failed to produce a privilege log relating to any of the Deloitte Materials.  (Ernst Aff., ¶ 17).

### 2.     Defendants' Subpoena to Deloitte

In November 2007, Defendants also issued a Rule 45 subpoena *duces tecum* to Deloitte, seeking: (i) documents sufficient to show the names of the witnesses deposed; (ii) all expert reports, summary judgment pleadings and briefs prepared on behalf of Adelphia or Deloitte (or the Rigas Family); and (iii) unredacted deposition transcripts of the expert witnesses.  (Ernst

---

[6]  Request No. 1 also sought expert materials from the Deloitte Litigation (*e.g.*, "[d]ocuments sufficient to show the names of all witnesses deposed in … the 'Deloitte Litigation'").  (Ernst Aff., Ex. "J", p. 6).

[7]  Plaintiff's objection belies its claim in its Motion to Withdraw the Reference that "after serving five document requests in which no request for the Deloitte expert reports was made, suddenly on November 6, the … Defendants served a document request seeking the very same Deloitte expert reports."  Pl.'s Mot. to Withdraw the Reference, dated Dec. 3, 2007, at 14 (ECF Doc. No. 1) (emphasis added).  *See also* Defs.' Br. in Opp'n to Mot. to Withdraw the Reference, dated December 17, 2007, at 14-16 (ECF Doc. No. 3) (explaining that Defendants' interest in the Deloitte Materials began long ago).

[8]  Plaintiff recently produced the summary judgment pleadings filed by Adelphia and the Rigas Family from the Deloitte Litigation in redacted form.  If the Defendants cannot secure these documents in unredacted form, the Defendants will be seeking leave to move to compel these documents.

Aff., Ex. "N", pp. 4). Deloitte objected, in part on relevancy grounds and because the documents were governed by the Deloitte Confidentiality Agreement. (Ernst Aff., Ex. "O", pp. 5-6).

### 3. Defendants' Subpoena to the Rigas Family

On March 24, 2008, Defendants issued a Rule 45 subpoena *duces tecum* to the Rigas Family relating to the Deloitte Litigation. (Ernst Aff., Ex. "P"). The Subpoena sought: (i) all expert reports prepared on behalf of the Rigas Family; and (ii) unredacted deposition transcripts of the Rigas Family's expert witnesses. The Rigas Family produced these documents without objection. (Ernst Aff., ¶ 21). Among the documents produced was the report of Kenneth McGraw analyzing the value of certain cable systems, including some of the cable systems at issue in this litigation. (Ernst Aff., ¶ 22).

## C. Negotiations Among The Parties

Deloitte eventually agreed to produce its own experts' reports.[9] (*See* Ernst Aff., Ex. "Q"). Adelphia, however, objected to the production of Deloitte's expert deposition transcripts even though Deloitte itself waived any objection.[10] (*See* Ernst Aff., Ex. "Q", p. 2 n. 1; Ernst Aff., Ex. "S"). In a March 27, 2008 letter, Defendants asked Plaintiff to "explain the basis for [its] objection … to Deloitte producing the depositions the transcripts and associated exhibits thereto of Deloitte's own expert witnesses." (Ernst Aff., Ex. "T", p. 2). Previously, in a letter dated February 13, 2008, Defendants made clear that Plaintiff's objections to Request No. 2 from Defendants' Fourth Request are inadequate for the following reasons:

---

[9] Defendants elected not to seek Deloitte's summary judgment pleadings and briefs from the Deloitte Litigation from Deloitte. In addition, Defendants elected not to seek Deloitte's corporate governance report after reviewing the report in its entirety.

[10] Plaintiff's refusal runs contrary to its previous representations to Defendants and to the Bankruptcy Court. (*See* Ernst Aff., Ex. "R", p. 15) ("You have – you said from the very beginning – basically, you told Troutman Sanders go to the – go to Deloitte. If you can get it, you can have it. That's basically what you said.").

> The requested documents are clearly relevant to the issue of insolvency (of Adelphia). Specifically, the requested documents address issues that directly bear on the financial condition of Adelphia, such as the accounting treatment of the co-borrowing debt, the fixed asset scrub done by Adelphia in the restatement and whether Adelphia was adequately capitalized. Furthermore, as you are well aware, Defendants are parties to the "confidentiality agreement" referred to in Plaintiff's objections (have been since September 2006, so I am unclear on how that agreement could possibly serve as a legitimate basis for objection. Please produce all responsive documents immediately.

(Ernst Aff., Ex. "U", p. 1). Some five months later, Plaintiff has yet to send a written response or produce the requested documents.

On June 20, 2008, the parties conferred by phone but were not able to resolve their differences. In refusing to produce the Deloitte Materials in their entirety, Plaintiff, for the first time, referred the Defendants to its opposition brief to the Bank Defendants' motion to compel.

On June 23, 2008, Defendants requested an informal conference with the Court. On July 8, 2008, the Court entered an order authorizing the Defendants to file this Motion without a prior conference.

## ARGUMENT AND CITATION OF AUTHORITY

**I.     The Deloitte Materials Are Relevant And Not Privileged**

Pursuant to Rule 26, "[p]arties may obtain discovery regarding any matter, not privileged, that is relevant to the claims or defenses of any party …." FED. R. CIV. P. 26(b)(1). The breadth of "relevance," as defined for discovery purposes by Rule 26(b)(1), has been frequently noted. *E.g.*, *Daval Steel Prods. v. M/V Fakredine*, 951 F.2d 1357, 1367 (2d Cir. 1991); *In re Bairnco Corp. Sec. Litig.*, 148 F.R.D. 91, 96 (S.D.N.Y. 1993); *Martin v. Valley Nat'l Bank*, 140 F.R.D. 291, 300 (S.D.N.Y. 1991). "It is a liberal standard which encompasses any information that 'appears reasonably calculated to lead to the discovery of admissible evidence.'" *Fletcher v. Atex, Inc.*, 156 F.R.D. 45, 48 (S.D.N.Y. 1994) (citation omitted). *See also Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978) (relevance "encompasses any matter that bears on, or

7

that reasonably could lead to other matters that could bear on, any issue that is or may be in the case"). Relevant evidence also "need not be admissible at trial." FED. R. CIV. P. 26(b)(1). For example, "[r]elevance under Federal Rule 26 is far broader than the standard under Federal Rule of Evidence 401, which governs the standard at trials." *Griffith v. U.S.*, No. Part I M8-85, 2007 U.S. Dist. LEXIS 36672, at *5 (S.D.N.Y. Apr. 24, 2007).

Furthermore, the party objecting to a discovery request has the burden to demonstrate that it either falls outside the "broad scope of relevance," as defined above, or is "of such marginal relevance" that its potential for harm outweighs the "ordinary presumption in favor of broad disclosure." *Burke v. New York City Police Dep't*, 115 F.R.D. 220, 224 (S.D.N.Y. 1987). *See also Convermat Corp. v. St. Paul Fire & Marine Ins. Co.*, No. CV 06-1045, 2007 U.S. Dist. LEXIS 69102, at *7 (S.D.N.Y. Sept. 18, 2007) (following *Burke*). Plaintiff has not and cannot meet this burden.

Plaintiff has put the financial condition of Adelphia in center stage by asserting a fraudulent conveyance. Since a company's financial condition is set forth and reported only in its financial statements, the details of Adelphia's original and restated financials are critical to this litigation.[11]  (*See* Ernst Aff., Ex. "A", ¶¶ 28-39). Plaintiff conceded as much when, in Plaintiff's Rule 30(b)(6) deposition, Adelphia's representative admitted that Plaintiff is relying on Adelphia's restated financials to contend that Adelphia was not adequately capitalized at the time of the Asset Purchase (an essential element of Plaintiff's first claim against Defendants).[12]

---

[11]     Upon information and belief, one of Adelphia's expert witnesses in the Deloitte Litigation published a report on damages that is inconsistent with Adelphia's allegations of inadequate capitalization in this case.

[12]     In its motion to withdraw the reference, Plaintiff admitted that Adelphia's accounting restatement was at issue in this litigation. *See* Pl.'s Mot. to Withdraw the Reference, dated Dec. 3, 2007, at 6 (ECF Doc. No. 1) (factual issues include "the factual (and legal) significance and interpretation of Adelphia's accounting restatement").

(Ernst Aff., Ex. "C", pp. 419-38). Defendants, stating the obvious, explained all this in their February 13, 2008 letter:

> The requested documents are clearly relevant to the issue of insolvency (of Adelphia). Specifically, the requested documents address issues that directly bear on the financial condition of Adelphia, such as the accounting treatment of the co-borrowing debt, the fixed asset scrub done by Adelphia in the restatement and whether Adelphia was adequately capitalized.

(Ernst Aff., Ex. "U", p. 1).

Solvency is essentially a legal test based upon an analysis of numbers. The Deloitte Materials help determine which set of numbers should be analyzed; they test the accuracy and propriety of Adelphia's originally audited financials with those that were restated. Thus, they are patently relevant. (*See, e.g.*, Ernst Aff., Ex. "R", p. 25) ("Produce them. Discovery if it goes to possibility of any financial condition, produce."). Even if they were not, the Court is to be permissive in granting production. *E.g.*, *Heat & Control, Inc. v. Hester Indus., Inc.*, 785 F.2d 1017, 1024 (Fed. Cir. 1986).

Lastly, Plaintiff is precluded from arguing privilege. In response to the Seventh Request, Plaintiff objected "on the grounds that it seeks communications protected by the attorney-client privilege and the work product doctrine." (Ernst Aff., Ex. "M", p. 9). Plaintiff, however, has failed to provide a privilege log as required by the Federal Rules of Civil Procedure and the Local Rules. Further, all of the Deloitte Materials were shared with the defendant in the Deloitte Litigation. Thus, there is no privilege to assert.

## II. Plaintiff's Claims Of Confidentiality Are Not Credible

Plaintiff systematically objected to Defendants' requests asserting the documents sought were designated "Confidential" under the Confidentiality Agreement. (*Compare* Ernst Aff., Ex. "I" *with* Ex. "K" *and* Ex. "M"). Nevertheless, just last year, in a March 2007 letter to Deloitte's counsel, Plaintiff's counsel argued the exact opposite, declaring that "most of [the documents

which make up the Deloitte Materials] do *not* contain any confidential or proprietary information." (Ernst Aff., Ex. "V", p. 2 (emphasis added)). In the same letter, Plaintiff also stated:

> To the extent the [requested expert] materials do contain [confidential] information, we understand that the [Bank Defendants] are willing to sign on to the Confidentiality Agreement in the Deloitte Litigation and have offered to do so. Accordingly, we believe that the [Bank Defendants] are entitled to all of the Deloitte Materials and do not understand why you have refused to give them access to those materials.

(Ernst Aff., Ex. "V", p. 2). In this case, Defendants have already executed confidentiality agreements with Plaintiff and with Deloitte. (*Compare* Ernst Aff., Ex. "F" *with* Ex. "G").

In sum, Plaintiff's position is not credible because it previously admitted that most of the Deloitte Materials do not contain confidential or proprietary information. But, even if Plaintiff was wrong in its March 2007 letter, and is now correct in its objections, Defendants have already contracted to respect any confidentiality. Thus, Plaintiff has no basis whatsoever for withholding documents from Defendants on concerns of confidentiality.[13] (Ernst Aff., Ex. "R", p. 24) ("Confidentiality agreements don't mean you don't produce.").

### III.    Defendants' Requests Are Authorized by The Federal Rules

Last month, in the June 2008 phone call, Plaintiff argued for the first time that Defendants are not entitled to the Deloitte Materials because Rule 26(b)(4)(B): (i) prohibits discovery of experts who have not been designated as "testifying" experts by Plaintiff and (ii) precludes discovery of opinions of consulting experts except in limited circumstances. *See*

---

[13]   *See, e.g.*, *Mac-Ray Corp. v. Ricotta*, No. 03-CV-524S(F), 2004 WL 1368857 (W.D.N.Y. June 16, 2004) (ruling that the plaintiff was not entitled to shield undisclosed documents from production based purely on their status as "confidential commercial information and/or trade secrets").

FED. R. CIV. P. 26(b)(4)(B).  Because Plaintiff raised this argument for the first time in June 2008, Plaintiff has waived this argument.[14]

Even if Plaintiff did not waive this argument (which it did), Plaintiff's argument is fatally flawed.  The Deloitte Materials were generated by professionals *designated* as testifying experts in the Deloitte Litigation, a prior and settled action against another party.  The expert reports and transcripts were not prepared by consulting experts in connection with or in anticipation of this lawsuit.  Rather, in the Deloitte Litigation, these experts were disclosed to opposing counsel; their reports were finalized and delivered to opposing counsel; opposing counsel deposed these experts at length in anticipation of trial; and the parties filed summary judgment motions citing the experts' materials.  Thus, in this case, there is no confidentiality to protect because the experts' work in the Deloitte Litigation has been disclosed to parties outside of Adelphia's legally protected sphere (*i.e.*, opposing parties in the Deloitte case).  For these reasons, discovery of the Deloitte Materials *in this litigation* is controlled, not by Rule 26(b)(4)(B), but by Rule 26(b)(1), which permits the discovery of documents and information relevant to the claims and defenses of any party.[15]

## CONCLUSION

For the forgoing reasons, Defendants respectfully request that the Court enter an order:

(1)     compelling Plaintiff to produce the Deloitte Materials;

---

[14] Defendants do note that Plaintiff asserted several general and specific objections to Defendants' discovery requests (*see* Ex. I, K and M) but never specifically mentioned Rule 26(b)(4)(B) as a basis to withhold the Deloitte Materials.

[15] *See, e.g.*, *Flying J Inc. v. TA Operating Corp.*, No. 1:06-CV-30, 2007 U.S. Dist. LEXIS 55574, at *32-34 (D. Utah July 30, 2007) (ordering plaintiff to produce all documents concerning plaintiff's lawsuit against a third party, including expert reports and all documents "evidencing communications with" plaintiff's expert witnesses in the other lawsuit); *Jans v. Gap Stores, Inc.*, No. 6:05-cv-1534-Orl-31JGG, 2006 U.S. Dist. LEXIS 67266, at *2-6 (M.D. Fla. Sept. 20, 2006) (ordering defendant to produce expert reports and other documents from prior litigation); *Sullivan v. Sturm, Ruger & Co.*, 80 F.R.D. 489, 491 (D. Mont. 1978) (holding that expert report prepared in connection with prior litigation was not protected under Rule 26(b)(4)(B) because "[w]hile the expert's knowledge and opinions that plaintiff seeks to discover were developed for litigation, they were not developed for this lawsuit").

(2) requiring Plaintiff and/or Plaintiff's counsel to pay Defendants' reasonable expenses associated with bringing this Motion, including attorneys' fees, pursuant to Rule 37(a)(4) of the Federal Rules of Procedure; and

(3) granting such other and further relief as the Court deems just and proper.

This 14th day of July 2008.

    Respectfully submitted,

    TROUTMAN SANDERS LLP

       /s/ Harris B. Winsberg
    Harris B. Winsberg (*Pro Hac Vice*)
      (Ga. Bar No. 770892)
    Douglas E. Ernst (*Pro Hac Vice*)
      (Ga. Bar No. 249956)
    Sean P. Dailey (*Pro Hac Vice*)
      (Ga. Bar No. 441395)

    Bank of America Plaza – Suite 5200
    600 Peachtree Street, N.E.
    Atlanta, Georgia 30308-2216

    (404) 885-3000 (tel.)
    (404) 885-3900 (fax)

    *Counsel to Defendants*

1938150_6.DOC

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| ADELPHIA RECOVERY TRUST,<br><br>     Plaintiff,<br><br>v.<br><br>PRESTIGE COMMUNICATIONS OF NC, INC. *et al.*,<br><br>     Defendants. | Case No. 1:07 Civ. 11152 (LMM) |

## **ORDER**

This matter having been presented to the Court upon Defendants' Third Motion to Compel the Production of Discovery and Memorandum of Law in Support thereof, and for good cause having been shown, it is hereby:

ORDERED that Plaintiff and/or Plaintiff's counsel shall:

1. Within ten (10) days of the entry of this Order, produce all withheld expert materials to the Defendants from the action styled *Adelphia Commc'ns Corp. v. Deloitte & Touche, LLP*, No. 000598 (Pa. Commw. Ct., Phil. Co., November Term 2002), including, but not limited to: (i) Adelphia Communications Corporation's expert reports and expert deposition transcripts, including any exhibits thereto; and (ii) Deloitte & Touche LLP's expert deposition transcripts, including any exhibits thereto.

    2.    Pay Defendants' expenses associated with bringing their Motion, including Defendants' attorneys' fees, in the amount of $[_____].

Dated: _____.

 

_____
Lawrence M. McKenna
United States District Court Judge