UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-----------------------------------------------------------x
ADELPHIA RECOVERY TRUST,                :
                                         :   No. 07 Civ. 11152 (LMM)
            Plaintiff,                   :
                                         :
       - against -                       :
                                         :
PRESTIGE COMMUNICATIONS OF NC,           :
      INC., *et al.*,                    :
                                         :
            Defendants.                  :
-----------------------------------------------------------x


**ADELPHIA RECOVERY TRUST'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS' THIRD MOTION TO COMPEL THE PRODUCTION OF DISCOVERY**


Dated: July 30, 2008

David M. Friedman (DFriedman@kasowitz.com)
Joseph A. Gershman (JGershman@kasowitz.com)
Jennifer B. Schwarz (JSchwarz@kasowitz.com)
KASOWITZ, BENSON, TORRES
 & FRIEDMAN LLP
1633 Broadway
New York, NY 10019
(212) 506-1700
(212) 506-1800 (facsimile)

*Counsel for Plaintiff Adelphia Recovery Trust*

# TABLE OF CONTENTS

                                                                                                 **Page**

TABLE OF AUTORITIES ................................................................................................... (ii)

PRELIMINARY STATEMENT ............................................................................................. 2

FACTUAL BACKGROUND .................................................................................................. 2

The Prestige Litigation ............................................................................................................. 2

The Deloitte Litigation ............................................................................................................. 3

Discovery in the Prestige Litigation ......................................................................................... 4

The ART Objected to the Production of the Expert Materials ................................................. 5

ARGUMENT ............................................................................................................................ 7

I.     THE DEFENDANTS ARE PRECLUDED FROM OBTAINING THE EXPERT
       MATERIALS BY RULE 26(b)(4)(B) ........................................................................ 9

II.    THE EXPERT MATERIALS ARE ALSO BEYOND THE SCOPE OF PERMISSIBLE
       DISCOVERY UNDER RULE 26(b)(1) BECAUSE THEY ARE NOT RELEVANT TO
       THE CLAIMS AND DEFENSES IN THIS CASE ..................................................... 12

III.   THERE HAS BEEN NO WAIVER OF RULE 26(b)(4)(B) ...................................... 14

CONCLUSION ....................................................................................................................... 16

**TABLE OF AUTHORITIES**

**Page**

**Cases**

*Bank Brussels Lambert v. Chase Manhattan Bank, N.A.*,
175 F.R.D. 34 (S.D.N.Y. 1997) ...............................................................................9, 10

*Bio-Technology Gen. Corp. v. Novo Nordisk A/S*,
C.A. No. 02-235-SLR, 2003 U.S. Dist. LEXIS 7911 (D. Del. May 7, 2003) ........11, 12

*Burke v. New York City Police Dep't*,
115 F.R.D. 220 (S.D.N.Y. 1987) ..........................................................................................8

*Coastal Towing, Inc. v. Novarco, Ltd.*,
Civ. Act. No: 98-492, 1999 U.S. Dist. LEXIS 16667 (E.D. La. Oct. 21, 1999) ............7

*Convermat Corp. v. St. Paul Fire & Marine Ins. Co.*,
No. CV 06-1045, 2007 U.S. Dist. LEXIS 69102 (E.D.N.Y. Sept. 18, 2007) ...............11

*Duck v. Port Jefferson Sch. Dist.*,
No. 07CV2224, 2008 U.S. Dist. LEXIS 39695 (E.D.N.Y. May 14, 2008) ..................10

*Emplrs. Reinsurance Corp. v. Clarendon Nat'l Ins. Co.*,
213 F.R.D. 422 (D. Kan. 2003) ..........................................................................................11

*Flying J Inc. v. TA Operating Corp.*,
No. 1:06 CV 30, 2007 WL 2220584 (D. Utah July 30, 2007) .......................................10

*Hartford Fire Ins. Co. v. Pure Air on the Lake Ltd., Partnership*,
154 F.R.D. 202, 211 (N.D. Ind. 1993) ..............................................................................15

*Hermsdorfer v. American Motors Corp.*,
96 F.R.D. 13 (W.D.N.Y. 1982) ..........................................................................................11

*In re "Agent Orange" Product Liability Litigation*,
105 F.R.D. 577 (E.D.N.Y. 1985) ........................................................................................11

*In re Shell Oil Refinery*,
132 F.R.D. 437 (E.D. La. 1990) .........................................................................................10

*Ins. Co. of N. Am. v. UNR Indus., Inc.*,
Nos. 92 Civ. 4236, 92 Civ. 8182, 1995 WL 77573 (S.D.N.Y. Feb. 24, 1995) ..............9

*Jans ex rel. Jans v. The Gap Stores, Inc.*,
No. 6:05 CV 1534, 2006 WL 2691800 (M.D. Fla. Sept. 20, 2006) ..............................10

*Ludwig v. Pilkington N. Am., Inc.*,

No. 03 C 1086, 2003 U.S. Dist. LEXIS 17789 (N.D. Ill. Sept. 30, 2003) .................................. 15

*Monarch Knitting Mach. Corp. v. Sulzer Morat Gmbh*,
85 Civ. 3412, 90 Civ. 7980, 1998 U.S. Dist. LEXIS 9278 (S.D.N.Y. June 23, 1998) ................ 12

*Religious Technology Ctr. v. F.A.C.T.Net, Inc.*,
945 F. Supp. 1470 (D. Colo. 1996) ........................................................................................... 11

*Rus, Inc. v. Bay Indus.*,
322 F. Supp. 2d 302 (S.D.N.Y. 2003) ..................................................................................... 7-8

*Sullivan v. Sturm, Ruger & Co.*,
80 F.R.D. 489 (D. Mont. 1978) ................................................................................................ 10

*Surles v. Air France*,
No. 00 Civ. 5004, 2001 U.S. Dist. LEXIS 10048 (S.D.N.Y. July 17, 2001) ............................... 8

*Tennessee Gas Pipeline v. Rowan Cos.*,
No. 94-3863, 1996 U.S. Dist. LEXIS 8723 (E.D. La. June 19, 1996) ....................................... 15

*Vanguard Sav. & Loan Ass'n v. Banks*,
No. 93-4627, 1995 U.S. Dist. LEXIS 2016 (E.D. Pa. Feb. 17, 1995) ....................................... 15

*Vincent v. Mortman*,
No. 3:04 CV 491, 2006 WL 2349448 (D. Conn. Aug. 11, 2006) ................................................ 9

*Zanowic v. Reno*,
No. 97 Civ. 5292, 2000 U.S. Dist. LEXIS 13845 (S.D.N.Y. Sept. 22, 2000) .............................. 8

**Rules**

Federal Rule of Civil Procedure 26(b)(1) .......................................................................... *passim*

Federal Rule of Civil Procedure 26(b)(4) .................................................................................. 11

Federal Rule of Civil Procedure 26(b)(4)(A) ............................................................................. 12

Federal Rule of Civil Procedure 26(b)(4)(B) ..................................................................... *passim*

Federal Rule of Civil Procedure 35(b) ......................................................................................... 9

**PRELIMINARY STATEMENT**

The Defendants' Third Motion to Compel the Production of Documents (the "Motion") seeks to improperly compel the production of the opinions of non-testifying experts retained by Adelphia Communications Corp. ("Adelphia") in a related case — Adelphia's litigation against Deloitte & Touche, LLP (the "Deloitte Litigation").[1] The documents sought in the Motion consist of: (i) Adelphia's expert reports from the Deloitte Litigation; and (ii) expert deposition transcripts and exhibits from the Deloitte Litigation (collectively, the "Expert Materials"). The Motion should be denied because: (i) the materials sought are barred from production by Rule 26(b)(4)(B), which generally bars discovery from experts who have not been designated to testify; and (ii) because Defendants have failed to meet their burden of demonstrating that the expert opinions of non-testifying experts from another litigation are relevant to the claims and defenses in this case. By their Motion, Defendants seek to unfairly and improperly obtain the opinions of Adelphia's experts from another case so that Defendants' experts may piggyback on Adelphia's work.[2]

**FACTUAL BACKGROUND**

**The Prestige Litigation**

In the Prestige Litigation, the Adelphia Recovery Trust asserts three claims against the former owners of the Prestige Cable Systems (the "Defendants"), who sold those systems to Adelphia and the Rigas Family on July 5, 2000. The claims are for: (1) aiding and abetting breach of fiduciary duty; (2) intentional fraudulent transfer; and (3) constructive fraudulent

---

[1] Adelphia is a predecessor of the Plaintiff in this matter, the Adelphia Recovery Trust ("The ART"). The ART is a Delaware statutory trust formed on February 13, 2007, pursuant to the confirmed bankruptcy Plan of Reorganization (the "Plan") of Adelphia, for the purpose of prosecuting the causes of action previously owned by Adelphia and its Creditors Committee for the benefit of Adelphia's stakeholders who were not paid in full under the Plan.

[2] The Motion seeks essentially the same relief as Defendants are seeking in their Motion to Compel Plaintiffs' Production of Expert Materials From Related Action in the matter entitled *Adelphia Recovery Trust v. Bank of America, et al.*, Case. No. 1:05-9050 (LMM)(RLE) (the "Bank Litigation"), Docket Entry #148. That motion has been referred for resolution to Judge Ronald L. Ellis.

transfer. (*See* Ex. A to the Affirmation of Douglas E. Ernst, dated July 14, 2008 "Ernst Aff't".) Broadly described, the claims allege that the Defendants conspired with the Rigas Family to devise a fraudulent transactional structure which provided substantial benefits to both the sellers and the Rigas Family — at substantial expense to Adelphia. *Id.* at ¶ 19-27. Essentially, the sellers agreed to sell all of their cable systems for $1.1 billion, but they had to allocate that price between the Georgia cable system, that was purchased by the Rigas Family, and the North Carolina, Virginia, and Maryland cable systems, that were sold to Adelphia. *Id.* at ¶ 19-20. The sellers sold the Prestige Georgia cable system to the Rigas Family for $300 million and the rest of the cable systems to Adelphia for $800 million. *Id.* at ¶ 21. It is alleged that the Rigas Family breached its fiduciary duties and benefited from this fraudulent transaction by acquiring the Prestige Georgia cable system for substantially less than it was worth, while causing Adelphia to pay $800 million for the other cable systems — which was far more than they were worth. *Id.* at ¶ 22-23. The Defendants are alleged to have benefited from this non-fair market price allocation by obtaining certain tax benefits — including certain potentially improper tax benefits to which one or more of the Defendants may not have been entitled under applicable law. *Id.* at ¶ 21, 26. The claims seek to recover all of the damages Adelphia suffered as a result of this transaction. *Id.* at ¶ 1-2.

**The Deloitte Litigation**

In November 2002, Adelphia commenced a lawsuit against its former auditor, Deloitte & Touche LLP ("Deloitte"), alleging professional negligence and other claims (the "Deloitte Litigation"). (*See* Declaration of Joseph A. Gershman, dated July 30, 2008 ("Gershman Decl." submitted herewith, at ¶ 3.)) Deloitte's answer also named certain members of the Rigas family as third-party defendants. (Gershman Decl. ¶ 4.) Adelphia, Deloitte, and the Rigases thereafter each designated experts to testify on a variety of subjects. (Gershman Decl. ¶ 5.) Expert reports

3

in the Deloitte Litigation were first exchanged in October of 2006, and expert depositions were taken between January and June of 2007. (Gershman Decl. ¶ 6.) None of the experts testified at trial, as a settlement was reached in August of 2007. *Id.*

**Discovery in the Prestige Litigation**

Discovery in the Prestige Litigation has been long and expensive, as Defendants have served no fewer than eight overly expansive document requests, comprising over 130 individual requests, in a case that involves only one transaction — the Prestige acquisition — and three claims.[3] (Gershman Decl. ¶ 7.) Defendants' eight document requests have been duplicative, abusive and overly broad. *Id.* In response to Defendants' never ending requests, the ART has produced in excess of 17 million pages of documents. (Gershman Decl. ¶ 9.) It is a testament to the efforts the ART has gone to accommodate Defendants that they have only had to file three motions to compel in the course of discovery in light of the enormous number of burdensome and overly broad document requests they have propounded. (Gershman Decl. ¶ 10.) During discovery, the ART has been forced to file two motions to compel against the Defendants: the first of which resulted in Defendants producing roughly one-third of the documents on their privilege log; the second, which sought certain tax-related documents, resulted in Defendants' complete capitulation, and their agreement to produce all of the documents being sought after the motion was fully briefed, but prior to oral argument. (Gershman Decl. ¶ 11.)

Fact discovery in this case slowed substantially as of January 15, 2008 when Defendants unilaterally announced that they would refuse to appear for their noticed fact depositions while the Court considered whether and/or how to consolidate discovery between the Prestige and Bank Litigations. (Gershman Decl. ¶ 12.) Defendants took this position even though none of the

---

[3] In May 2008, after fact discovery had terminated under the current scheduling order, and after informing the Court in January that document discovery was nearly complete, the Defendants went ahead and served yet another document request, their Eighth Request for the Production of Documents, comprised of 22 individual requests. (*See* Declaration of Joseph A. Gershman, dated July 30, 2008. (Gershman Decl. ¶ 8.)

4

proposals under discussion contemplated having any effect on Defendants' depositions. *Id.* The ART, in an effort to keep fact discovery moving, suggested that the parties complete outstanding document discovery and the depositions that did not overlap with those in the Bank Litigation.[4] (Gershman Decl. ¶ 13.) Defendants refused.

### The ART Objected to the Production of the Expert Materials

In June 2007, Defendants served their Fourth Request for Documents which contained 17 separate requests, one of which sought a vast array of documents from 19 separate litigations that Adelphia had been a party to. (*See* Ernst. Aff't Ex. H, Request No. 9.) Defendants sought "[c]opies of the complaints, answers, counter-suits, responses to interrogatories and expert reports prepared on behalf of Adelphia, the Adelphia Creditor's Committee, the Rigas family members, any regulatory body, or their opposition and any settlement agreements reached or proposed in connection with any of the following litigation matters" — and then Defendants listed 19 separate litigations. *Id.* The ART interposed a number of objections to this patently unreasonable request, including, among others, overbreath, undue burden, and relevance (*see* Ernst Aff't Ex. I, Response No. 9), and provided docket information to the Defendants so that they could collect whatever they wanted from the public filings in these cases. (Gershman Decl. ¶ 15.) The ART also objected and declined to produce information insofar as the requests sought to impose upon the Plaintiff any obligations beyond those imposed upon them by the Federal Rules of Civil Procedure. (*See* Ernst Aff't Ex. I, pg. 2.) When informed that the ART did not plan to include these lawsuits in its solvency analysis of Adelphia, Defendants informed the ART that they were not going to pursue Request No. 9 from their Fourth Request. (Gershman Decl. ¶ 16.) The ART did not withdraw its objections to this request, or produce documents in response to it. *Id.*

---

[4] In response to a request from the Court for proposals regarding consolidation, the ART moved to consolidate the depositions of individuals expected to be deposed in both the Prestige and Bank Litigations. (Gershman Decl. ¶ 14.)

In November 2007, Defendants served yet another document request — their sixth — which contained seven separate requests, including a request for expert reports from the Deloitte Litigation. (*See* Ernst Aff't Ex. J, Request No. 2.) The ART objected on the grounds of relevance, among other things, and confidentiality based upon Deloitte's confidentiality concerns, and suggested Defendants speak with Deloitte concerning their confidentiality concerns, which ultimately led to the production of certain expert reports by Deloitte — without objection by the ART. (*See* Ernst Aff't Ex. K, Response No. 2.) The ART also objected to this request, and declined to produce information insofar as the request sought to impose upon the Plaintiff any obligations beyond those imposed upon them by the Federal Rules of Civil Procedure. (*See* Ernst Aff't Ex. K, pg. 2.) The ART has never withdrawn its objections. (Gershman Decl. ¶ 17.) The Rigas Family has also produced certain of its expert reports to Defendants in response to a subpoena, without an objection from the ART. *See* Motion pg. 6.

In late November 2007, Defendants served yet another document request — their seventh — which was comprised of 12 separate requests, including a request for "the deposition transcripts and exhibits of the expert witnesses in the Deloitte Litigation", as well as the transcripts and exhibits for a fact witness from that case, Christopher Dunstan. (*See* Ernst Aff't Ex. L, Request No. 12.) The ART objected on the grounds of, among other things, relevance. (*See* Ernst Aff't Ex. M, Response No. 12.) The ART also objected and declined to produce information insofar as the request sought to impose upon the Plaintiff any obligations beyond those imposed upon them by the Federal Rules of Civil Procedure. (*See* Ernst Aff't Ex. M, pg. 2.) The ART also objected on the grounds of privilege because certain portions of Mr. Dunstan's transcripts included testimony that implicated privilege issues. *Id.* However, Mr. Dunstan's deposition transcripts are not the subject of the Motion, as they have already been produced to Defendants, and therefore there are no privilege objections at issue here. (Gershman Decl. ¶ 18.)

Defendants never met and conferred with the ART on the privilege issue prior to filing their Motion, or this would have been explained to them. (Gershman Decl. ¶ 18.); (Ernst Aff't Ex. U.) Other than making conclusory assertions that the Expert Materials are "patently relevant" to this case (*see* Motion pg. 9), Defendants have never been able to articulate during the meet and confer process why they are relevant to the claims and defenses in this case, or, why the Defendants are entitled to these documents under the Federal Rules. (Gershman Decl. ¶ 19; Ernst Aff't Ex. U.)

## ARGUMENT

Contrary to Defendants' assertions, the scope of discovery under the Federal Rules is not essentially boundless. *See, e.g., Duck v. Port Jefferson Sch. Dist.*, No. 07CV2224, 2008 U.S. Dist. LEXIS 39695, *5-6 (E.D.N.Y. May 14, 2008) (noting that "the broad reach of discovery is not without limits" and that discovery can be precluded at the court's discretion for various reasons including "whether fairness does or does not require production") (citation and quotation omitted). Rule 26 contains several significant limitations on discovery, including, among other restrictions: (i) significant limitations on expert-related discovery (particularly as to experts not designated to testify); and (ii) a requirement that the discovery sought be relevant to the claims and defenses in the case. *See Fed. R. Civ. P.* 26(b)(4)(B) and 26(b)(1).

With respect to limitations on expert discovery, Rule 26(b)(4)(B) provides that ordinarily there can be no discovery of an expert who has not been identified as testifying at trial, and that discovery of a non-testifying expert may only be had if the party demonstrates "exceptional circumstance[s]." *See Fed. R. Civ. P.* 26(b)(4)(B).

With respect to relevance, a general representation by the moving party that the documents being sought are relevant does not meet the requirements of the Federal Rules. Rather, the party seeking discovery when challenged must show that the discovery sought is

7

relevant to the claims and defenses in the case, not just the subject matter of the case. *See Rus, Inc. v. Bay Indus.*, 322 F. Supp. 2d 302, 318 (S.D.N.Y. 2003) ("[I]t is not sufficient that the material sought be relevant to the general subject matter of the action, if it does not relate to the specific claims or defenses of either party.") (citation omitted); *Zanowic v. Reno*, No. 97 Civ. 5292, 2000 U.S. Dist. LEXIS 13845, *14-15 (S.D.N.Y. Sept. 22, 2000) (denying portion of motion to compel when movant failed to explain relevance, holding that burden to show relevance is on movant, and failure to explain relevance is fatal to motion to compel). Defendants incorrectly assert in the Motion that the burden is on the <u>non-moving party</u> to explain why the documents requested are not relevant.[5] *See* Motion pg. 9. Defendants' position is, of course, flatly wrong. *See, e.g., Surles v. Air France*, No. 00 Civ. 5004, 2001 U.S. Dist. LEXIS 10048 at *10-11 (S.D.N.Y. July 17, 2001) ("Air France's contention that [the non-movant] bears the burden of establishing a basis for resisting its discovery is flat wrong."). Defendants proposed shifting of the burden to non-movants would turn discovery on its head, and significantly alter civil discovery, effectively creating a presumption that any request, no matter how broad, was legitimate in the first instance and had to be responded to unless the non-movant was able to explain its lack of relevance.

     Defendants' Motion should be denied for two main reasons: (i) the Expert Materials are protected from production pursuant to Rule 26(b)(4)(B); and (ii) Defendants have failed to meet their burden of establishing that the Expert Materials are relevant to the claims and defenses in

---

[5] Defendants mischaracterize the two cases they rely on for this novel proposition — *see Burke v. New York City Police Dep't*, 115 F.R.D. 220, 224 (S.D.N.Y. 1987) and *Convermat Corp. v. St. Paul Fire & Marine Ins. Co.*, No. CV 06-1045, 2007 U.S. Dist. LEXIS 69102 (E.D.N.Y. Sept. 18, 2007). First, nowhere do either of these cases use the word "burden" with respect to relevance, nor do the cases state that it is the non-movant's burden to show non-relevance or that the movant has no burden. Indeed, *Burke* discusses the arguments that the movant makes as to why the discovery sought is relevant. *See Burke*, at pp. 224-26. Second, to the extent the *Burke* case is being relied upon by Defendants to articulate the scope of discovery under Rule 26(b)(1), it is no longer good law as it was superseded by the amendments to that Rule in 2000, which narrowed the scope of discovery to matter that is relevant to claims and defenses. Third, to the extent one concludes that these cases could be interpreted to place the burden of establishing non-relevance wholly on the non-movant, such a holding is simply an inaccurate state of the law, and contradicted by the better reasoned decisions cited above. Last, Defendants misrepresent *Convermat* as a case from this court, when in fact it is a decision of the Eastern District of New York.

this case.

## I. THE DEFENDANTS ARE PRECLUDED FROM OBTAINING THE EXPERT MATERIALS BY RULE 26(b)(4)(B)

The Defendants argue that they are entitled to expert materials from the Deloitte Litigation because they are supposedly relevant to Adelphia's financial condition under Rule 26(b)(1). *See* Motion pp. 7-9. That argument is misplaced, however, because Rule 26(b)(1) governs *fact* discovery. Indeed, the ART has already produced enormous amounts of factual material relating to Adelphia's financial condition, and its original and restated financial statements. (Gershman Decl. ¶ 20.)

The Motion requests materials relating to *expert opinions*, and thus, the inquiry is properly governed by Rule 26(b)(4)(B). Rule 26(b)(4)(B) places strict limits on expert discovery — limits that are fatal to the Motion. Specifically, 26(b)(4)(B) prohibits the discovery of the opinions of experts who have not been designated as testifying experts by the ART, and precludes discovery of opinions of consulting experts except as provided in Rule 35(b) or upon a showing of exceptional circumstances. *See* Fed. R. Civ. P. 26(b)(4)(B). Until a party affirmatively identifies an expert as a testifying witness, which has not happened here and will not happen for a long time (if ever), undisclosed experts are entitled to the protections afforded by Rule 26(b)(4)(B). *See Bank Brussels Lambert v. Chase Manhattan Bank, N.A.*, 175 F.R.D. 34, 43 (S.D.N.Y. 1997) (McKenna, J.); *Ins. Co. of N. Am. v. UNR Indus., Inc.*, Nos. 92 Civ. 4236, 92 Civ. 8182, 1995 WL 77573, at *1 (S.D.N.Y. Feb. 24, 1995); *Vincent v. Mortman*, No. 3:04 CV 491, 2006 WL 2349448, at *1-2 (D. Conn. Aug. 11, 2006).

*Bank Brussels Lambert* is very similar to this case in its procedural aspects. There, a group of secured lenders filed lawsuits against two other lenders, CLS and BPS, 175 F.R.D. at 41. The lawsuits against CLS and BPS were consolidated for discovery with two cases in which

9

Ernst & Young and Chase were parties. *Id.* Chase designated Arthur Andersen as a testifying expert in the case against Ernst & Young but Arthur Andersen was not designated as a testifying expert in the CLS/BPS cases. *Id.* at 43. Nonetheless, as part of the consolidated discovery, BPS moved to compel the deposition of Arthur Andersen in the CLS/BPS cases. *Id.* at 37. This Court upheld Magistrate Judge Ellis's holding that "[u]ntil [the plaintiffs in the CLS/BPS cases] affirmatively identify Andersen as a testifying witness or the court sets a date by which plaintiffs must so identify Andersen, Andersen is entitled to the protection afforded by Rule 26(b)(4)(B)." *Id.* at 43. This Court further held that "Andersen's status as a non-testifying witness in the CLS/BPS Cases is not altered by the fact that Andersen is a testifying witness in the E&Y Case which was consolidated with the CLS/BPS Cases for purposes of discovery and pretrial proceedings." *Id.*[6]

Here, it is undisputed that none of the experts from the Deloitte Litigation have been designated as testifying experts in this case. Under the plain language of Rule 26(b)(4)(B), therefore, the Expert Materials requested in the Motion are not discoverable. The Defendants cannot avoid the express limitations on expert opinion discovery set forth in Rule 26(b)(4)(B) by pretending that their Motion involves a request for factual materials under Rule 26(b)(1).[7]

---

[6] Although the Court determined that Arthur Andersen should be treated as a consulting expert in the CLS/BPS cases because Andersen had not been designated to testify in those cases, the Court ultimately concluded that CLS and BPS were entitled to discovery from Andersen because CLS/BPS carried its burden under Rule 26(B)(4) of showing "exceptional circumstances." *Bank Brussels Lambert,* 175 F.R.D. at 44-45. The Defendants have not made a similar showing here, nor can they do so. A party seeking to show exceptional circumstances must demonstrate that it cannot obtain equivalent information from other sources. *In re Shell Oil Refinery,* 132 F.R.D. 437, 442 (E.D. La. 1990). Here, the Defendants cannot show exceptional circumstances because their experts have the same opportunity to examine and analyze the factual data concerning Adelphia's financial condition and financial statements that Adelphia's experts have.

[7] The Defendants cite *Flying J Inc. v. TA Operating Corp.*, No. 1:06 CV 30, 2007 WL 2220584, at *8-10 (D. Utah July 30, 2007) and *Jans ex rel. Jans v. The Gap Stores, Inc.*, No. 6:05 CV 1534, 2006 WL2691800, at *1 (M.D. Fla. Sept. 20, 2006), in support of their argument that this Court should allow discovery of the expert material from the Deloitte Litigation. *See* Motion pg. 11, fn. 15. But neither case addressed whether a party should be compelled to produce expert reports or other testimony from prior litigation. In *Flying J*, because the plaintiff voluntarily produced expert reports and other factual materials from a prior matter, the only question considered by the Utah district court was whether the communications between the plaintiff and the expert's firm were privileged. 2007 WL 2220584, at *9-11. In *Jans* the only issue before the Florida district court was whether expert reports from prior litigation relating to the flammability of the defendant's products should be produced in subsequent litigation to

Defendants also incorrectly assert that the ART may not invoke the protections of 26(b)(4)(B) because the Expert Materials were created by designated testifying experts in another litigation that has been resolved. *See* Motion pg. 11. But it is well settled that the protections of Rule 26(b)(4)(B) extend to expert opinions in other litigations that are related to the case at issue, similar to the situation here. *See Bio-Technology Gen. Corp. v. Novo Nordisk A/S*, C.A. No. 02-235, 2003 U.S. Dist. LEXIS 7911, *4 (D. Del. May 7, 2003) (noting that a majority of courts hold that 26(b)(4)(B) "shield[s] an expert's opinions about the specific case they are retained for or any closely related litigation."); *Emplrs. Reinsurance Corp. v. Clarendon Nat'l Ins. Co.*, 213 F.R.D. 422, 425 (D. Kan. 2003) ("the protections afforded by Rule 26(b)(4)(B) . . . extend, at a bare minimum, to closely related litigation"); *Religious Technology Ctr. v. F.A.C.T.Net, Inc.*, 945 F. Supp. 1470, 1480 (D. Colo. 1996) (applying Rule 26(4)(B) to prevent disclosure of documents provided to consulting expert in related case); *In re "Agent Orange" Product Liability Litigation*, 105 F.R.D. 577, 580 (E.D.N.Y. 1985) (finding that Rule 26(b)(4) "reach[es] experts retained by a party for trial preparation in a closely related case"); *Hermsdorfer v. American Motors Corp.*, 96 F.R.D. 13, 15 (W.D.N.Y. 1982) (subpoena to depose consulting experts in related litigation vacated as per Rule 26(b)(4)). Because there are overlapping issues between the Deloitte Litigation and the Prestige Litigation, including the issues of Adelphia's financial condition and financial statements, Adelphia's expert opinions from the Deloitte Litigation are entitled to protection here under Rule 26(b)(4)(B).[8] Moreover,

---

show that the defendant was on notice of potential defects in its products — in other words, to prove a fact in issue, not a prior expert opinion. 2006 WL 2691800, at *1. Finally, *Sullivan v. Sturm, Ruger & Co.*, 80 F.R.D. 489, 491 (D. Mont. 1978) is similarly distinguishable, as the court allows the Plaintiff to depose the Defendants' expert on facts and opinions formed while the expert was in the *Plaintiff's* employ. Indeed, the Defendants citation to the case is misleading, as the quoted language makes clear that the holding turns on the fact that the expert was an employee of the party who is seeking their deposition: "more importantly, [the ideas and opinions were] not developed for the use of defendant because [the expert] was not in defendant's employ at the time. Consequently, defendant cannot shield [the expert] from deposition on these matters because Rule 26(b)(4) is not applicable." *Id.* The Adelphia experts in the Deloitte Litigation were never in Defendants' employ, and thus this case is entirely distinguishable.

[8] Indeed, Defendants' arguments that the Expert Materials are relevant is a concession that they believe the Deloitte

11

the fact that these expert opinions were disclosed to other parties in the Deloitte case does not deprive the ART of the protections of 26(b)(4)(B), because those protections are not waiveable even if there has been disclosure to a third party, as discussed in Section III.

Moreover, preventing Defendants' from obtaining access to the expert opinions of undesignated ART experts is entirely consistent with the policy behind Rule 26(b)(4)(B) — principles of fundamental fairness. This rule is designed to avoid a situation where parties attempt to shortcut their case preparation by simply obtaining access to opposing party's work. *See Bio-Technology Gen. Corp. v. Novo Nordisk A/S*, C.A. No. 02-235, 2003 U.S. Dist. LEXIS 7911 (D. Del. May 7, 2003) ("The court agrees with plaintiff. Rule 26(b)(4)(B) is designed to promote fairness by precluding unreasonable access to an opposing party's diligent trial preparation."); *Monarch Knitting Mach. Corp. v. Sulzer Morat Gmbh*, 85 Civ. 3412, 90 Civ. 7980, 1998 U.S. Dist. LEXIS 9278 at *6-7 (S.D.N.Y. June 23, 1998) ("the [R]ule is designed to promote fairness by precluding unreasonable access to an opposing party's diligent trial preparation."). Defendants' Motion is a bald effort to piggyback on Adelphia's experts work in analyzing the original and restated financial statements in the Deloitte Litigation. In sum, principles of fairness dictate that Defendants should not be allowed access to the expert opinions of Adelphia's experts — who have not been designated to testify in this case. Rather, the Federal Rules contemplate that Defendants should retain their own experts to analyze Adelphia's financial condition.[9]

> II. **THE EXPERT MATERIALS ARE ALSO BEYOND THE SCOPE OF PERMISSIBLE DISCOVERY UNDER RULE 26(b)(1) BECAUSE THEY ARE NOT RELEVANT TO THE CLAIMS AND DEFENSES IN THIS CASE**

---

and Prestige Litigations are related. *See* Motion pp. 7-9.

[9] Of course, should Adelphia's experts from the Deloitte Litigation be designated as testifying experts in the Prestige Litigation, Defendants would be entitled to discovery of those experts under Rule 26(b)(4)(A).

Even if discovery of the Expert Materials is governed by Rule 26(b)(1), which it is not, Defendants would still not be entitled to the Expert Materials because they have failed to meet their burden of demonstrating that they are relevant to the claims and defenses in this case. Simply put, expert reports from other cases are irrelevant to the claims and defenses in this case. Unlike fact testimony, the experts' opinions are not going to make the existence of any fact that is of consequence to the determination of the Prestige Litigation more probable than it would be without the evidence. While certain fact discovery from the Deloitte Litigation may be relevant to the claims and defenses in this case, discovery from experts who are not now, and may never be, witnesses in the Prestige Litigation is not only irrelevant, but it is also prejudicial and confusing. The Expert Materials sought by the Motion have nothing to do with the facts of this case. Rather, they contain the conclusions and opinions of Adelphia's experts in the Deloitte Litigation, and therefore, by definition, are not facts to be discovered, and the ART has no duty to produce these expert opinions to the Prestige Defendants under Rule 26(b)(1). As an aside, Defendants have been provided with enormous amounts of raw factual data concerning Adelphia's financial condition in the 1999-2000 time period with respect to both the original and restated financials — information which Defendants are free to use to analyze Adelphia's financial condition during the relevant time period. (Gershman Decl. ¶ 21.)

Defendants have been unable to articulate the relevance of the expert opinions of Adelphia's experts in the Deloitte Litigation to the claims and defenses in this litigation, as they must. Defendants attempt to demonstrate relevance appears to consist of the following: (i) "the details of Adelphia's original and restated financials are critical to this litigation" where Adelphia has asserted a fraudulent conveyance claim, and Adelphia's financial condition is at issue (Motion pg. 8); (ii) Adelphia's experts in the Deloitte Litigation analyzed these financial statements and Adelphia's financial condition (Motion pp. 2,9); and (iii) the "Deloitte Materials

13

help determine which set of numbers should be analyzed; they test the accuracy and propriety of Adelphia's originally audited financials with those that were restated." *See* Motion pg. 9. It is the third prong of Defendants argument that utterly fails.[10] Defendants' assertion that the materials sought will "help determine which set of numbers should be analyzed" is not only incomprehensible, but it underscores that the reason Defendants want the Expert Materials is not to obtain facts about Adelphia's financial condition, but rather to see what numbers Adelphia's *experts* thought were important so they can bootstrap on their work product. Information about what sets of numbers should be analyzed will not make the existence of any fact relevant to the claims and defenses in this case more probable. Similarly, the opinions of Adelphia's experts in another case concerning the accuracy and propriety of Adelphia's original financials versus restated financials will not make the existence of any fact more probable. Defendants fail to make any argument that they are entitled to the Expert Materials for good cause shown (*see* Motion pp. 1-12), another basis for permitting discovery under Rule 26, and therefore the ART need not and will not address this issue.

In sum, Defendants have failed to explain how the Expert Materials are relevant to Adelphia's constructive fraud claim, and for this additional reason their Motion should be denied.[11]

### III.     THERE HAS BEEN NO WAIVER OF RULE 26(b)(4)(B)

---

[10] The ART does not dispute that certain facts relating to Adelphia's financials are relevant to its constructive fraud claim — and it has produced enormous amounts of actual factual information on this topic to Defendants. With respect to (ii), the ART does not agree that all of the Expert Materials relate to Adelphia's financials — for example, Andargachev Zelleke formed expert opinions not on the financials, but rather on corporate governance.

[11] With respect to its privilege objection, the ART only asserted a privilege objection to the production of the deposition transcripts of Christopher Dunstan. These transcripts have already been produced to Defendants with Defendants' agreement that production does not constitute a waiver — and therefore this issue is moot. (Gershman Decl. ¶ 22.) With respect to confidentiality, the ART continues to assert this objection only to the extent that Deloitte has designated documents as confidential. If Deloitte lifts its objection to producing documents that it has designated as confidential, the ART will not withhold any documents from production on the grounds of confidentiality.

14

Defendants' argument that the ART has waived any protections it may have under Rule 26(b)(4)(B) fails because: (i) the ART interposed a timely objection that included this rule; and (ii) the protections of 26(b)(4)(B) are not waiveable in any event. In response to Defendants Fourth, Sixth and Seventh Document Requests, the ART stated that it "objects to and declines to disclose information insofar as the Requests seek to impose upon the Plaintiff any obligations beyond those imposed upon them by the Federal Rules of Civil Procedure." (*See* Ernst Aff't Ex. I, pg. 2; Ernst Aff't Ex. K, pg. 2; Ernst Aff't Ex. M, pg. 2.) As this objection encompasses Federal Rule 26(b)(4)(B), and the ART under that Federal Rule has no obligation to produce the opinions of a non-testifying expert under that rule, the ART has properly asserted an objection under that rule. In any event, Defendants waiver argument also necessarily fails because the protections of Rule 26(b)(4)(B) cannot be waived. *See Ludwig v. Pilkington N. Am., Inc.*, No. 03 C 1086, 2003 U.S. Dist. LEXIS 17789 (N.D. Ill. Sept. 30, 2003) ("where information enjoys protection under [26(b)(4)(B)], that protection is not subject to waiver"); *Coastal Towing, Inc. v. Novarco, Ltd.*, Civ. Act. No: 98-492, 1999 U.S. Dist. LEXIS 16667, *5 (E.D. La. Oct. 21, 1999) (holding that waiver is irrelevant, even if the information sought has been disclosed to third parties, and that the only issue for analysis is whether or not the party meets the standards of the Rule); *Tennessee Gas Pipeline v. Rowan Cos.*, No. 94-3863, 1996 U.S. Dist. LEXIS 8723, *4 (E.D. La. June 19, 1996) (noting the protection afforded by Rule 26(b)(4)(B) is for "reasons entirely independent of the work product doctrine and that [the party's] claim of waiver is irrelevant, even where party had shared information sought with third parties"); *Vanguard Sav. & Loan Ass'n v. Banks*, No. 93-4627, 1995 U.S. Dist. LEXIS 2016, *7 (E.D. Pa. Feb. 17, 1995) (holding that the protection of Rule 26(b)(4)(B) cannot be waived even when materials sought have been provided to third parties); Advisory Committee Notes 1970 (noting that the Rule's

protection is not grounded in privilege, but rather in fairness).[12]

## CONCLUSION

For the foregoing reasons, the ART respectfully requests that (i) the Motion be denied in its entirety; (ii) that Defendants be directed to pay the ART's reasonable expenses associated with opposing the Motion, including attorney's fees; and (iii) that the Court enter such other and further relief as is just and proper.

Dated: New York, New York
July 30, 2008

                              KASOWITZ, BENSON, TORRES & FRIEDMAN LLP

                              BY: /s/ Joseph A. Gershman
                                  David M. Friedman (DFriedman@kasowitz.com)
                                  Joseph A. Gershman (JGershman@kasowitz.com)
                                  Jennifer B. Schwarz (JSchwarz@kasowitz.com)
                                  1633 Broadway
                                  New York, New York  10019
                                  Tel:  (212) 506-1700
                                  Fax:  (212) 506-1800

                              *Counsel for Plaintiff Adelphia Recovery Trust*

---

[12] *But see, e.g., Hartford Fire Ins. Co. v. Pure Air on the Lake Ltd., Partnership,* 154 F.R.D. 202, 211 (N.D. Ind. 1993) (undertaking a waiver analysis to determine if the protections of 26(b)(4)(B) had been waived).