UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| ADELPHIA RECOVERY TRUST,<br><br>    Plaintiff,<br><br>v.<br><br>PRESTIGE COMMUNICATIONS OF NC, INC. *et al.*,<br><br>    Defendants. | Case No. 1:07 Civ. 11152 (LMM) |

### DEFENDANTS' REPLY IN FURTHER SUPPORT OF THIRD MOTION TO COMPEL THE PRODUCTION OF DISCOVERY

Dated: August 8, 2008

TROUTMAN SANDERS LLP

Harris B. Winsberg (*Pro Hac Vice*)
   (Ga. Bar No. 770892)
Douglas E. Ernst (*Pro Hac Vice*)
   (Ga. Bar No. 249956)
Sean P. Dailey (*Pro Hac Vice*)
   (Ga. Bar No. 441395)

Bank of America Plaza – Suite 5200
600 Peachtree Street, N.E.
Atlanta, Georgia 30308-2216

(404) 885-3000 (tel.)
(404) 885-3900 (fax)

*Counsel to Defendants*

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ................................................................................................. ii

PRELIMINARY STATEMENT ...........................................................................................1

ARGUMENT AND CITATION OF AUTHORITY ............................................................2

I.    THE DELOITTE MATERIALS ARE NOT SHIELDED FROM DISCLOSURE UNDER RULE 26(b)(4)(B)............................................................................................2

II.    PLAINTIFF WAIVED ANY ARGUMENT THAT RULE 26(b)(4)(B) SHIELDS THE DELOITTE MATERIALS FROM DISCLOSURE ...................................................6

III.    THE DELOITTE MATERIALS ARE RELEVANT ............................................................8

CONCLUSION...........................................................................................................10

**TABLE OF AUTHORITIES**

**FEDERAL CASES**

*Atari Corp. v. Sega of Am.*, 161 F.R.D. 417 (N.D. Cal. 1994) ........................................................7

*Bank Brussels Lambert v. The Chase Manhattan Bank, N.A.*, 175 F.R.D. 34
(S.D.N.Y. 1997)..................................................................................................................3, 5

*Bio-Tech. Gen. Corp. v. Novo Nordisk A/S*, No. 02-235-SLR, 2003 U.S. Dist. LEXIS 7911 (D.
Del. May 7, 2003) ..................................................................................................................4

*Coastal Towing, Inc. v. Novarco, Ltd.*, No. 98-492, 1999 U.S. Dist. LEXIS 16667 (E.D. La. Oct.
21, 1999) ................................................................................................................................8

*Drexel Heritage Furnishings, Inc. v. Furniture USA, Inc.*, 200 F.R.D. 255 (M.D.N.C. 2001).......6

*Employer's Reinsurance Corp. v. Clarendon Nat'l Ins. Co.*, 213 F.R.D. 422 (D. Kan. 2003) .......4

*Flying J Inc. v. TA Operating Corp.*, No. 1:06-CV-30, 2007 U.S. Dist. LEXIS 55574 (D. Utah
July 30, 2007).........................................................................................................................3

*Hall v. Sullivan*, 231 F.R.D. 468 (D. Md. 2005).........................................................................7, 8

*Hartford Fire Ins. Co. v. Pure Air on the Lake, Ltd., P'ship*, 154 F.R.D. 202 (N.D. Ind. 1993) ....7

*Hermsdorfer v. Am. Motors Corp.*, 96 F.R.D. 13 (W.D.N.Y. 1982) ..............................................5

*In re "Agent Orange" Prod. Liab. Litig.*, 105 F.R.D. 577 (E.D.N.Y. 1985) ..................................5

*Jans ex rel. Jans v. The Gap Stores, Inc.*, 6:05-cv-1534-Orl-31JGG, 2006 U.S. Dist. LEXIS
67266 (M.D. Fla. Sept. 20, 2006) ..........................................................................................3

*Ludwig v. Pilkington N. Am., Inc.*, No. 03 C 1086, 2003 U.S. Dist. LEXIS 17789 (N.D. Ill. Sept.
30, 2003) ................................................................................................................................8

*Monarch Knitting Mach. Corp. v. Sulzer Morat GmbH*, 85 Civ. 3412 (LBS), 1998 U.S. Dist.
LEXIS 9278 (S.D.N.Y. June 23, 1998) .................................................................................7

*Obiajulu v. City of Rochester, Dep't of Law*, 166 F.R.D. 293 (W.D.N.Y. 1996)...........................6

*Pulsecard, Inc. v. Discover Card Servs., Inc.*, 168 F.R.D. 295 (D. Kan. 1996) ......................6, 7, 8

*Religious Tech. Ctr. v. F.A.C.T.Net, Inc.*, 945 F. Supp. 1470 (D. Colo. 1996) ..............................4

*Sullivan v. Sturm, Ruger & Co., Inc.*, 80 F.R.D. 489 (D. Mont. 1978) ..........................................3

*Tenn. Gas Pipeline v. Rowan Cos., Inc.*, No. 94-3863, 1996 U.S. Dist. LEXIS 8723 (E.D. La. June 19, 1996) ................................................................................................................8

*United States v. Hooker Chems. & Plastics Corp.*, 112 F.R.D. 333 (W.D.N.Y. 1986) ...................7

*Vanguard Savs. & Loan Ass'n v. Banks*, No. 93-4627, 1995 U.S. Dist. LEXIS 2016 (E.D. Pa. Feb. 17, 1995) ................................................................................................................8

**DOCKETED CASES**

*Adelphia Commc'ns Corp. v. Deloitte & Touche, LLP*, No. 000598 (Pa. Commw. Ct., Phil. Co., November Term 2002) ....................................................................................................1

**FEDERAL RULES**

FED. R. CIV. P. 26(b)(1) ............................................................................................... *passim*

FED. R. CIV. P. 26(b)(4)(B) ........................................................................................... *passim*

FED. R. CIV. P. 33(b)(4) .........................................................................................................6, 8

FED. R. CIV. P. 34 ....................................................................................................................7

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| ADELPHIA RECOVERY TRUST, <br><br> Plaintiff, <br><br> v. <br><br> PRESTIGE COMMUNICATIONS OF NC, INC. *et al.*, <br><br> Defendants. | Case No. 1:07 Civ. 11152 (LMM) |

# DEFENDANTS' REPLY IN FURTHER SUPPORT OF THIRD MOTION TO COMPEL THE PRODUCTION OF DISCOVERY

Defendants respectfully submit this reply, together with the accompanying Affirmation of Douglas E. Ernst, in further support of their third motion to compel ("Third Motion to Compel") Plaintiff to produce all withheld expert materials to the Defendants from another, prior and closed action, filed against Adelphia's prior auditors, styled *Adelphia Commc'ns Corp. v. Deloitte & Touche, LLP*, No. 000598 (Pa. Commw. Ct., Phil. Co., November Term 2002) ("Deloitte Litigation"), including but not limited to: (i) Adelphia's expert reports and deposition transcripts; and (ii) Deloitte's expert deposition transcripts (collectively, "Deloitte Materials").

## PRELIMINARY STATEMENT

This is a classic case of one party trying to withhold adverse documents. Here, Plaintiff has alleged that at the time of the transaction, Adelphia was insolvent and/or inadequately capitalized. However, in the Deloitte Litigation, Adelphia claimed that Deloitte, not insufficient cash flow, caused Adelphia's bankruptcy. Plaintiff alleged that "but for" Deloitte's alleged misconduct, Adelphia would have avoided financial collapse. Adelphia handsomely paid experts to publish reports on accounting issues (and its theory of damages) and adopted these reports in its summary judgment pleadings. Thus, the Deloitte Materials are clearly relevant to this case

because they contain highly relevant financial information (namely, the co-borrowing debt accounting, the impairment of the Rigas Family's receivable owed to Adelphia, the restatement of the fixed assets and the adequacy of capital) and set forth Adelphia's position on matters that directly bear on, and are likely inconsistent with, its allegations of inadequate capitalization. Instead of producing these critical documents, Plaintiff seeks to conceal them from Defendants and this Court.[1]

## ARGUMENT AND CITATION OF AUTHORITY

**I.    The Deloitte Materials Are Not Shielded From Disclosure Under Rule 26(b)(4)(B)**

Plaintiff argues that because the Deloitte Materials include "expert opinions," Defendants' requests are governed by Rule 26(b)(4)(B). (*See* Pl.'s Resp. Br., p. 9). Plaintiff, however, misconstrues Rule 26(b)(4)(B). The Deloitte Materials were not prepared by experts secretly retained in anticipation of this unresolved litigation; rather, they were prepared by experts who published reports and were deposed in a separate and distinct controversy between different parties that was resolved in August 2007. Thus, the Deloitte Materials are clearly discoverable in this case.

---

[1] Defendants disagree with Plaintiff's description of the Prestige acquisition and discovery in this case. For example, Adelphia claims that "[t]he sellers sold the Prestige Georgia cable systems to the Rigas Family for $300 million and the rest of the cable systems to Adelphia for $800 million." (Pl.'s Resp. Br., p. 3). However, Adelphia's Rule 30(b)(6) witness admitted that the sellers sold the stock and assets to Adelphia, not the Rigas Family. (Ernst Aff., Ex. "1", pp. 197-98). In fact, Adelphia's Rule 30(b)(6) witness admitted that the stock certificates were never changed from Adelphia to Highland Prestige. (*Id.*, pp. 207-209). Further, Adelphia admitted in its First Amended Complaint against the Rigas Family that the Rigas Family agreed to pay $400 million, not $300 million for Prestige Georgia. (*Id.*, Ex. "2", p. 109).

As for discovery, Plaintiff alleges that Defendants unilaterally announced that they would refuse to appear for their noticed fact depositions while the Court considered consolidation. (Pl.'s Resp. Br., p. 4). However, Plaintiff, not Defendants, cancelled the deposition of Earline Holmes, a former employee of Prestige. (Ernst Aff., Ex. "3", p. 3). In addition, Defendants needed to reschedule Mr. Oscher's deposition until after Plaintiff formulated a request for additional documents to ensure that Mr. Oscher did not have to appear for a second deposition. (*Id.*, p. 1). Further, Plaintiff cancelled the previously scheduled depositions of Stephanie Gill (a non-party witness that Plaintiff sought to depose) and Paul Quinn (a consultant who worked on Adelphia's restatement). (*Id.*, Ex. "4", p. 1).

2

Nevertheless, Plaintiff claims that none of the cases cited in Defendants' brief address whether a party may be compelled to produce expert materials from prior litigation – *i.e.* that the cases are not analogous. (*See* Pl.'s Resp. Br., pp. 10-11 n.7). However, in *Flying J Inc. v. TA Operating Corporation*, the court ordered the plaintiff to produce all non-privileged documents evidencing communications with a testifying expert from a separate, but related lawsuit where the plaintiff had already turned over certain expert materials to its adversaries in the related litigation. No. 1:06-CV-30, 2007 U.S. Dist. LEXIS 55574, at *32-34 (D. Utah July 30, 2007). In addition, the plaintiff in *Jans ex rel. Jans v. The Gap Stores, Inc.*, was ordered to produce all non-privileged expert reports that were provided to the opposing party in any prior litigation. 6:05-cv-1534-Orl-31JGG, 2006 U.S. Dist. LEXIS 67266, at *2-6 (M.D. Fla. Sept. 20, 2006). Finally, in *Sullivan v. Sturm, Ruger & Company, Inc.*, the District of Montana ordered the defendant to produce the requested expert reports because the expert's knowledge and opinions were developed for a prior lawsuit, and as such, they were not protected by Rule 26(b)(4)(B). 80 F.R.D. 489, 491 (D. Mont. 1978). Consequently, Plaintiff should be compelled to produce the Deloitte Materials.

The *Bank Brussels* case is factually distinguishable. *Bank Brussels Lambert v. The Chase Manhattan Bank, N.A.* involved two, simultaneously pending, cases that were consolidated for discovery and pretrial purposes only, but the parties agreed to reciprocal discovery. 175 F.R.D. 34, 41 (S.D.N.Y. 1997). In the E&Y/Chase cases, Arthur Andersen was designated as a trial or testifying witness; whereas in the CLS/BPS cases, Andersen was designated as a non-testifying expert witness. *Id.* Consequently, the Court found that Andersen was entitled to the protections

3

afforded by Rule 26(b)(4)(B) as to the parties in the CLS/BPS cases – *i.e.* that there was no basis to permit the CLS/BPS parties the right to depose Andersen.[2] *Id.* at 43.

Here, by contrast, no deposition is sought and the expert reports and transcripts at issue were prepared by experts retained in connection with a prior, settled action. The Deloitte Litigation experts published reports and provided opinions on, among other things, whether Deloitte violated Generally Accepted Accounting Standards and whether Adelphia was damaged (and to what extent). However, the experts retained in this litigation will give opinions on whether Adelphia was insolvent and/or inadequately capitalized. Therefore, there is a difference both in time and the ultimate conclusions reached so that it cannot be said that the Deloitte Litigation experts were employed in anticipation of *this* litigation.

Further, since the *Bank Brussels* parties had yet to go to trial, there was a potential for prejudice or "piggy-backing." While the Deloitte Materials contain highly relevant data, neither party in this case can simply adopt the previously published opinions. Rather, both parties will have to retain experts to opine on the financial condition of Adelphia instead of Deloitte's alleged accounting malpractice. Therefore, there is no risk of "piggy-backing" or prejudice to Plaintiff.[3]

---

[2] Ultimately, the Court found that BPS had demonstrated the requisite "exceptional circumstances" and granted its motion to compel. *Bank Brussels*, 175 F.R.D. at 45.

[3] The cases Plaintiff cites for the proposition that the protections afforded by Rule 26(b)(4)(B) extend to "closely related litigation" are equally distinguishable. In *Bio-Technology General Corporation v. Novo Nordisk A/S*, the District of Delaware concluded that Rule 26(b)(4)(B) was "inapplicable" and that the proper standard for determining whether or not an expert may be deposed, based on the facts of that case, is Rule 45(c)(3)(B)(ii), and not Rule 26. No. 02-235-SLR, 2003 U.S. Dist. LEXIS 7911, at *7 (D. Del. May 7, 2003). Thus, it is an imperfect comparable. The District of Kansas in *Employers Reinsurance Corporation v. Clarendon National Insurance Company* likened Rule 26(b)(4)(B) to Rule 26(b)(3), which governs the discoverability of attorney work product material, and concluded that the protections afforded by Rule 26(b)(4)(B), "which contains relevant language that is virtually identical to that of Rule 26(b)(3)," extend to closely related litigation. 213 F.R.D. 422, 425 (D. Kan. 2003). The problem here is that (1) Defendants are not seeking privileged or protected material from Plaintiff, and (2) even if they were, the Deloitte Materials were made public and shared with opposing counsel, so the reasoning employed by the District of Kansas in *Employers Reinsurance* would not apply here. Likewise, *Religious Technology Center v. F.A.C.T.Net, Inc.* concerns the work product doctrine and whether

4

Lastly, Plaintiff suggests that Defendants are trying to "shortcut their case preparation" (*See* Pl.'s Resp. Br., p. 12). Nothing could be further from the truth. There are four commonly articulated policy considerations underlying Rule 26(b)(4)(B):

> (1) the interest in allowing counsel to obtain the expert advice they need in order properly to evaluate and present their clients' positions without fear that every consultation with an expert may yield grist for the adversary's mill; (2) the view that each side should prepare its own case at its own expense; (3) the concern that it would be unfair to the expert to compel its testimony and also the concern that experts might become unwilling to serve as consultants if they suspected their testimony would be compelled; and (4) the risk of prejudice to the party who retained the expert as a result of the mere fact of retention.

*Bank Brussels*, 175 F.R.D. at 45 (internal quotation marks omitted). Plaintiff only addresses one policy – that each side should prepare its own case. That argument fails because Defendants cannot, and are not attempting to, "piggyback on Adelphia's experts (sic) work." (*See* Pl.'s Resp. Br., p. 12). To the contrary, Defendants have to retain their own experts to analyze Adelphia's financials. Defendants seek the Deloitte Materials for two primary reasons: (i) Defendants have a right to discover the facts underlying the expert reports, particularly since it appears that they are inconsistent with Plaintiff's allegations in this case; and (ii) Defendants are entitled to confirm that Plaintiff has indeed given them "virtually all of the underlying factual material" upon which the Deloitte experts relied. (*See* Pl.'s Resp. Br., p. 9). Notably, Plaintiff

---

ordering the production of documents given by counsel to its expert would reveal counsel's "mental selective process". 945 F. Supp. 1470, 1480 (D. Colo. 1996). In other words, it has nothing to do with the issues addressed in Defendants' Third Motion to Compel. *In re "Agent Orange" Product Liability Litigation* is equally distinguishable. In that case, the Eastern District of New York found that Rule 26(b)(4) extended to a closely related case that was part of the same multidistrict litigation because it raised nearly identical legal and factual issues. 105 F.R.D. 577, 580 (E.D.N.Y. 1985). In other words, the holding of *Agent Orange* is much narrower that Plaintiff would have this Court believe. *See id.* ("Given the legal and factual similarities, the involvement of many of the same parties, and the procedural realities of the M.D.L. process, it is reasonable to interpret Rule 26(b)(4) to reach experts retained by a party for trial preparation in a closely related case that is before the court as part of the same multidistrict litigation."). Consequently, the *Agent Orange* case is an inadequate factual comparable. Similarly, *Hermsdorfer v. American Motors Corporation* has a much narrower holding. In *Hermsdorfer*, the Western District of New York held that Rule 26(b)(4)(B)'s protections apply where the information sought was specifically and intentionally prepared for the subject litigation and all other similar litigation against the same defendants, which is obviously not the case here. 96 F.R.D. 13, 15 (W.D.N.Y. 1982).

5

has not represented that the Defendants have access to all of the underlying financial data that its experts considered.[4]

## II. Plaintiff Waived Any Argument That Rule 26(b)(4)(B) Shields The Deloitte Materials From Disclosure

Plaintiff claims that Defendants' waiver argument fails because (i) Plaintiff interposed a timely objection to Defendants' request for the Deloitte Materials that incorporated Rule 26(b)(4)(B), and (ii) the protections afforded by Rule 26(b)(4)(B) cannot be waived. (*See* Pl.'s Resp. Br., p. 15). Plaintiff's claims do not withstand scrutiny.

It is true that, in response to Defendants' Fourth, Sixth and Seventh Requests, Plaintiff interposed the following: "Plaintiff objects to and declines to disclose information insofar as the Requests seek to impose upon the Plaintiff any obligations beyond those imposed upon them by the … Federal Rules of Civil Procedure …."[5] Because this boilerplate language purports to

---

[4] Plaintiff represents that "[i]t is a testament to the efforts the ART has gone to accommodate Defendants that they have only had to file three motions to compel in the course of discovery . . . ." (Pl.'s Resp. Br., p. 4). Plaintiff, however, has failed to comply with a prior court order. *See* Order Granting Sanctions to Defs., dated Dec. 14, 2007, Adv. Pr. No. 04-3293 (Bankr. S.D.N.Y.) (ECF Doc. No. 114). (*See also* Ernst. Aff., Exs. "5-7"). In fact, Defendants had to discover on their own critical documents prepared in Adelphia's restatement that analyze the Prestige acquisition and that contradict the allegations in this case. Defs.' Mot. to Compel, dated Sept. 14, 2006, Adv. Pro. No. 04-3293 (Bankr. S.D.N.Y.) (ECF Doc. No. 34). Plaintiff's discovery positions have caused Defendants to serve additional discovery requests, including the Eighth Request for Documents, which Plaintiff responded by refusing to turn over any documents. (Ernst Aff., Exs. "10-12"). Finally, Plaintiff's discovery positions will likely force Defendants to file additional motions to compel and renew their previous motions to compel. (*Id.*, Exs. "8-9 & 13-16").

[5] The use of stock, reserved objections is generally disfavored by courts. *See, e.g.*, *Pulsecard, Inc. v. Discover Card Servs., Inc.*, 168 F.R.D. 295, 304 (D. Kan. 1996) (noting that courts "generally treat[] merely reserved objections … as untimely" and that "[p]arties cannot reserve objections to use at their leisure"). "Such pat, generic, non-specific objections, intoning … boilerplate language, are inconsistent with both the letter and the spirit of the Federal Rules of Civil Procedure." *Obiajulu v. City of Rochester, Dep't of Law*, 166 F.R.D. 293, 295 (W.D.N.Y. 1996). Although Rule 34, which governs the production of documents, does not directly address the issue of specificity or waiver, Rule 33 does, and "no reason exists to distinguish between interrogatories and requests for production." *Pulsecard*, 168 F.R.D. at 303. *See also Drexel Heritage Furnishings, Inc. v. Furniture USA, Inc.*, 200 F.R.D. 255, 258 (M.D.N.C. 2001) ("Courts have long viewed the discovery rules as an integrated mechanism to be read *in pari materia*."). Rule 33(b)(4) requires that all grounds for objections to interrogatories must be stated with specificity and that any ground not so stated in a timely objection is waived (unless excused). FED. R. CIV. P. 33(b)(4). The commentary to Rule 34 makes clear that the procedures under Rule 34 were intended to be governed by the same procedures applied under Rule 33: "The procedure provided in Rule 34 is essentially the

incorporate all of the Federal Rules of Civil Procedure, this so-called objection is so broad as to be meaningless. While Plaintiff is well versed in litigation (indeed, that is virtually its entire purpose) and is well represented, it is undisputed that Plaintiff made no specific mention of Rule 26(b)(4)(B) in any of its objections to any of Defendants' requests for the Deloitte Materials. In fact, Plaintiff did not invoke Rule 26(b)(4)(B) until June 2008, almost a year after Plaintiff responded to Defendants' Fourth Requests, and nearly six months after Plaintiff responded to Defendants' Seventh Requests. Tellingly, while Plaintiff filed its objection to the Bank Defendants' motion to compel on December 17, 2007, wherein it explicitly claimed that the Deloitte Materials were protected from disclosure under Rule 26(b)(4)(B), Plaintiff still made no mention of Rule 26(b)(4)(B) in response to Defendants' Seventh Request for Documents, which was dated December 31, 2007. In short, Plaintiff knew how to cite "Rule 26(b)(4)(B)," but failed to do so in this case. Thus, Plaintiff knowingly waived this argument. *See Hall v. Sullivan*, 231 F.R.D. 468, 473-74 (D. Md. 2005) (holding that "implicit within Rule 34 is the requirement that objections to document production requests must be stated with particularity in a timely answer, and that a failure to do so may constitute a waiver of grounds not properly raised").

As for Plaintiff's claim that the protections afforded by Rule 26(b)(4)(B) cannot be waived, several courts have held the opposite.[6] Defendants respectfully submit that this is the

---

same as that in Rule 33 and the discussion in the note appended to that rule is relevant to Rule 34 as well." FED. R. CIV. P. 34 advisory committee's note (1970 Amend.). *See also Pulsecard*, 168 F.R.D. at 303 ("The court will not distinguish between interrogatories and requests for production when considering the effects of non-specific or untimely objections.").

[6]   *See, e.g.*, *Monarch Knitting Mach. Corp. v. Sulzer Morat GmbH*, 85 Civ. 3412 (LBS), 1998 U.S. Dist. LEXIS 9278, *8 (S.D.N.Y. June 23, 1998) ("While we recognize the possibility that the general prohibition on discovery of consulting experts may be waived by disclosing protected material, we find no factual support for the argument that Monarch/Fukuhara's actions here constitute waiver."); *Atari Corp. v. Sega of Am.*, 161 F.R.D. 417, 418-20 (N.D. Cal. 1994) (finding that the voluntary production during settlement discussions of a videotape of a non-testifying expert's interview and report waived Rule 26(b)(4)(B) protection); *Hartford Fire Ins. Co. v. Pure Air on the Lake, Ltd., P'ship*, 154 F.R.D. 202, 211 (N.D. Ind. 1993); *United States v. Hooker Chemicals & Plastics Corp.*, 112 F.R.D. 333, 339 (W.D.N.Y.

7

better view of the law. In this case, it is undisputed that the Deloitte Materials were shared with opposing parties in the Deloitte Litigation and argued in the related pleadings.

Furthermore, the cases Plaintiff relies on are not on point. The issue here is whether Plaintiff waived the protections of Rule 26(b)(4)(B) by failing to make a specific and timely objection to Defendants' requests, not whether disclosure of those materials to a third party constitutes a waiver. (*See* Defs.' Br., pp. 10-11). The cases Plaintiff cites do not specifically address the former argument.[7]

Whether Plaintiff waived the protections of Rule 26(b)(4)(B) by failing to make a specific and timely objection to Defendants' document requests is governed by Rule 34, not Rule 26 itself. *E.g.*, *Hall*, 231 F.R.D. at 473-74. The fact is Plaintiff did not think to raise Rule 26(b)(4)(B) until almost a year after Defendants first requested that it produce certain of the Deloitte Materials; now, Plaintiff is attempting to shoehorn a Rule 26(b)(4)(B) objection into boilerplate that simply references every Federal Rule of Civil Procedure. This simply is not enough; all grounds for objections to discovery requests must be stated with specificity. FED. R. CIV. P. 33(b)(4); *Pulsecard, Inc. v. Discover Card Servs., Inc.*, 168 F.R.D. 295, 303-304 (D. Kan. 1996).

## III.     The Deloitte Materials Are Relevant

While Plaintiff argues (in conclusory fashion) that Defendants have failed to make any relevance argument, Plaintiff neglects to explain why it never responded to Defendants' letters

---

1986) ("when a party offers an affidavit of an expert witness in opposition to, or in support of a motion for summary judgment, it waives its right not to have the deposition of said expert taken").

[7]     *See, e.g.*, *Ludwig v. Pilkington N. Am., Inc.*, No. 03 C 1086, 2003 U.S. Dist. LEXIS 17789, at *8-9 (N.D. Ill. Sept. 30, 2003) (addressing the issue of disclosure of the expert materials to a third party, not the specificity and/or the timelines of the responding party's objections); *Coastal Towing, Inc. v. Novarco, Ltd.*, No. 98-492, 1999 U.S. Dist. LEXIS 16667, at *5 (E.D. La. Oct. 21, 1999) (same); *Tenn. Gas Pipeline v. Rowan Cos., Inc.*, No. 94-3863, 1996 U.S. Dist. LEXIS 8723, at *3 (E.D. La. June 19, 1996) (same); *Vanguard Savs. & Loan Ass'n v. Banks*, No. 93-4627, 1995 U.S. Dist. LEXIS 2016, at *4 (E.D. Pa. Feb. 17, 1995) (same).

that outlined Defendants' relevancy arguments.[8] In any event, the documents sought are relevant for at least two reasons: (i) Defendants have a right to discover the facts underlying the expert reports, particularly since it appears that they are inconsistent with Plaintiff's allegations in this case; and (ii) Defendants are entitled to confirm that Plaintiff has indeed given them "virtually all of the underlying factual material" upon which the Deloitte experts relied.

Adelphia was a large, complex company which measured its results in the billions, not millions of dollars. Adelphia's financials are the result of consolidating some 250 different legal entities. Much of the Restatement relates to changes in accounting policy, not just correction of outright errors. Given the amount of money at risk, the complex financial structure of Adelphia, and the extent of the massive restatement exercise, every effort should be made to thoroughly search for the best, most complete data-set to present to this Court. The Deloitte Materials will help assist the parties and the fact finder in analyzing Adelphia's financial condition and assessing the credibility of Adelphia's allegations. Plaintiff admits that disclosure of the reports will be "prejudicial" and they express the fear that we will be able to use the information to "bootstrap" our defense. (Pl.'s Resp. Br., pp. 13-14). Absent relevancy, how can that be? Finally, Plaintiff's cry of unfairness rings hollow. Plaintiff has failed to demonstrate any harm. However, it would clearly be unfair to allow Plaintiff to bring this fraudulent transfer action, seeking damages in excess of $100 million, while allowing Plaintiff to withhold from Defendants and the Court these critical, and possibly pivotal, documents. In the judgmental world of fraudulent conveyance, Defendants believe integrity, consistency and credibility will be relevant to the trier of fact.

---

[8] While Plaintiff criticizes Defendants' description of the law on relevancy, Plaintiff took the opposite position in the Bank Case. *Memorandum of Law in Support of ART's Motion to Compel Documents*, p. 8, dated June 30, 2008, No. 05 Civ. 9050 (S.D.N.Y.) (ECF Doc. No. 815).

9

## **CONCLUSION**

For the forgoing reasons, Defendants respectfully request that the Court grant Defendants' Third Motion to Compel.

This 8th day of August 2008.

                                  Respectfully submitted,

                                  TROUTMAN SANDERS LLP

                                  /s/ Harris B. Winsberg
                                Harris B. Winsberg (*Pro Hac Vice*)
                                    (Ga. Bar No. 770892)
                                Douglas E. Ernst (*Pro Hac Vice*)
                                    (Ga. Bar No. 249956)
                                Sean P. Dailey (*Pro Hac Vice*)
                                    (Ga. Bar No. 441395)

                                Bank of America Plaza – Suite 5200
                                600 Peachtree Street, N.E.
                                Atlanta, Georgia  30308-2216

                                (404) 885-3000 (tel.)
                                (404) 885-3900 (fax)

                                *Counsel to Defendants*