UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

ADELPHIA RECOVERY TRUST,

                Plaintiff,

v.

PRESTIGE COMMUNICATIONS OF NC, INC.
*et al.*,

                Defendants.

Case No. 1:07 Civ. 11152 (LMM)

**AFFIRMATION OF DOUGLAS E. ERNST IN SUPPORT OF DEFENDANTS' REPLY IN FURTHER SUPPORT OF THIRD MOTION TO COMPEL THE PRODUCTION OF DISCOVERY**

       DOUGLAS E. ERNST, an attorney admitted *pro hac vice* to this Court hereby affirms, pursuant to Rule 37 of the Federal Rules of Civil Procedure, that the following statements are true and correct under penalties of perjury:

       1.     I am a partner in the law firm Troutman Sanders LLP and I represent Prestige Communications of NC, Inc., Jonathan J. Oscher, Lorraine Oscher McClain, Robert F. Buckfelder, the Robert F. Buckfelder Trust, and Anverse, Inc. (collectively, the "Defendants") in the above-captioned matter.

       2.     I submit this affirmation in support of Defendants' Reply in Further Support of Third Motion to Compel the Production of Discovery ("Third Motion to Compel").

       3.     I am fully familiar with the facts set forth in this affirmation, either from personal knowledge or on the basis of documents that have been provided to me.

       4.     Attached as Exhibit "1" is a true and correct excerpted copy of the transcript of the FRCP 30(b)(6) deposition of Connie Campbell, dated July 31, 2007.

5.    Attached as Exhibit "2" is a true and correct excerpted copy of Adelphia Communications Corporation's ("Adelphia") First Amended Complaint against the Rigas Family, which was filed in the action styled *Adelphia Communications Corporation v. Rigas et al.*, Adv. Pro. No. 02-8051 (Bankr. S.D.N.Y.).

6.    Attached as Exhibit "3" is a true and correct copy of a chain of emails between myself and Plaintiff's counsel dated January 15, 2008, regarding deposition scheduling in this case.

7.    Attached as Exhibit "4" is a true and correct copy of a chain of emails between myself and Plaintiff's counsel dated January 17-18, 2008, regarding deposition scheduling in this case.

8.    Attached as Exhibit "5" is a true and correct copy of a letter from me to Plaintiff's counsel dated March 21, 2008, regarding various outstanding discovery issues.

9.    Attached as Exhibit "6" is a true and correct copy of a letter from me to Plaintiff's counsel dated April 9, 2008, regarding various outstanding discovery issues.

10.    Attached as Exhibit "7" is a true and correct copy of a letter from Plaintiff's counsel to me without enclosures dated April 11, 2008, regarding various outstanding discovery issues.

11.    Attached as Exhibit "8" is a true and correct copy of a letter from me to Plaintiff's counsel dated April 24, 2008, regarding various outstanding discovery issues.

12.    Attached as Exhibit "9" is a true and correct copy of a letter from me to Plaintiff's counsel dated May 7, 2008, regarding various outstanding discovery issues.

13.     Plaintiff failed to provide Defendants any response in writing to Exhibit 9.

14.     Attached as Exhibit "10" is a true and correct copy of a cover page along with Defendants' Eighth Request for Production of Documents to Plaintiff, dated May 21, 2008.

15.     Attached as Exhibit "11" is a true and correct copy of Plaintiff's email to me dated May 21, 2008, regarding various outstanding discovery issues.

16.     Attached as Exhibit "12" is a true and correct copy of Plaintiff's Objections and Responses to Defendants' Eighth Request for Production of Documents dated June 23, 2008.

17.     Attached as Exhibit "13" is a true and correct copy of an email from me to Plaintiff's counsel dated June 17, 2008, regarding a conferral on various Deloitte Materials.

18.     Attached as Exhibit "14" is a true and correct copy of an email from me to Plaintiff's counsel dated June 20, 2008, confirming the results of the conference call with Plaintiff regarding the Deloitte Materials.

19.     Attached as Exhibit "15" is a true and correct copy of a letter from me to Plaintiff's counsel dated July 17, 2008, regarding various outstanding discovery issues.

20.     Attached As Exhibit "16" is a true and correct copy of a letter from Plaintiff's counsel to me dated August 7, 2008, regarding various outstanding discovery issues.

I declare under penalty of perjury that the forgoing is true and correct.

This 8th day of August 2008.

_____/s/ Douglas E. Ernst_____
Douglas E. Ernst (*Pro Hac Vice*)
(Ga. Bar No. 249956)

1971068_1.DOC

# EXHIBIT "1"

Page 1

```
 1              UNITED STATES BANKRUPTCY COURT

 2              SOUTHERN DISTRICT Of NEW YORK

 3

    IN RE:

 4
    ADELPHIA COMMUNICATIONS CORP.,
 5  et al., a Delaware corporation,

 6

 7          Debtors.
    ~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~
 8  ADELPHIA COMMUNICATIONS CORP., et al.,

 9
            Plaintiff,
10
        vs.
11
    PRESTIGE COMMUNICATIONS of NC,
12  INC., et al.,

13

14          Defendants.
    ~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~
15          VIDEOTAPED DEPOSITION OF

16          CONSTANCE CAMPBELL

17

18          July 31, 2007

19           9:06 a.m.

20

21      Offices of Troutman Sanders

22        405 Lexington Avenue

23        New York, New York

24

25   ROBERT BLOOM, a Shorthand Reporter
```

Constance Campbell                                                July 31, 2007

1                    C. Campbell

2                    was marked for

3                    identification.)

4       Q.  I ask you to identify D 42.

5          MR. GERSHMAN:  I'm going to object to

6       that last comment, Harris.   You're well

7       aware that this is a 30(b)6 witness who

8       does not have personal knowledge of the

9       events at issue.

10          So necessarily what this witness

11      knows is going to be a result of reviewing

12      the documents that we can all review and

13      reviewing the deposition transcripts that

14      we can all review.

15          So let me point that out.

16      Q.  Can you identify D 42?

17      A.  This is a compilation of stock powers

18      of the capital stock of the Georgia company

19      which are signed by the various holders.

20      Q.  Who are the stock certificates issued

21      to?

22      A.  These stock powers are issued to ACC

23      in -- the different stock powers in this

24      document are all issued to ACC.

25          MR. WINSBERG:  Let me mark 61, D 61.

```
 1                    C. Campbell

 2              (Exhibit Number D 61

 3                was marked for

 4                identification.)

 5      Q.   Can you identify D 61?

 6      A.   This is the bill of sale of the

 7  assets of the North Carolina corporation,

 8  North Carolina, Inc., transferring them to

 9  ACC.

10      Q.   So in return for the wires we

11  previously looked at the defendants

12  transferred the Prestige Cable Systems to

13  Adelphia as reflected in D 42 and D 61,

14  correct?

15      A.   Yes.

16      Q.   Earlier you talked at length actually

17  about CEA's opinion, opinion letter?

18      A.   The fairness opinion?

19      Q.   Fairness opinion?

20      A.   Yes.

21      Q.   Do you believe CEA did a poor job in

22  the fairness opinion?

23          MR. GERSHMAN:  Objection to form.

24      A.   I think it's a -- I don't want to

25  characterize it as poor, but I think it is a
```

1                    C. Campbell

2       Q.  Reflected in D 42?

3       A.  Yes.

4       Q.  Now, after Adelphia -- after the

5   stock was transferred to Adelphia, Adelphia at

6   some point transferred the stock to Highland

7   Prestige, correct?

8       A.  It assigns the stock, yes, to

9   Highland Prestige contemporaneously on July

10  5th.

11      Q.  I was going to ask you, when did that

12  happen?  Is your testimony it happened on July

13  5th, 2000?

14      A.  Yes, there is an assignment document

15  dated July 5th that the ACC assigns the stock

16  to Highland Prestige Georgia.

17      Q.  What about the actual -- on D 42, the

18  stock was transferred to Adelphia.   What

19  about the actual stock certificates, when were

20  they transferred to Adelphia -- I'm sorry,

21  when were they transferred to Highland

22  Prestige?

23      A.  I don't know that they ever were

24  other than the letter document which assigns

25  them to Highland Prestige Georgia.

```
 1                    C. Campbell
 2      Q.  Does that document assign the actual
 3   stock certificates or assigns the stock
 4   purchase agreement?
 5      A.  I think it assigns the stock purchase
 6   agreements.
 7          I don't think that if you go back to
 8   -- if I go back to the stock purchase
 9   agreement, I don't believe that the stock can
10   actually be sold.   I think that would be a
11   violation of the SPA.
12      Q.  Well, we used the word transferred?
13      A.  Has no intent to sell the shares to
14   any other person in 3.4.
15          I don't know the legal mechanics of
16   this, but if you look at 11.5, I think ACC is
17   assigning its rights under the agreement.
18   I'm not sure that it is -- it's not selling
19   the stock.
20      Q.  What about transferring the stock?
21      A.  You're asking me to be a lawyer now.
22      Q.  Let's look at D 42.
23      A.  I don't believe -- if the question is
24   the stock certificates were never changed from
25   ACC to Highland Prestige Georgia.
```

Constance Campbell                                              July 31, 2007

Page 209

```
 1                    C. Campbell
 2          I don't know whether legally the
 3     stock certificates could be, given 3.4 or
 4     whether -- I don't -- I don't have the legal
 5     knowledge to know whether or not that would be
 6     a violation of 3.4 or if the letter simply --
 7     what I do know is that the rights under the
 8     stock purchase agreement are transferred to
 9     Highland Prestige Georgia contemporaneously on
10     7-5 with the purchase of the stock.
11          Q.  Is it possible that document was
12     backdated?
13          MR. GERSHMAN:  Objection to form.
14          A.  Tell me which document you're talking
15     about.
16          Q.  You mentioned there was some
17     assignment document dated July 5th, 2000 for
18     the stock purchase agreement?
19          A.  I have no reason to know whether it
20     was or was not.
21          Q.  So it's possible that document could
22     have been actually prepared and executed some
23     point after July 5th of 2000?
24          A.  There is nothing on the record that
25     indicates that.
```

# EXHIBIT "2"

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------------X
In re:                                                    )       Chapter 11 Cases
                                                          )
Adelphia Communications Corporation, et al.,              )       No. 02-41729 (REG)
                                                          )
                    Debtors.                              )       (Jointly
                    Administered)
--------------------------------------------------------------X
ADELPHIA COMMUNICATIONS CORP.,                            )
a Delaware corporation,                                   )
                                                          )
                    Plaintiff,                            )
                                                          )
           v.                                             )
                                                          )       Adversary
Proceeding
JOHN J. RIGAS, TIMOTHY J. RIGAS, MICHAEL J. RIGAS,        )       No. 02-8051
JAMES P. RIGAS, PETER L. VENETIS, JAMES R. BROWN,         )
MICHAEL MULCAHEY, DORIS RIGAS, ELLEN RIGAS                )
VENETIS, COUDERSPORT TELEVISION CABLE                     )
COMPANY, COUDERSPORT THEATRE, DOBAIRE                     )
DESIGNS, DORELLENIC, DORIS HOLDINGS, LP, NCAA             )
HOLDINGS, INC., ILIAD HOLDINGS, INC., ELENI               )
INTERIORS, INC., ERGOARTS, INC., HIGHLAND 2000,           )
LP, HIGHLAND HOLDINGS, HIGHLAND PREFERRED                 )
COMMUNICATIONS 2001, LLC, HIGHLAND HOLDINGS II,           )
G.P., HIGHLAND COMMUNICATIONS, LLC, HIGHLAND              )
PRESTIGE GEORGIA, INC., HIGHLANDVIDEO                     )
ASSOCIATES, LP, HILTON HEAD COMMUNICATIONS                )
L.P., RIGAS ENTERTAINMENT, LTD., ISLAND PARTNERS,         )
INC., ROUMALI, INC., GRISTMILL PROPERTIES, INC.,          )
SYRACUSE HITLON HEAD HOLDINGS, L.P.,                      )
SONGCATCHER FILMS, LLC, WENDING CREEK 3656, LLC,          )
WENDING CREEK FARMS, INC., and                            )
XYZ COMPANY NOS. 1-15,                                    )
                                                          )
                    Defendants.                           )
--------------------------------------------------------------X


**FIRST AMENDED COMPLAINT**



independent members of the Board the existence of these related-party transactions with his wife's companies or the improper manner through which his wife obtained these funds.

145.    The terms of the REL loan and SongCatcher funding were never presented to Adelphia's Board and never approved by the independent directors.

146.    The corporate funds paid to REL and to SongCatcher have not been repaid.

**9.    Prestige Properties**

147.    During the fall of 1999, Adelphia entered into negotiations for the purchase of properties from Prestige Communications, which were located in Georgia, North Carolina, Virginia, and Maryland (the "Prestige properties"). In November 1999, the Board approved resolutions for Adelphia to acquire all of the Prestige properties.

148.    At a March 9, 2000 Board meeting, however, Tim Rigas made a presentation concerning the Rigas family's planned role in the purchase of the Prestige properties. Tim Rigas explained that the Georgia property would be purchased by the Rigases for $400 million and the remaining properties would be purchased by Adelphia for approximately $700 million. The final agreement was specifically subject to final Board approval following a fairness opinion.

149.    On June 12, 2000, the Board consented to the Prestige properties transaction subject to a fairness opinion regarding the price allocation between the property being purchased by the Rigases, and the remaining properties to be purchased by the Company.

150.    A fairness opinion dated July 19, 2000 provided that a payment structure comprising the following was a fair valuation: (1) an initial payment by the Rigases

49

of approximately $300 million and (2) a stream of payments by the Rigases over a period of ten years totaling approximately $138 million. The fairness opinion was based on two letter agreements entered into between Adelphia and the Rigas entities dated June 13, 2000 which specified the above payment.

151.    On July 30, 2000, however, the parties to those letter agreements canceled the Rigases' obligation to make the $138 million payment stream in exchange for the assumption of $100 million of debt under the CCH Co-Borrowing Facility.

152.    Nearly a year later, an additional adjustment was made to the allocation of the purchase price for the Prestige properties. Defendant Tim Rigas – with no apparent business or market justification – changed the allocation such that the Rigases contributed a total of $350 million and Adelphia contributed $750 million. This was done through a journal entry with an effective date of July 2001 and was never presented to or approved by the Board.

**10. ML Media Partners Transaction**

153.    On December 13, 2001, Adelphia reached a settlement agreement regarding its litigation relating to the Century Communications Corp. ("Century")/ML Media Partners, L.P. ("ML") cable venture (the "Joint Venture"). Century, an Adelphia subsidiary, currently owns a 50% interest in the Joint Venture. The settlement agreement was signed by Tim Rigas on behalf of Adelphia, Century, and Highland Holdings.

154.    In connection with the pending settlement, Century, the Joint Venture, ML, and Highland Holdings entered into a Leveraged Recapitalization Agreement ("LRA"). Pursuant to this Agreement, unless the closing of the transaction was accelerated due to certain specified events, the Joint Venture agreed to redeem ML Media's 50% interest.

50

succeeded in achieving these benefits).   Through their access to the CMS, the Rigas

Management was able to improperly transfer Company assets and funds at will, including the

transactions alleged herein, to benefit their own interests, and to conceal those wrongful

transactions through, for example, the use of "netting" and "reclassification" procedures (as

alleged herein).

280.    The Company reviewed and relied on the misrepresentations and

omissions of the Rigas Management in deciding to sell securities to the Rigas Family

Directors.  The Company's reliance was justifiable and reasonably foreseeable given the

relationship between the parties and the nature of the information available to the

independent directors at the times on which the securities were sold.

281.   The Company would not have sold the shares to the Rigas

Management were it not for the material misrepresentations and omissions concerning the

source of funds used to purchase the Company's securities.

282.    As a direct and proximate result of this wrongful conduct in violation

of the federal securities law, the Rigas Management caused the Company immediate and

quantifiable injury including, but not limited to, a loss in market capitalization of over one

billion dollars, for which Adelphia seeks relief.

**COUNT VII**
**<u>FRAUDULENT CONCEALMENT</u>**
**(The Rigas Management)**

283.    Plaintiff incorporates by reference the allegations set forth in each of

the preceding paragraphs as though set forth fully herein.

108

284. Each of the Rigas Management Defendants owed fiduciary duties to Adelphia, and therefore, had an obligation to disclose material information concerning the various related-party and self-dealing transactions described herein and otherwise.

285. Through manipulating the amount and nature of information available to the independent directors, the investment and financial communities, and the public, the Rigas Management and other individuals acting under their direction intentionally omitted from oral presentations to the Board and written materials provided to the Board or otherwise, and actively concealed from the Board relevant and material facts concerning various related-party and other transactions.

286. In connection with the purchase of the Prestige Properties, the Rigas Management represented to the Board that a Rigas Family Entity would purchase the Prestige Georgia Property for the equivalent of $400 million. As a direct and foreseeable result of that representation, the Board approved the purchase of the remaining Prestige Properties for approximately $700 million. Because of the Rigas Management's control over the Cash Management System, by means of a mere journal entry, the Rigas Management Defendants were nearly a year after the deal closed able to change the payment allocation and defraud the Company of approximately $50 million.

287. The $50 million adjustment was neither presented to nor approved by independent members of the Board.

288. The Rigas Family Directors never intended to pay the full amount of the agreed-upon $400 million price. Further, Brown and Mulcahey knew that the Rigas Family Directors did not have the financial wherewithal to pay the full agreed-upon price. As director of the Cash Management System, Mulcahey was aware of the fraudulent

adjustment made to the price allocation for the purchase of the Prestige Properties, but did not disclose that fact to the independent members of the Board.

289.    Thus, the Rigas Management fraudulently concealed the fact that the Rigases could not pay the full agreed-upon price allocation and then further fraudulently concealed the fact that the price allocation had been materially adjusted by means of a mere journal entry.

290.    The independent members of the Board did not suspect and did not have reason to suspect the nature of the true facts that the Rigas Management actively concealed, and remained unaware of the Rigas Management's fraudulent conduct until at least May of 2002.

291.    The Rigas Management Defendants' omission of material facts from the information presented to the Board made the information as a whole concerning the purchase of the Prestige Properties false and misleading.

292.    The Rigas Management Defendants concealed material information from the Board with the intent of defrauding Adelphia of money or property.

293.    Adelphia reasonably relied upon the information that the Rigas Management presented, which was materially incomplete and inaccurate as a direct result of the Rigas Management's wrongful behavior.

294.    Adelphia's reliance was reasonably foreseeable.

295.    The Company was substantially harmed by the Rigas Management's conduct by an amount to be determined at trial.

110

# EXHIBIT "3"

## Winsberg, Harris B.

| | |
|---|---|
| **From:** | Ernst, Douglas E. |
| **Sent:** | Tuesday, January 15, 2008 6:06 PM |
| **To:** | 'Joseph Gershman' |
| **Cc:** | Winsberg, Harris B.; Nail, Garrett A.; Smith, Yvonne R.; David M. Friedman |
| **Subject:** | RE: Depo scheduling |

Hi Joe,

During our 5:00 pm call we:

1. Made a counter-proposal on the depo schedule. We offer to add six months to the existing (bankruptcy court) schedule order. This offer is contingent on the parties not adding to the existing witness/deposition lists that have been discussed. We cannot agree to the Bank schedule because it is simply too open-ended.

2. In light of the new but unspecified document requests you describe below, we will need to reschedule Jon Oscher's depo until sometime after you have formulated your specific document request. We are doing this in order to ensure proper preparation for his deposition and to ensure there is no need for a second deposition. Mr. Oscher is not leaving the country and I am sorry if there has been some confusion on this point. He is leaving (for 6 weeks) to go to his winter home in Arizona. We agreed to make him available for deposition in the next 2 months somewhere in the USA, provided we have received and had a chance to digest all of your new document requests.

As a general response, please know that I send these emails in an attempt to avoid misunderstandings, not to be provocative. If I said something provocative in my earlier email, be assured it was unintentional. The one thing I want to avoid is unnecessarily raising the stress level in this case.

Since you indicated there is no need for me to stick around tonight, I am leaving for home. Tomorrow, I will be in and out of the office, but feel free to call me on my cell, if need be: 770.634.5882.

Thanks Joe.


-----Original Message-----
**From:** Joseph Gershman [mailto:JGershman@kasowitz.com]
**Sent:** Tuesday, January 15, 2008 2:01 PM
**To:** Ernst, Douglas E.
**Cc:** Winsberg, Harris B.; Nail, Garrett A.; Smith, Yvonne R.; David M. Friedman
**Subject:** Depo scheduling

Doug -

Set forth below are my corrections and clarifications to your e-mail of earlier today.

With respect to Jon Oscher, you did tell me two weeks ago that he was 75, in the same conversation that Troutman informed me that none of the Defendants' witnesses, without regard to age, would be appearing at our offices for their depositions. When I asked you last week whether your request with respect to Mr. Oscher concerned an infirmity or illness that he had, you told me that that was not an issue. I confess that to date I really don't understand why this is an issue with respect to any of the Defendants, other than the issues articulated by Harris in our conversation two weeks ago (lack of valet parking at our offices, absence of a breakout room at the last deposition, our office is smaller, etc.). I further add that there was no discussion of Mr. Oscher's age on yesterday's call, only a discussion of

where we planned to have the deposition, you said you would be there, I told you we would have a breakout room for you, and we discussed whether you wanted us to order in lunch, but you indicated that you planned to go out for lunch. As previously discussed, because this is a 2-day deposition it would be a substantial inconvenience to Plaintiff to have to conduct the deposition at a location other than our offices, and as of this point I have not heard a compelling reason why Defendants should not be deposed at out offices. Moreover, as already pointed out, you noticed and held all of Adelphia's 30(b)(6) depositions at your offices (all of which we had been informed would be 1-day depositions, although Ms. Campbell's wound up being a 2-day deposition). As Mr. Oscher only needs to appear at the deposition and answer questions in a conference room, it is difficult to understand the hardship of appearing at our offices for his deposition.

With respect to the duration of fact depositions, I believe the Bank Case schedule calls for the parties to make good faith efforts to complete fact depositions within 6 months.

With respect to expert discovery, the Bank Case calls for a status conference with Judge McKenna one month before the completion of fact depositions, with a proposed expert discovery schedule to be presented at that time.

With respect to a trial date, I believe the Bank Case currently has a March 1, 2009 trial date, as set forth in Judge McKenna's decision granting the motion to withdraw the reference in the Prestige Case.

With respect to Ms. Holmes, we are adjourning her deposition pending the production of some additional documents. It may be that this issue is resolved promptly and that we will be able to depose Ms. Holmes in February - it really depends on how quickly we can resolve the document issues. We will send you a list of the additional documents we are seeking by early next week. We will also need these additional documents before we take Ms. McClain's deposition (and Mr. Buckfelder's deposition).

With respect to Mr. Buckfelder, although we had proposed a date for him several weeks ago, unlike Ms. Holmes that date was never confirmed. Yesterday you indicated that you thought we might be able to do it on that date. As with Ms. Holmes, our review of the tax documents indicates that there are additional responsive documents that have not been produced that we would like to have before his deposition. First and foremost, it appears that Mr. Buckfelder either donated or sold Prestige NC stock to the Buckfelder Investment Trust in or about 1999 - we would like all documents relating to this transaction. Once the document issues have been resolved, we will contact you to establish a date for Mr. Buckfelder's deposition.

I did not say that we were not willing to take or defend any depositions in February. What I said was there are some additional document issues that need to be resolved before we proceed with the Defendants' depositions. If we are able to resolve the issues promptly, we may be able to proceed with certain of these depositions in February. In our view, it does not make any sense to schedule these depositions until the document issues are resolved. I also said that if the overlapping discovery is consolidated with the Bank Case, then there is no need to finish the non-overlapping discovery by March 15. In addition, Harris also asked if we would consider carving out a particular deposition that fell within the overlapping depositions and agree to take that deposition earlier than permitted under the schedule in the Bank Case, and I told you that if you made such a proposal that we would consider it.

Speak to you at 5.

- Joe

-----Original Message-----
**From:** Ernst, Douglas E. [mailto:douglas.ernst@troutmansanders.com]
**Sent:** Tuesday, January 15, 2008 9:17 AM
**To:** Joseph Gershman
**Cc:** Winsberg, Harris B.; Nail, Garrett A.; Smith, Yvonne R.
**Subject:** Depo scheduling

Hi Joe,

Here is my understanding of where we stand as of yesterday's call::

Adelphia proposes consolidating our discovery with the scheduling order entered in the Bank case. Prestige would then have to wait until fact depositions began in the Bank case to depose any of its remaining witnesses, including those from Adelphia, PWC, Buchanon, S & P, or Tatum.

Adelphia believes the Merrill database dispute is resolved, thereby commencing the expiry of the 6-month stay. (Pursuant to the Bank discovery order, at the conclusion of this 6-month period, fact depositions may commence.) Adelphia expects initialization of fact depositions by July 2008, concluding in January 2009.

These restrictions, however, would not apply to Adelphia taking the Defendants' depositions, nor would it apply to any third parties not common to the Bank case (although no such 3rd parties could be identified in the call).

There is no timetable for expert discovery in the Bank case. A trial date has not been set.

We will respond to your proposal in a call set for 5:00 p.m. today.

Jon Oscher's depo is scheduled for January 17 and 18 at Kasowitz's Atlanta office. It is my understanding Mr Oscher is 75 years old, nevertheless, you declined my request to have his depo at Troutman's office.

You **cancelled** Earline Holmes' deposition, which was confirmed for February 6 and 7. You said you were looking for additional documents. Please send me an email itemizing the documents you are looking for and we will do our best to respond timely.

You also said that you are no longer available for Robert Buckfelder's Rule 30(b)(6) deposition for Buckfelder Investment Trust, which was tentatively set for February 28. As we discussed, Rob was willing to do it on that day.

In sum, you are not willing to take or defend any depositions during Feb 2008.

We agreed that all other pending issues among the parties would be put off until a conference call sometime next week.

As always, please let me know if my understanding, as set forth above, is incorrect or incomplete.

Thanks Joe, see you at 5:00 pm.

.

---

IRS Circular 230 disclosure: To ensure compliance with requirements imposed by the IRS, we inform you that any tax advice that may be contained in this communication (including any attachments) is not intended or written to be used, and cannot be used, for the purpose of (i) avoiding any penalties under the Internal Revenue Code or (ii) promoting, marketing or recommending to another party any transaction(s) or tax-related matter(s) that may be addressed herein.


This e-mail communication (including any attachments) may contain legally privileged and confidential

information intended solely for the use of the intended recipient. If you are not the intended recipient, you should immediately stop reading this message and delete it from your system. Any unauthorized reading, distribution, copying or other use of this communication (or its attachments) is strictly prohibited.

This e-mail and any files transmitted with it are confidential and may be subject to the attorney-client privilege.  Use or disclosure of this e-mail or any such files by anyone other than a designated addressee is unauthorized.  If you are not an intended recipient, please notify the sender by e-mail and delete this e-mail without making a copy.

# EXHIBIT "4"

## Winsberg, Harris B.

---

**From:**     Ernst, Douglas E.

**Sent:**     Friday, January 18, 2008 8:08 AM

**To:**       'Joseph Gershman'

**Cc:**       Winsberg, Harris B.; Nail, Garrett A.; 'Davis.Sheehan@troutmansanders.com'; Smith, Yvonne R.

**Subject:** RE: Gill/Quinn depos cancelled?

Thanks Joe.

-----Original Message-----
**From:** Joseph Gershman [mailto:JGershman@kasowitz.com]
**Sent:** Thursday, January 17, 2008 6:17 PM
**To:** Ernst, Douglas E.
**Cc:** David M. Friedman
**Subject:** RE: Gill/Quinn depos cancelled?

Doug -

   Yes, as discussed we have cancelled those two depositions for purposes of efficiency, with the expectation that any deposition taken of those individuals will be consolidated with depositions in the Bank Case.

   Best regards.

                                                                          - Joe

-----Original Message-----
**From:** Ernst, Douglas E. [mailto:douglas.ernst@troutmansanders.com]
**Sent:** Thursday, January 17, 2008 2:36 PM
**To:** Joseph Gershman
**Cc:** Winsberg, Harris B.; Smith, Yvonne R.; Nail, Garrett A.
**Subject:** Gill/Quinn depos cancelled?

Hi Joe,

We had our first snowstorm yesterday, so as it turns out, its probably good you did not have to fly down yesterday as scheduled.

Anyway, to confirm, it is my understanding you have **cancelled the depositions of Stephanie Gill (noticed by agreement for Jan 24) and Paul Quinn (noticed by agreement for Jan 25).** If my understanding is incorrect, please let me know immediately. We are happy to go forward with either, or both, if you are willing to do so.

I am sorry we could not reach agreement on the scheduling order.

Regards,

Doug

IRS Circular 230 disclosure: To ensure compliance with requirements imposed by the IRS, we inform you that any tax advice that may be contained in this communication (including any attachments) is not intended or written to be used, and cannot be used, for the purpose of (i) avoiding any penalties under the Internal Revenue Code or (ii) promoting, marketing or recommending to another party any transaction(s) or tax-related matter(s) that may be addressed herein.

This e-mail communication (including any attachments) may contain legally privileged and confidential information intended solely for the use of the intended recipient. If you are not the intended recipient, you should immediately stop reading this message and delete it from your system. Any unauthorized reading, distribution, copying or other use of this communication (or its attachments) is strictly prohibited.

This e-mail and any files transmitted with it are confidential and may be subject to the attorney-client privilege.  Use or disclosure of this e-mail or any such files by anyone other than a designated addressee is unauthorized.  If you are not an intended recipient, please notify the sender by e-mail and delete this e-mail without making a copy.

# EXHIBIT "5"

# TROUTMAN SANDERS LLP

### ATTORNEYS AT LAW
#### A LIMITED LIABILITY PARTNERSHIP

BANK OF AMERICA PLAZA
600 PEACHTREE STREET, N.E. - SUITE 5200
ATLANTA, GEORGIA 30308-2216
www.troutmansanders.com
TELEPHONE: 404-885-3000
FACSIMILE: 404-885-3900

Douglas E. Ernst
douglas.ernst@troutmansanders.com

Direct Dial: 404-885-3334
Direct Fax: 404-962-6552

March 21, 2008

<u>VIA E-MAIL AND U.S. MAIL</u>

Joseph A. Gershman, Esq.
Kasowitz, Benson, Torres & Friedman LLP
1633 Broadway
New York, New York 10019-6799

Re:    <u>Adelphia Recovery Trust v. Prestige Communications of NC, Inc., et al.</u>
       Civil Action File No. 07-11152, United States District Court, Southern
       District of New York

Dear Joe:

As you know, Judge Morris ordered Plaintiff's production of all deposition transcripts of the independent directors from the Deloitte Litigation in unredacted form at a hearing on October 17, 2007, and in a written order entered on October 19, 2007 (collectively, the "**Production Order**"). Prior to and at the hearing on October 17, Plaintiff represented that there were three volumes of deposition transcripts of Mr. Kailbourne taken in the Deloitte Litigation. Specifically, Plaintiff made these representations in its opposition brief to Defendants' Second Motion to Compel, its affirmation in support of its opposition brief, and to Judge Morris at the October 17 hearing. Plaintiff also represented that it had previously produced one volume of Mr. Kailbourne's Deloitte testimony. Pursuant to the Production Order, Plaintiff produced what it represented were the two remaining volumes of Mr. Kailbourne's Deloitte testimony. In sum, Plaintiff produced Mr. Kailbourne's deposition testimony from the Deloitte case taken on May 31, June 1, and June 2, 2006. In reliance on Plaintiff's compliance with the Production Order, Defendants took Mr. Kailbourne's deposition on December 7, 2007.

Notwithstanding the Production Order, it has recently come to our attention that Mr. Kailbourne was also deposed on November 15, 2006 in the Deloitte Litigation. Thus, it appears that Plaintiff has violated the Production Order by failing to produce all of

ATLANTA · HONG KONG · LONDON · NEW YORK · NEWARK · NORFOLK · RALEIGH
RICHMOND · SHANGHAI · TYSONS CORNER · VIRGINIA BEACH · WASHINGTON, D.C.

**TROUTMAN SANDERS LLP**
ATTORNEYS AT LAW
A LIMITED LIABILITY PARTNERSHIP

Joseph A. Gershman, Esq.
March 21, 2008
Page 2

Mr. Kailbourne's testimony.    Please produce the November 15, 2006 volume of Mr. Kailbourne's testimony immediately, please explain why Plaintiff chose to violate the Production Order rather than simply produce the transcript and please confirm that Plaintiff has, with production of this additional volume of testimony, fully complied with the Production Order.

Defendants reserve all of their rights and remedies against all parties, including, without limitation, seeking civil contempt.

Sincerely,

Douglas E. Ernst

DEE:bkf

cc:    Harris B. Winsberg, Esq.
        Sean P. Dailey, Esq.

1920714_1.DOC

# EXHIBIT "6"

# TROUTMAN SANDERS LLP

### ATTORNEYS AT LAW
#### A LIMITED LIABILITY PARTNERSHIP

BANK OF AMERICA PLAZA
600 PEACHTREE STREET, N.E. - SUITE 5200
ATLANTA, GEORGIA 30308-2216
www.troutmansanders.com
TELEPHONE: 404-885-3000
FACSIMILE: 404-885-3900

Douglas E. Ernst                                          Direct Dial: 404-885-3334
douglas.ernst@troutmansanders.com                         Direct Fax:  404-962-6552

April 9, 2008

**VIA E-MAIL AND FEDERAL EXPRESS**

Joseph A. Gershman, Esq.
Kasowitz, Benson, Torres & Friedman LLP
1633 Broadway
New York, New York 10019-6799

     Re:   <u>Adelphia Recovery Trust v. Prestige Communications of NC, Inc., et al.</u>
            Civil Action File No. 07-11152, United States District Court, Southern
            District of New York

Dear Joe:

      On March 21, 2008, I sent a letter to you regarding the production of the transcripts for all of Mr. Kailbourne's testimony, specifically, the November 15, 2006 volume. For your convenience, I have attached a copy of that letter.

      To date, I have not received a response from you regarding that letter nor the transcript. Please let me know, no later than Friday, April 18, 2008, if you have a response to this letter and if so what that response is.

                              Sincerely,

                              Douglas E. Ernst

DEE:ys
Enclosure
cc:   Teresa Matushaj, Esq.
       Harris B. Winsberg, Esq.
       Sean P. Dailey, Esq.

ATLANTA · HONG KONG · LONDON · NEW YORK · NEWARK · NORFOLK · RALEIGH
RICHMOND · SHANGHAI · TYSONS CORNER · VIRGINIA BEACH · WASHINGTON, D.C.

EXHIBIT "7"

KASOWITZ, BENSON, TORRES & FRIEDMAN LLP

1633 BROADWAY

NEW YORK, NEW YORK 10019-6799

212-506-1700

FACSIMILE: 212-506-1800

JOSEPH A. GERSHMAN
212-506-1774

ATLANTA
HOUSTON
NEWARK
SAN FRANCISCO

April 11, 2008

**VIA E-mail and Federal Express**

Doug Ernst
Troutman Sanders LLP
Bank of America Plaza, Suite 5200
600 Peachtree Street, N.E.
Atlanta, GA 30308

   Re: Adelphia Recovery Trust vs. Prestige Communications of NC, Inc., et al.

Dear Doug:

   We are in receipt of your letters dated March 21 and April 9, 2008, have investigated the assertions in your letter, and have confirmed that you have successfully identified a duplicating error in connection with the production of Mr. Kailborne's November 15, 2006 deposition transcript. We have confirmed that Mr. Kailborne's Nov. 15, 2006 transcript and the attendant exhibits were all sent to Ikon to be copied for bates stamping and production along with the rest of the independent director transcripts from the Deloitte action, and while 24 exhibits to that deposition were successfully copied and produced to you,[1] the November 15, 2006 transcript and Rigas Exhibit 494 were not. Copies of the transcript and the one exhibit that you are missing are being mailed to you along with a copy of this letter. Also enclosed will be certain additional information that you have requested, bates stamped ADPR000117581 to ADPR000117808. All of the documents being produced herewith are designated "Confidential".

   There was no intention to withhold Mr. Kailborne's Nov. 15, 2006 transcript and exhibit from production, as should have plainly been apparent by the fact that 13 exhibits from that deposition bearing the date "11/15/06" on the exhibit number sticker were produced to you (as you are undoubtedly aware).[2] Enclosed, by way of example, are two copies of such exhibits.[3] It

---

[1] Bates numbers ADPR000086877 - ADPR000086977, ADPR000084595 - ADPR000084627, ADPR000087064 - ADPR000087086, ADPR000098622 - ADPR000098626, ADPR000086824 - ADPR000086832, ADPR000086978 - ADPR000086996, ADPR000082243 - ADPR000082284, ADPR000087002 - ADPR000087063; ADPR000090106 - ADPR000090108, ADPR000086381 - ADPR000086383, ADPR000087118 - ADPR000087119, ADPR000086525 - ADPR000086526

[2] ADPR000086877 - ADPR000086977.

KASOWITZ, BENSON, TORRES & FRIEDMAN LLP

is our belief that there are no other independent director transcripts from the Deloitte case that have not been produced to you, but should you notice any other exhibits or transcripts from the Deloitte case as to which the exhibits were produced but the transcript appears to be missing, or a transcript has been produced but there are missing exhibits, please let us know and we will furnish you with a copy of the missing documents.

Last, in light of the fact that your firm withheld from production until last month, among other highly relevant items, documents showing that at or about the time of the Prestige transaction your client valued the stock of Prestige North Carolina at approximately $700 million less than Adelphia paid for it — years after your firm had represented that all responsive documents had been produced, and three years after these document were requested — not to mention your firm's propensity for filing briefs containing statements lacking either a factual or legal basis — I would be careful about throwing around threats of civil contempt, and demanding that documents be produced "immediately".

Sincerely yours,

Joseph A. Gershman

cc:    David M. Friedman, Esq.

---

[3] The remaining exhibits from the November 15, 2006 deposition had been introduced at previous depositions, and therefore their exhibit stickers bore the dates of the deposition when they were first introduced.

2

# EXHIBIT "8"

# TROUTMAN SANDERS LLP

ATTORNEYS AT LAW
A LIMITED LIABILITY PARTNERSHIP

BANK OF AMERICA PLAZA
600 PEACHTREE STREET, N.E. - SUITE 5200
ATLANTA, GEORGIA  30308-2216
www.troutmansanders.com
TELEPHONE: 404-885-3000
FACSIMILE: 404-885-3900

Douglas E. Ernst
Douglas.ernst@troutmansanders.com

Direct Dial: 404-885-3334
Direct Fax: 404-962-6553

April 24, 2008

**VIA E-MAIL AND U.S. MAIL**

Joseph A. Gershman, Esq.
Kasowitz, Benson, Torres & Friedman, LLP
1633 Broadway
New York, New York 10019

Re:   <u>Adelphia Communications Corp., et al. v. Prestige Communications
of NC, Inc., et al.</u>, Adv. Pro. No. 04-03293 (CGM)

Dear Joe:

It has come to our attention that Mr. Coyle, Mr. Gelber and Mr. Metros provided grand jury testimony in connection with the criminal prosecution in New York. You had previously produced Mr. Kailbourne's grand jury testimony in response to our document requests. Please produce their grand jury testimony as it is responsive to our document requests.

It has also come to our attention that Mr. Coyle, Mr. Gelber and Mr. Kailbourne prepared a privilege log in connection with certain Adelphia litigation. We have not seen any such privilege log. Please provide us a copy of this privilege log and let us know whether any of the documents listed on this log were withheld in our case. Based on Plaintiff's prior representations on privilege and Judge Morris' rulings, we believe Plaintiff has no basis to withhold documents based on privilege except for Plaintiff's work product in connection with this litigation.

Sincerely,

Douglas E. Ernst

DEF:bkf

[934261_1.DOC

# EXHIBIT "9"

# TROUTMAN SANDERS LLP

### ATTORNEYS AT LAW
#### A LIMITED LIABILITY PARTNERSHIP

BANK OF AMERICA PLAZA
600 PEACHTREE STREET, N.E. - SUITE 5200
ATLANTA, GEORGIA 30308-2216
www.troutmansanders.com
TELEPHONE: 404-885-3000
FACSIMILE: 404-885-3900

Douglas E. Ernst
Douglas.ernst@troutmansanders.com

Direct Dial: 404-885-3334
Direct Fax: 404-962-6553

May 7, 2008

**VIA E-MAIL AND U.S. MAIL**

Joseph A. Gershman, Esq.
Kasowitz, Benson, Torres & Friedman, LLP
1633 Broadway
New York, New York 10019

Re:    *Adelphia Recovery Trust v. Prestige Commc'ns of NC, Inc. et al. (07-Civ-11152)*

Dear Joe:

This letter shall follow-up my previous letters dated February 13, March 27, 2008 and April 24, 2008 (copies attached).  We have not received a response to any of these letters.  If Plaintiff has a response, please provide it to me by May 15, 2008.

Also, based upon our telephone calls over the last few days, it was my understanding Plaintiff was going to file yesterday for a protective order with respect to our subpoena recently served on the Rigas family.  Please be advised that we have not yet been served with any such pleadings.

Sincerely,

Douglas E. Ernst

DEE:ys
Enclosures
cc:  Harris Winsberg, Esq.

1935289_1

ATLANTA • HONG KONG • LONDON • NEW YORK • NORFOLK • RALEIGH
RICHMOND • TYSONS CORNER • VIRGINIA BEACH • WASHINGTON, D.C.

# TROUTMAN SANDERS LLP

### ATTORNEYS AT LAW
A LIMITED LIABILITY PARTNERSHIP

BANK OF AMERICA PLAZA
600 PEACHTREE STREET, N.E. · SUITE 5200
ATLANTA, GEORGIA 30308-2216
www.troutmansanders.com
TELEPHONE: 404-885-3000
FACSIMILE: 404-885-3900

Douglas E. Ernst
douglas.ernst@troutmansanders.com

Direct Dial: 404-885-3334
Direct Fax: 404-962-6562

February 13, 2008

## VIA EMAIL & U.S. MAIL

Joseph A. Gershman
KASOWITZ, BENSON, TORRES & FRIEDMAN LLP
1633 Broadway
New York, NY 10019-6799

RE: *Adelphia Recovery Trust v. Prestige Commc'ns of NC, Inc. et al. (07-Civ-11152)*

Dear Joe:

After a cursory review of the documents Plaintiff has produced in response to Defendants' Sixth and Seventh Requests for the Production of Documents it appears that Plaintiff has yet to produce any documents in response to Request Nos. 1, 2, 5 and 7 (Sixth Request) and Request Nos. 3, 6, 7, 8 and 12 (Seventh Request). We are still in the process of reviewing Plaintiff's most recent document production, I will let you know if there are additional requests to which Plaintiff has failed to fully respond.

Defendants' requests (above) are reasonably calculated to lead to the discovery of admissible evidence and seek document that are both relevant and material to this litigation. Plaintiff indicated in its responses – at least in response to Request Nos. 1, 2, 5 and 7 (Sixth Request) – that it would produce documents responsive to these requests, yet it has failed to do so. Please let me know when we can expect to receive documents responsive to these requests.

Plaintiff's objections to Request Nos. 2 and 7 (Sixth Request) are inadequate for the following reasons:

Request No. 2: The requested documents are clearly relevant to the issue of insolvency (of Adelphia). Specifically, the requested documents address issues that directly bear on the financial condition of Adelphia, such as the accounting treatment of the co-borrowing debt, the fixed asset scrub done by Adelphia in the restatement and whether Adelphia was adequately capitalized. Furthermore, as you are well aware, Defendants are parties to the "confidentiality agreement" referred to in Plaintiff's objections (have been since September 2006, so I am unclear on how that agreement could possibly serve as a legitimate basis for objection. Please produce all responsive documents immediately.

ATLANTA · HONG KONG · LONDON · NEW YORK · NEWARK · NORFOLK · RALEIGH
RICHMOND · SHANGHAI · TYSONS CORNER · VIRGINIA BEACH · WASHINGTON, D.C.

**TROUTMAN SANDERS LLP**
ATTORNEYS AT LAW
A LIMITED LIABILITY PARTNERSHIP

Joseph A. Gershman
February 13, 2008
Page 2

**Request No. 7:** The requested documents are relevant to this litigation because, among other reasons, they go directly to the issue of Adelphia's alleged damages. Furthermore, the "Sealing Order" Plaintiff's refer to in their objections does not prohibit Defendants from discovering the requested documents, it merely limits the general public's access to the documents. Therefore, Plaintiff is obligated to produce the requested documents without any further delay.

Plaintiff's objections to Request Nos. 3, 6, 7, 8 and 12 (Seventh Request) fail for the following reasons:

**Request No. 3:** The requested documents are relevant to Plaintiff's claims. *See, e.g., Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978) (noting that within the context of discovery, relevance "has been construed broadly to encompass any matter that bears [up]on, or that reasonably could lead to other matters that could bear on, any issue that is or may be in the case"). Among other reasons, the requested documents are directly relevant to Plaintiff's claim that Prestige GA was undervalued. Plaintiff also claims that the sale of Prestige GA to Highland Prestige was a self-interested transaction which disadvantaged Adelphia; the requested documents are necessary to refute those claims.

Furthermore, it is inappropriate for Plaintiff to withhold the requested documents simply because it would take time to complete the production thereof. A party resisting discovery has the burden of showing:

> specifically how, despite the broad and liberal construction afforded the federal discovery rules, each ... question is overly broad, burdensome or oppressive, [] by submitting affidavits or offering evidence revealing the nature of the burden. In order to satisfy its burden, the resisting party must do more than simply inton[e the] familiar litany that the interrogatories are burdensome, oppressive or overly broad and must clarify and explain its objections and [] provide support therefor.")

*Arias-Zeballos v. Tan*, No. 06-Civ-268, 2007 U.S. Dist. LEXIS 40245, * at 3-5 (S.D.N.Y. June 1, 2007) (alteration in original) (internal quotation marks and citations omitted). To that end, Defendants are willing to meet and confer (via telephone) and discuss the possibility of a rolling production of these documents.

**Request No. 6:** Plaintiff's objections fail for the reasons stated above in response to Plaintiff's objections to Request No. 3.

TROUTMAN SANDERS LLP
ATTORNEYS AT LAW
A LIMITED LIABILITY PARTNERSHIP

Joseph A. Gershman
February 13, 2008
Page 3

**Request No. 7**: The requested documents are directly relevant to Plaintiff's claims that the Prestige Entities were improperly valued – there is simply no legitimate way Plaintiff can claim that this request is "overly broad and unduly burdensome." Request No. 7 seeks one year's worth of federal tax returns. Likewise, there is nothing "vague" or "ambiguous" about Request No. 7, it is perfectly clear.

In addition, Defendants are not obligated to demonstrate that they cannot obtain the requested documents from another source; on the contrary, "the party resisting disclosure should bear the burden of establishing alternative sources for the information." *United States v. Bonanno Org. Crime Family of La Cosa Nostra*, 119 F.R.D. 625, 627 (E.D.N.Y. 1988). Adelphia has failed to do so. What is more, while there is a qualified immunity with respect to the disclosure of tax returns, the standard for permitting discovery of such records has been met in this case. As noted above, Adelphia's 2006 federal tax returns (and any materials in support thereof) are plainly relevant to the issue of valuation in that they show how Adelphia accounted for any gain it realized on the sale of the Prestige Entities (or parts thereof) to Time Warner/Comcast and whether Adelphia has suffered any damages in this case.

Lastly, you indicated to me that you intended to circulate a protective order regarding Adelphia's tax materials, yet I have yet to receive a draft order. Please let me know when we can expect to receive a draft consensual protective order.

**Request No. 8**: Plaintiff's objections to Request No. 8 fail for the same reasons its objections to Request No. 7 fail. The requested documents are both relevant and material in that they show how Adelphia treated the Prestige transaction for tax purposes. Thus, for the reasons already stated above, Plaintiff is obligated to produce any and all responsive documents. As an aside, you informed us in writing that you would let us know if Adelphia ever amended its 2000 tax return. Despite your written promise, you failed to inform us that Adelphia amended its 2000 tax return in the Fall of 2007. In fact, we did not discover the existence of the amended return until after we served you with this document request.

**Request No. 12**: Plaintiff's objections fail for the reasons stated above in response to Plaintiff's objections to Request No. 2 (Sixth Request).

To the extent that Plaintiff is withholding documents on privilege grounds, Plaintiff has yet to provide Defendants with a privilege log and it has been three months since Plaintiffs responded to Defendants' Sixth Request for the Production of Documents and over forty-five days since Plaintiff's responded to Defendants' Seventh Request. The Local Rules are clear: the

**TROUTMAN SANDERS LLP**
ATTORNEYS AT LAW
A LIMITED LIABILITY PARTNERSHIP

Joseph A. Gershman
February 13, 2008
Page 4

party asserting privilege in response to discovery requests must furnish the information set forth in Rule 26.2 (*i.e.* a privilege log) "in writing *at the time of the response* to such discovery …." S.D.N.Y. R. 26.2 (emphasis added). At this point (three months after the fact), Plaintiff has waived any claim of privilege with respect to any documents that are otherwise responsive to any of Defendants' outstanding requests. (*See* Order Granting Sanctions to Defs. For Pl.'s Failure to Produc. Docs., dated May 16, 2007, at 4 n.7 (ECF Docket Entry No. [114]).) More important, Adelphia has repeatedly represented to the Court and to us that it is not withholding any documents on the basis of privilege except for attorney work product related to this litigation. Therefore, Plaintiff may not withhold any responsive documents on privilege grounds and must produce said documents forthwith.

Lastly, please provide me with possible dates and times that you are available to meet and confer (via telephone) about these and other related discovery issues. Thank you.

Sincerely,

Douglas E. Ernst

cc:    Harris B. Winsberg
       Sean P. Dailey

# TROUTMAN SANDERS LLP

A T T O R N E Y S  A T  L A W
A LIMITED LIABILITY PARTNERSHIP

BANK OF AMERICA PLAZA
600 PEACHTREE STREET, N.E. · SUITE 5200
ATLANTA, GEORGIA 30308-2216
www.troutmansanders.com
TELEPHONE: 404-885-3000
FACSIMILE: 404-885-3900

Douglas E. Ernst
douglas.ernst@troutmansanders.com

Direct Dial: 404-885-3334
Direct Fax: 404-962-6552

March 27, 2008

<u>VIA E-MAIL AND U.S. MAIL</u>

Joseph A. Gershman, Esq.
Kasowitz, Benson, Torres & Friedman LLP
1633 Broadway
New York, New York 10019-6799

      Re:    <u>Adelphia Recovery Trust v. Prestige Communications of NC, Inc., et al.</u>
                Civil Action File No. 07-11152, United States District Court, Southern
                District of New York

Dear Joe:

      As you know, the Parties reached a compromise with respect to Request No. 1 of the Defendants' Fourth Request for Production of Documents. At the October 24, 2007 hearing, Judge Morris ordered Plaintiff to produce, among other things, all documents responsive to Document Request No. 1, subparts (a), (b), (c), (g), (h), (k), (m), (n), and (p), with the agreed limitation that the request shall only apply to the following Adelphia acquisitions: Verto, Century/Citizens, Harron, FrontierVision, Olympus, Benchmark, Cablevision, Prestige, Cablevision Midwest, and Century-TCI (the "Acquisitions"). Additionally, with respect to Document Request No. 1, subpart (p), the Parties agreed to limit the scope of this request to documents provided to banks, equity analysts, or shareholders concerning the Acquisitions. Judge Morris made the compromise agreement an order of the Court (the "Order"), and carried Defendants' Second Motion to Compel until all responsive documents were produced.

      After reviewing documents Plaintiff produced pursuant to the Order, we discovered that the Plaintiff has not fully complied with the Order. For example, Document Request No. 1, subpart (b) requested "[o]ffering memoranda, prospectuses, solicitation packages, or similar documents prepared by or for the acquired corporations, or their brokers and/or agents, relating to the acquired corporation's efforts to market and sell its cable systems." We could not locate documents responsive to the request with regard to the Harron, FrontierVision, Olympus, Cablevision, and Cablevision Midwest acquisitions. As a further example, Document Request

ATLANTA · HONG KONG · LONDON · NEW YORK · NEWARK · NORFOLK ·
RALEIGH RICHMOND · SHANGHAI · TYSONS CORNER · VIRGINIA BEACH ·
WASHINGTON, D.C.

TROUTMAN SANDERS LLP
ATTORNEYS AT LAW
A LIMITED LIABILITY PARTNERSHIP

Joseph A. Gershman, Esq.
March 27, 2008
Page 2

No. 1, subpart (g) requested "[a]ll fairness opinions received or prepared related to any of the Acquisitions." We could only locate one fairness opinion, which was for the Century acquisition. Additionally, among other missing documents, we could not locate any documents responsive to Document Request No. 1, subparts (h) and (n). Similarly, we could not locate documents responsive to subpart (o) with regard to the Verto and Benchmark acquisitions. Simply put, our review of Adelphia's production indicates that Plaintiff just dumped documents into banker boxes without any organization or review for responsiveness. Please immediately produce all response documents as required by the Order and the agreement of the parties.

Please also explain why Plaintiff produced redacted documents without providing a privilege log, as required by the Local Rules for the Southern District of New York. Plaintiff's failure to timely produce a privilege log waives its right to withhold any documents on the grounds of privilege. Moreover, the production included many unreadable spreadsheets. As an example, ADPR 000100953-000160989 is undecipherable, as is ADPR 000101048-00010187. Please provide all electronic spreadsheets in native form.

We also noticed that Plaintiff failed to produce the metadata concerning the history, tracking, and management of Issue Summary A-2 as requested in Request No. 3 in Defendants' Sixth Request for Documents. Please produce this information immediately.

Moreover, please explain the basis for Plaintiff's objection in its email dated February 14, 2008, to Deloitte producing the depositions the transcripts and associated exhibits thereto of Deloitte's own expert witnesses in the Deloitte Litigation.

Finally, please produce to us the following additional PWC external binders in connection with the restatement: PWC 967284, PWC 968342, PWC 967384, PWC 1438431, PWC 1111806, PWC 1111883, PWC 1111886, PWC 958276, PWC 1420638, PWC 1446372, PWC 1446366, PWC 1446374, PWC 1446377, PWC 1369773, PWC 1424890, PWC 1136357, PWC 1380050, and PWC 1336921.

Please feel free to give me a call if you have any questions.

Sincerely,

Douglas E. Ernst

DEE:bkf
cc:    Harris B. Winsberg, Esq.
       Sean P. Dailey, Esq.

1923322_1.DOC

EXHIBIT "10"

**Winsberg, Harris B.**

| | |
|---|---|
| **From:** | Ernst, Douglas E. |
| **Sent:** | Wednesday, May 21, 2008 12:45 PM |
| **To:** | 'Jennifer Schwarz'; 'Joseph Gershman' |
| **Cc:** | Winsberg, Harris B.; Dailey, Sean P.; Smith, Yvonne R. |
| **Subject:** | Rigas Subpoena/Document Request |



Document.pdf (213
KB)

Hi Jen,

Thank you for your recent proposal.  In looking at it, we have the following questions:

1. In paragraph 8(a) there is a blank in front of "associates."  What do you believe should be in that blank?

2. In paragraph 8(b) you have inserted the phrase "a party, or" three lines from the bottom.  Who do you intend to exclude by making that change?

3. This proposal addresses doc requests that lie outside of the subpoena, that is it also addresses prior requests that we have previously served upon the ART.

   a. When will you produce these documents?  As I recall we were required to produce our docs within a week.

   b.  Are you going to produce all responsive docs? As I recall, we did produce all responsive docs.  If you are not        going to produce all responsive docs, what docs do you intend to exclude and what is your justification for        excluding them?

   c. If you are not going to produce all responsive docs, then we will need an affirmative statement  preserving our        right to seek additional docs if we deem it necessary.


Attached is a new doc request which I wanted to send to you before we reached any agreement on a protective order.  As you can see, this request seeks some of the same docs addressed in the Rigas Subpoena.

Thanks Jen.

Douglas E. Ernst (douglas.ernst@troutmansanders.com)
Harris B. Winsberg (harris.winsberg@troutmansanders.com)
Sean P. Dailey (sean.dailey@troutmansanders.com)
TROUTMAN SANDERS LLP
Bank of America Plaza – Suite 5200
600 Peachtree Street, N.E.
Atlanta, Georgia  30308-2216
(404) 885-3000 (tel.)
(404) 885-3900 (fax)

*Counsel to Defendants*


UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| ADELPHIA RECOVERY TRUST,<br><br>                          Plaintiff,<br><br>v.<br><br>PRESTIGE COMMUNICATIONS OF NC, INC.<br>*et al.*,<br><br>                          Defendants. | Case No. 1:07-cv-11152-LMM<br><br>**DEFENDANTS' EIGHTH<br>REQUEST FOR PRODUCTION<br>OF DOCUMENTS** |

Defendants Prestige Communications of NC, Inc., Jonathan J. Oscher, Lorraine Oscher

McClain, Robert F. Buckfelder, The Buckfelder Investment Trust, and Anverse, Inc.

(collectively, "Defendants"), by and through counsel, pursuant to Rule 34 of the Federal Rules of

Civil Procedure and Local Civil Rule 26.3, hereby request that Plaintiff Adelphia Recovery Trust

("Plaintiff") produce the following documents.  Plaintiff should produce the following requested

documents at the offices of the undersigned counsel for the Defendants at Troutman Sanders

LLP, 600 Peachtree Street, N.E., Suite 5200, Atlanta, Georgia, 30308-2216, within the time

permitted by law:

## DEFINITIONS

As used herein, the following terms are intended to have the meanings indicated. Capitalized terms not otherwise defined herein shall have the meanings attributed to them in Plaintiff's Amended Complaint, dated March 26, 2007 (the "Amended Complaint"):

A.    "Adelphia" means, for purposes of this Request only, Adelphia Communications Corporation and those of its direct and indirect subsidiaries that each filed voluntary petitions for relief under chapter 11 of title 11 of the United States Code in the United States Bankruptcy Court for the Southern District of New York and are jointly administered under Case No. 02-41729, and any of their parents, subsidiaries, affiliates, partners, directors, officers, employees, representatives, advisors, agents, attorneys, consultants, associates, members or any other person acting on their behalf.

B.    "Answer" means Defendants' Answer to the Amended Complaint, dated April 20, 2007.

C.    "Any" or "each" should be understood to include and encompass "all"; "or" should be understood to include and encompass "and"; and "and" should be understood to include and encompass "or".

D.    "Communications" means the transmittal of information in the form of facts, ideas, inquiries or otherwise.

E.    "Complaint" means Plaintiff's Complaint against the Defendant, dated June 24, 2004.

F.    "Deloitte Litigation" means the following litigation: *Adelphia Commc'ns Corp. v. Deloitte & Touche, LLP et al.*, Case No. 000598 (Phila. Ct. of Common Pleas).

G.    "Document" or "documents" means any tangible thing upon which any expression, communication, representation or data has been recorded by any means including,

but not limited to, handwriting, typewriting, printing, photostatting, photographing, on a computer, magnetic impulse, or mechanical or electronic recording and any non-identical copies thereof (whether different from the original because of notes made on such copies, because of indications that said copies were sent to different individuals than were the originals, or because of any other reason), including, but not limited to working papers, preliminary, intermediate or final drafts, correspondence, email, memoranda, charts, notes, records of any sort of meetings, invoices, financial statements, financial calculations, diaries, reports of telephone or other oral conversations, desk calendars, appointment books, audio or video tape recordings, microfilm, microfiche, computer tape, computer disk, computer printout, computer card, and all other writings and recordings of every kind that are in your actual or constructive possession, custody, or control.

     H.    "Person" shall mean any natural person or any business, legal or governmental entity or association.

     I.    "Rigas Family Entities" mean the legal entities listed in deposition Exhibit D108 at page ADPR 77170.

     J.    "Transaction" means any and all aspects of the July 5, 2000 acquisition by ACC of certain cable systems from certain of the Defendants as more particularly specified in that certain Asset Purchase Agreement by and between ACC and certain of the Defendants and that certain Stock Purchase Agreement by and between ACC and certain of the Defendants, both dated December 6, 1999.

     K.    "You", "your", or "yourself" means Adelphia, Adelphia Cablevision, L.L.C., the Official Committee of Unsecured Creditors of Adelphia Communications Corporation, and/or Plaintiff (i) your present and former agents, representatives, accountants, investigators,

consultants, and attorneys, (ii) any other person or entity acting on your behalf, and/or (iii) any other person or entity otherwise subject to their control or which controls you.

L.    All references herein to exhibits (*e.g.*, Exhibit D108) are to deposition exhibits unless otherwise indicted.

M.    For each of the Definitions set out above, the singular form of the defined term includes the plural and vice versa.

## INSTRUCTIONS

1.    You are under a duty to seasonably amend a prior response if you obtain information upon the basis of which (a) you know that the response was incorrect when made, or (b) you know that the response, though correct when made, is no longer true.

2.    Documents should be produced in the manner in which they are maintained in the usual course of your business or you should organize and label the documents to correspond with the categories in this request. A request for a document shall be deemed to include a request for any and all file folders within which the document was contained, transmittal sheets, cover letters, exhibits, enclosures, and/or attachments to the document in addition to the document itself.

3.    If a requested document is not currently in your possession, but you are aware of the present location and/or the person who retains a copy of such document, state the location of each document, including the name, the address and title of the person who retains the document.

4.    Should you claim privilege for any document(s) about which information is requested, describe each document in the manner indicated below and, in addition, indicate that you claim privilege and state the ground(s) on which the claim of privilege rests:

    a.    the title, heading or caption of each document, if any;

    b.    the identifying number(s), letter(s), or combination thereof, if any, and the

significance or meaning of such number(s), letter(s), or combination thereof;

        c.     the date appearing on each document and if no date appears thereon, the answer shall so state and shall give the date or approximate date on which each document was prepared;

        d.     the general nature or description of each document (*i.e.* whether it is a letter, memorandum, minutes of a meeting, etc.) and the number of pages of which it consists;

        e.     the identity of the person who signed each document, and if it was not signed, the answer shall so state and shall give the identity of each person(s) who prepared it; and

        f.     the identity of each person to whom each document was addressed and the identity of each person to whom a copy thereof was sent; and the identity of each person who has custody of a copy of each such document.

5.     If any document within the scope of this Request has been destroyed, that document should be identified including identification of its author(s), intended or unintended recipient(s), addressee(s), intended or unintended recipients of blind copies, date and subject matter. The circumstances of such destruction shall be set forth, and any documents relating to such destruction should be produced.

6.     In producing documents and other materials, you should furnish all documents or things in your possession, custody or control, regardless of whether such documents or materials are possessed directly by you or your directors, officers, agents, employees, representatives, subsidiaries, managing agents, affiliates, accountants, investigators, or by your attorneys or their agents, employees, representatives or investigators.

7.     If you object to any part of any request, you should state fully the nature of the objection. Notwithstanding any objections, you shall nonetheless comply fully with the other parts of the request not objected to.

## DOCUMENT REQUESTS

1.      To the extent not already requested, all unredacted deposition transcripts, together with exhibits, of the following witnesses in the Deloitte Litigation: James Brown; Michael Mulcahey; Ivan Hoffman; William Caswell; George Cass; Daniel Richards; Michael Lindsey; Timothy Werth; Colin Higgin; Gregory Dearlove; Donald Cotrill; Stephen Biegel; Thomas Carter.

2.      To the extent not already requested, all valuations, projections, and/or appraisals, whenever created, relating to Adelphia or any of Adelphia's assets for the years 1999 and 2000.

3.      To the extent not already requested, all valuations, projections and/or appraisals, whenever created, relating to any of the Rigas Family Entities or their assets for the years 1999 and 2000.

4.      To the extent not already requested, all documents relating to the decision to use an "entity-by-entity" approach with respect to the Rigas Family Entities in Robert Dibella's impairment model, as reflected in Exhibit D108.

5.      To the extent not already requested, all minutes of any meetings and/or resolutions of the Audit Committee of Adelphia relating to the following: the "10A Report" (see Exhibit D117); the "Super-10K" (see Exhibit D86).

6.      To the extent not already requested, all minutes of any meetings and/or resolutions of the Board of Directors of Adelphia relating to the following: the "10A Report" (see Exhibit D117); the "Super 10K" (see Exhibit D86).

7.      To the extent not already requested, all versions of the "10A Report" (see Exhibit D117) in their entirety, together with exhibits, including the final version thereof.

8.      To the extent not already requested, all minutes of any meetings and/or resolutions of the Board of Directors of Adelphia relating to the Complaint filed against the

Defendants on June 24, 2004, the Amended Complaint filed on March 26, 2007 and/or the

Motion of The Official Committee of Unsecured Creditors For Order Approving Stipulation

Among The Debtors And The Creditors Committee, Authorizing The Creditors Committee to

Prosecute Claims Against The FPL Group And Prestige Group, filed on June 24, 2004.

9.    The final versions of all loan documents evidencing the following indebtedness:

Southwest Virginia Cable, Inc. (Cigna Note); Century Venture Corporation; Adelphia

Communications Corporation 10.25% $110 million senior notes; Adelphia Communications

Corporation 9.88% $130 million senior notes; Century Communications (Arahova) 9.50% $150

million notes; Century Communications (Arahova) 9.75% $200 million notes; Century

Communications (Arahova) 8.88% $333 million zero-coupon notes; Century Communications

(Arahova) 9.50% $250 million notes; Fort Meyers Acquisition, LP 6.0% $108 million notes.

10.    To the extent not already requested, all spreadsheets containing the rollup of cost

centers and silos to Adelphia's consolidated balance sheet and income statement on an un-

restated basis for every quarter for the years 1999 and 2000.  The file previously produced does

not tie to (agree with) the 10-K's and 10-Q's as originally filed.

11.    Documents sufficient to show the assignment, allocation or coding of each loan or

bond agreement to the cost centers and individual silos that comprise Adelphia's consolidated

balance sheet on a restated basis for every quarter for the years 1999 and 2000.  Include

documents sufficient to show the detail of the debt that is eliminated by Adelphia in the

consolidation process (*i.e.* in the 4th quarter of 1999 approximately $431 million of debt was

eliminated in the consolidation).

12.    Documents sufficient to show the formula used by ESSBASE to compute

EBITDA on a restated basis for the years 1999 and 2000, as referenced in ADPR 62518 and

ADPR 62518(a).

- 7 -

13.     To the extent not already requested, all federal tax returns filed by Adelphia and/or the Rigas Family Entities for fiscal 2000, as originally prepared and any amendments thereto relating to the Transaction and/or Highland Prestige's alleged acquisition of Prestige Georgia, including, but not limited to all supporting work papers, electronic spreadsheets, and subsidiary schedules which refer or relate to said return(s).  Include all correspondence and work papers relating to the tax treatment of the Transaction and/or Highland Prestige's alleged acquisition of Prestige Georgia.

14.     To the extent not already requested, all state tax returns filed by Adelphia and/or the Rigas Family Entities for fiscal 2000, as originally prepared and any amendments thereto relating to the Transaction and/or Highland Prestige's alleged acquisition of Prestige Georgia, including, but not limited to all supporting work papers, electronic spreadsheets, and subsidiary schedules which refer or relate to said return(s).  Include all correspondence and work papers relating to the tax treatment of the Transaction and/or Highland Prestige's alleged acquisition of Prestige Georgia.

15.     To the extent not already requested, all documents relating to the tax treatment of the Transaction and/or Highland Prestige's alleged acquisition of Prestige Georgia as a result of the restatement.

16.     To the extent not already requested, the balance sheets and income statements for the following Adelphia cost centers on a restated basis for every quarter from the fourth quarter of 1999 through the end of 2000: 326; 329; 330; 336.  The file previously produced does not provide any detail with respect to these cost centers; the appropriate cells in the spreadsheet provided are blank or full of zeros.

17.     To the extent not already requested, the balance sheets and income statements for all "Non-Filers" (*i.e.* Adelphia-affiliated entities that did not file a discrete 10-K) on both an un-

restated and a restated basis for every quarter from the fourth quarter of 1999 through the end of 2000, including, but not limited to the following cost centers: MLA; STE; MLE; 961; 962; 963; 964; 965; A96; 381; PRX; R01; R03; R04; R05; R06; R09; R16; R21; R22; R23; R24; R30; R46; R54; R56; 162; STV.  The file previously produced does not provide any detail with respect to the various cost centers that make up the "Non-Filers" silo.

18.    To the extent not already requested, documents sufficient to show the following statistical calculations (as referenced in ADPR 000088330-34) by cost center on both an un-restated and a restated basis for every quarter from the fourth quarter of 1999 through the end of 2000: Homes Past; Basic Subs[cribers]; Digital Subs[cribers]; Hi Speed Data Subs[cribers]; Premium Units.

19.    The corporate minute books of the following entities from 1998 through 2006: Highland Video Associates, LP; Bucktail Broadcasting Corporation; Coudersport Television Cable Company; Highland Holdings, GP; Highland Communications, LLC; Highland Pref. Communications, LLC; Highland Pref. Communications 2001, LLC; Hilton Head Communications, LP; Ionian Communications, LP; Dorellenic Cable Partners; Highland 2000, LLC; Highland 2000, LP; Doris Holdings, LP; NCAA Holdings, Inc.; Iliad Holdings, Inc.; and Highland Holdings II, GP.

20.    To the extent not already requested, the balance sheets and income statements on an unrestated basis and a restated basis by cost center for every quarter for the years 1999 thru 2002 related to ADPR 000117800 thru ADPR 000117807.

21.    To the extent not already requested, all documents relating to any governmental investigation concerning any alleged violations of federal and/or state tax laws allegedly

- 9 -

committed by Adelphia, the Rigas Family, the Rigas Family Entities and/or the Defendants in the years 1999 or 2000.

22.    To the extent not already requested, Deloitte & Touche, LLP's work papers and correspondence related to the Transaction and/or Highland Prestige's alleged acquisition of Prestige Georgia.

- 10 -

This 21st day of May 2008.

Respectfully submitted,

TROUTMAN SANDERS LLP

By: _____
Douglas E. Ernst (*Pro Hac Vice*)
    (Ga. Bar No. 249956)
Harris B. Winsberg (*Pro Hac Vice*)
    (Ga. Bar No. 770892)
Sean P. Dailey (*Pro Hac Vice*)
    (Ga. Bar No. 441395)

Bank of America Plaza – Suite 5200
600 Peachtree Street, N.E.
Atlanta, GA  30308-2216

(404) 885-3000 (tel.)
(404) 885-3900 (fax)

*Counsel to Defendants*

John H. Culver III
KENNEDY COVINGTON LOBDELL
 & HICKMAN, L.L.P.
Hearst Tower, 47th Floor
214 North Tryon Street
Charlotte, NC  28202-2367

*Counsel to Robert F. Buckfelder and The
Buckfelder Investment Trust*

- 11 -

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

ADELPHIA RECOVERY TRUST,

                    Plaintiff,                              Case No. 1:07-cv-11152-LMM

v.

PRESTIGE COMMUNICATIONS OF NC, INC.              **CERTIFICATE OF SERVICE**
*et al.*,

                    Defendants.

        I hereby certify that I have this date served the foregoing Defendants' Eighth Request For

Production of Documents upon the parties named herein via email and by placing a copy of same

in the United States Mail, postage prepaid, addressed to counsel of record as follows:

        Joseph A. Gershman, Esq. (jgershman@kasowitz.com)
        Jennifer B. Schwarz, Esq. (jschwarz@kasowitz.com)
        Kasowitz, Benson, Torres & Friedman LLP
        1633 Broadway
        New York, New York 10019
        (Counsel for Plaintiff)

This 21st day of May 2008.

                                Respectfully submitted,

                                By: _____
                                    Douglas E. Ernst (*Pro Hac Vice*)
                                    (Ga. Bar No. 249956)

# EXHIBIT "11"

**Winsberg, Harris B.**

| | |
|---|---|
| **From:** | Jennifer Schwarz [JSchwarz@kasowitz.com] |
| **Sent:** | Wednesday, May 21, 2008 2:16 PM |
| **To:** | Ernst, Douglas E.; Winsberg, Harris B.; Dailey, Sean P.; Smith, Yvonne R. |
| **Cc:** | Joseph Gershman |
| **Subject:** | RE: Rigas Subpoena/Document Request |

Doug:

To respond to your questions:

1) The blank was left so that you could insert the number of associates at your firm who are working on this matter.

2) The language was added to make a distinction between independent experts and parties or employees of parties, not to exclude any specific person.

3) a) We will produce the documents on a rolling basis beginning one month from the day the Court enters the Order.

3) b) We will produce responsive documents pursuant to our Objections and Responses to the Defendants Seventh Request for Documents.  It is not our recollection that you produced all responsive documents, in fact, we have corresponded with you several times regarding what we believe are deficiencies in your production, including, most recently, in our letter to you dated May 8, 2008.

Regarding your new document request, we will respond to the request according to the time allotted by the Federal Rules of Civil Procedure.

Thanks.

-Jen

Jennifer B. Schwarz
Kasowitz, Benson, Torres & Friedman LLP
1633 Broadway
New York, NY 10019
(212) 506-1762


-----Original Message-----
From: Ernst, Douglas E. [mailto:douglas.ernst@troutmansanders.com]
Sent: Wednesday, May 21, 2008 12:45 PM
To: Jennifer Schwarz; Joseph Gershman
Cc: Winsberg, Harris B.; Dailey, Sean P.; Smith, Yvonne R.
Subject: Rigas Subpoena/Document Request


Hi Jen,

Thank you for your recent proposal.  In looking at it, we have the following questions:

1. In paragraph 8(a) there is a blank in front of "associates."  What do you believe should be in that blank?

2. In paragraph 8(b) you have inserted the phrase "a party, or" three lines from the bottom.  Who do you intend to exclude by making that change?

3. This proposal addresses doc requests that lie outside of the subpoena, that is it also addresses prior requests that we have previously served upon the ART.

    a. When will you produce these documents?  As I recall we were required to produce our docs within a week.

1

b.   Are you going to produce all responsive docs? As I recall, we did produce all responsive docs.  If you are not        going to produce all responsive docs, what docs do you intend to exclude and what is your justification for        excluding them?

c. If you are not going to produce all responsive docs, then we will need an affirmative statement  preserving our        right to seek additional docs if we deem it necessary.


Attached is a new doc request which I wanted to send to you before we reached any agreement on a protective order.  As you can see, this request seeks some of the same docs addressed in the Rigas Subpoena.

Thanks Jen.

IRS Circular 230 disclosure: To ensure compliance with requirements imposed by the IRS, we inform you that any tax advice that may be contained in this communication (including any attachments) is not intended or written to be used, and cannot be used, for the purpose of (i) avoiding any penalties under the Internal Revenue Code or (ii) promoting, marketing or recommending to another party any transaction(s) or tax-related matter(s) that may be addressed herein.


This e-mail communication (including any attachments) may contain legally privileged and confidential information intended solely for the use of the intended recipient. If you are not the intended recipient, you should immediately stop reading this message and delete it from your system. Any unauthorized reading, distribution, copying or other use of this communication (or its attachments) is strictly prohibited.

# EXHIBIT "12"

KASOWITZ, BENSON, TORRES
  & FRIEDMAN LLP
David M. Friedman (dfriedman@kasowitz.com)
Joseph A. Gershman (jgershman@kasowitz.com)
1633 Broadway
New York, New York 10019
(212) 506-1700

*Counsel to Plaintiff Adelphia Recovery Trust*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| ADELPHIA RECOVERY TRUST,<br><br>     Plaintiff,<br>  vs.<br><br>PRESTIGE COMMUNICATIONS OF NC, INC., *et al.*,<br><br><br>     Defendants. | Case No. 1:07-cv-11152 (LMM) |

### PLAINTIFF'S OBJECTIONS AND RESPONSES TO
### DEFENDANTS' EIGHTH REQUEST FOR PRODUCTION OF DOCUMENTS

  Adelphia Recovery Trust, by its counsel, hereby submits the following objections and responses to Defendants' Eighth Request for the Production of Documents ("the Requests").

### GENERAL OBJECTIONS

  1.  Plaintiff objects to and declines to disclose information insofar as the Requests seek to impose upon the Plaintiff any obligations beyond those imposed upon them by the Federal Rules of Bankruptcy Procedure, the Federal Rules of Civil Procedure, and the Local Rules of Court for the Southern District of New York (the "Local Rules").

  2.  Plaintiff objects to the Requests because they were propounded by Defendants over two months after fact discovery closed in this case on March 15, 2008 pursuant to the

Fifth Amended Scheduling Order. Moreover, Defendants are estopped from propounding a new, Eighth Request for the Production of Documents in light of their representation to the Court in their Brief in Opposition to Consolidation of the Prestige and Bank Cases, dated January 25, 2008, that "document production is nearly complete." *Def Br. Opp. to Consolidation,* p. 13. In addition, Plaintiff objects to producing documents in response to new document requests when Defendants have unilaterally refused to appear for their depositions in this case. Accordingly, Plaintiff will not produce documents responsive to these requests unless and until such time as (i) document discovery is reopened pursuant to a new scheduling order in this case, and (ii) Defendants correct misrepresentations they made to the Court that "document production is nearly complete."

    3.    Plaintiff objects to the Requests to the extent that they seek production of documents protected from disclosure by the attorney-client privilege, the attorney work-product doctrine, the common interest privilege, or any other applicable privilege. Plaintiff will not produce documents that are protected by the attorney-client privilege, the work-product doctrine, the common interest privilege or any other applicable privilege. Plaintiff's production of any privileged or protected materials or information is inadvertent and shall not constitute a waiver of any privilege or protection that applies to the materials or information. Plaintiff requests that the Defendants notify Plaintiff of the production of any such documents promptly upon discovery of any such documents.

    4.    Plaintiff objects to the Requests to the extent they seek information that is not relevant to the claim or defense of any party.

    5.    Plaintiff objects to this Request to the extent it calls for the production of materials that are properly the subject of expert discovery.

6. Plaintiff objects to the Requests to the extent they seek information not in Plaintiff's possession, custody or control.

7. By answering any Request or producing any information in response thereto, Plaintiff does not thereby concede the relevance, materiality or admissibility of such answer or information. Plaintiff reserves all objections as to the relevance, authenticity, materiality or admissibility of any information.

8. By responding to a Request by stating that documents or information will be produced, Plaintiff does not represent, state or suggest that any such information or answers exist.

9. All General Objections, Objections to Definitions, and Objections to Instructions (referred to collectively herein as the "General Objections") apply to each specific Request.

10. Plaintiff objects to the Requests to the extent they are vague and ambiguous.

11. Plaintiff objects to the Requests to the extent they are overly broad and unduly burdensome.

12. Plaintiff objects to the Requests to the extent that the documents requested are protected by a Confidentiality Agreement or by a Confidentiality Order entered in another matter.

13. Plaintiff objects to the Requests to the extent they are unintelligible, incomprehensible and not susceptible to a reasoned interpretation.

14. Plaintiff objects to the Definitions to the extent they conflict with Local Rule 7026-1.

15.     Plaintiff objects to Instruction No. 1 on the grounds that it conflicts with Federal Rule of Civil Procedure 26(e).

16.     Plaintiff objects to Instruction No. 2 to the extent that there is no obligation to provide this information under the Federal Rules of Civil Procedure.

17.     Plaintiff objects to Instruction No. 3 on the grounds that it is unintelligible, and on the grounds that there is no obligation to provide this information under the Federal Rules of Civil Procedure.

## SPECIFIC OBJECTIONS AND RESPONSES

### Request No. 1

To the extent not already requested, all unredacted deposition transcripts, together with exhibits, of the following witnesses in the Deloitte Litigation: James Brown; Michael Mulcahey; Ivan Hoffman; William Caswell; George Cass; Daniel Richards; Michael Lindsey; Timothy Werth; Colin Higgin; Gregory Dearlove; Donald Cotrill; Stephen Biegel; Thomas Carter.

### Response to Request No. 1:

Plaintiff objects to this Request on the grounds that the Request was made after the close of fact discovery pursuant to the Fifth Amended Scheduling Order and is thus untimely. Plaintiff also objects to this Request on the grounds that propounding twenty-two new requests after representing to the Court that "document production is nearly complete" is improper and inappropriate, and Defendants are therefore estopped from propounding these requests. Plaintiff further objects to this Request on the grounds that it seeks documents not relevant to the claims or defenses of any party.  Plaintiff further objects to the production of unredacted deposition transcripts and exhibits of Ivan Hoffman, William Caswell, Michael Lindsay, Gregory Dearlove, Donald Cotrill, Stephen Biegel, Thomas Carter and Daniel Richards, as

4

these documents are subject to a confidentiality agreement in the matter entitled, *Adelphia Commc'ns Corp. v. Deloitte & Touche, LLP et al.*, Case No. 000598 (Phila. Ct. of Common Pleas). Subject to and without waiving the foregoing General and Specific Objections, Plaintiff will produce documents responsive to this Request, other than those documents protected by a confidentiality agreement, if and when a new scheduling order is entered in this case extending fact document discovery.

**Request No. 2:**

To the extent not already requested, all valuations, projections, and/or appraisals, whenever created, relating to Adelphia or any of Adelphia's assets for the years 1999 and 2000.

**Response to Request No. 2:**

Plaintiff objects to this Request on the grounds that the Request was made after the close of fact discovery pursuant to the Fifth Amended Scheduling Order and is thus untimely. Plaintiff also objects to this Request on the grounds that propounding twenty-two new requests after representing to the Court that "document production is nearly complete" is improper and inappropriate, and Defendants are therefore estopped from propounding these requests. Plaintiff also objects to this Request to the extent it calls for the production of materials that are properly the subject of expert discovery. Plaintiff further objects to this Request on the grounds that it is vague, ambiguous, overly broad and unduly burdensome. Plaintiff further objects to this Request on the grounds that it seeks documents not relevant to the claims or defenses of any party. Plaintiff further objects to this Request to the extent it seeks the production of documents protected by the attorney work-product doctrine. Plaintiff further objects to this Request on the grounds that the Request is duplicative of Request Nos. 1 and 4 in Defendants' Second Request for Production of Documents, and Request No. 15 in

Defendants' Fourth Request for Production of Documents, and documents responsive to this Request have therefore already been produced. Subject to and without waiving the foregoing General and Specific Objections, Plaintiff states that all documents responsive to this Request have already been produced.

**Request No. 3:**

To the extent not already requested, all valuations, projections and/or appraisals, whenever created, relating to any of the Rigas Family Entities or their assets for the years 1999 and 2000.

**Response to Request No. 3:**

Plaintiff objects to this Request on the grounds that the Request was made after the close of fact discovery pursuant to the Fifth Amended Scheduling Order and is thus untimely. Plaintiff also objects to this Request on the grounds that propounding twenty-two new requests after representing to the Court that "document production is nearly complete" is improper and inappropriate, and Defendants are therefore estopped from propounding these requests. Plaintiff further objects to this Request on the grounds that it is vague, ambiguous, confusing, overly broad and unduly burdensome. Plaintiff further objects to this Request on the grounds that the Request is duplicative of Request No. 12 in Defendants' Fourth Request for Production of Documents, and therefore documents responsive to this Request have already been produced. Plaintiff further objects to this Request to the extent it seeks the production of documents protected by the attorney work-product doctrine. Plaintiff further objects to this Request on the grounds that it seeks documents not relevant to the claims or defenses of any party. Plaintiff also objects to this Request to the extent it calls for the production of materials that are properly the subject of expert discovery.

**Request No. 4:**

  To the extent not already requested, all documents relating to the decision to use an "entity-by-entity" approach with respect to the Rigas Family Entities in Robert Dibella's impairment model, as reflected in Exhibit D108.

**Response to Request No. 4:**

  Plaintiff objects to this Request on the grounds that the Request was made after the close of fact discovery pursuant to the Fifth Amended Scheduling Order and is thus untimely. Plaintiff also objects to this Request on the grounds that propounding twenty-two new requests after representing to the Court that "document production is nearly complete" is improper and inappropriate, and Defendants are therefore estopped from propounding these requests. Plaintiff further objects to this Request to the extent it seeks the production of documents protected by the attorney-client privilege, the attorney work-product doctrine or any other privilege.  Subject to and without waiving the foregoing General and Specific Objections, Plaintiff will produce documents responsive to this Request if and when a new scheduling order is entered in this case extending fact document discovery.

**Request No. 5:**

  To the extent not already requested, all minutes of any meetings and/or resolutions of the Audit Committee of Adelphia relating to the following: the "10A Report" (see Exhibit Dl 17); the "Super-10K" (see Exhibit D86).

**Response to Request No. 5:**

  Plaintiff objects to this Request on the grounds that the Request was made after the close of fact discovery pursuant to the Fifth Amended Scheduling Order and is thus untimely. Plaintiff also objects to this Request on the grounds that propounding twenty-two new requests

after representing to the Court that "document production is nearly complete" is improper and

inappropriate, and Defendants are therefore estopped from propounding these requests.

Plaintiff further objects to this Request on the grounds that it seeks documents not relevant to

the claims or defenses of any party. Plaintiff further objects to this Request to the extent it

seeks the production of documents protected by the attorney-client privilege, the attorney

work-product doctrine or any other privilege. Subject to and without waiving the foregoing

General and Specific Objections, Plaintiff will produce documents responsive to this Request if

and when a new scheduling order is entered in this case extending fact document discovery.


**Request No. 6:**

     To the extent not already requested, all minutes of any meetings and/or resolutions of
the Board of Directors of Adelphia relating to the following: the "10A Report" (see Exhibit
D117); the "Super 10K" (see Exhibit D86).

**Response to Request No. 6:**

     Plaintiff objects to this Request on the grounds that the Request was made after the

close of fact discovery pursuant to the Fifth Amended Scheduling Order and is thus untimely.

Plaintiff also objects to this Request on the grounds that propounding twenty-two new requests

after representing to the Court that "document production is nearly complete" is improper and

inappropriate, and Defendants are therefore estopped from propounding these requests.

Plaintiff further objects to this Request on the grounds that it seeks documents not relevant to

the claims or defenses of any party. Plaintiff further objects to this Request to the extent it

seeks the production of documents protected by the attorney-client privilege, the attorney

work-product doctrine or any other privilege. Subject to and without waiving the foregoing

General and Specific Objections, Plaintiff will produce non-privileged documents responsive

to this Request if and when a new scheduling order is entered in this case extending fact

document discovery.


**Request No. 7:**

       To the extent not already requested, all versions of the "10A Report" (see Exhibit Dl 17) in their entirety, together with exhibits, including the final version thereof.

**Response to Request No. 7:**

       Plaintiff objects to this Request on the grounds that the Request was made after the

close of fact discovery pursuant to the Fifth Amended Scheduling Order and is thus untimely.

Plaintiff also objects to this Request on the grounds that propounding twenty-two new requests

after representing to the Court that "document production is nearly complete" is improper and

inappropriate, and Defendants are therefore estopped from propounding these requests.

Plaintiff further objects to this Request on the grounds that it seeks documents not relevant to

the claims or defenses of any party.  Plaintiff further objects to this Request to the extent it

seeks the production of documents protected by the attorney-client privilege, the attorney

work-product doctrine or any other privilege.  Subject to and without waiving the foregoing

General and Specific Objections, Plaintiff will produce non-privileged versions of the 10A

Report which have not already been produced, if and when a new scheduling order is entered

in this case extending fact document discovery.


**Request No. 8:**

       To the extent not already requested, all minutes of any meetings and/or resolutions of
the Board of Directors of Adelphia relating to the Complaint filed against the Defendants on
June 24, 2004, the Amended Complaint filed on March 26, 2007 and/or the Motion of The
Official Committee of Unsecured Creditors For Order Approving Stipulation Among The

Debtors And The Creditors Committee, Authorizing The Creditors Committee to Prosecute Claims Against The FPL Group And Prestige Group, filed on June 24, 2004.

**Response to Request No. 8:**

Plaintiff objects to this Request on the grounds that the Request was made after the close of fact discovery pursuant to the Fifth Amended Scheduling Order and is thus untimely. Plaintiff also objects to this Request on the grounds that propounding twenty-two new requests after representing to the Court that "document production is nearly complete" is improper and inappropriate, and Defendants are therefore estopped from propounding these requests. Plaintiff further objects to this Request on the grounds that it seeks documents not relevant to the claims or defenses of any party. Plaintiff further objects to this Request to the extent it seeks the production of documents protected by the attorney-client privilege, the attorney work-product doctrine or any other privilege.

**Request No. 9:**

The final versions of all loan documents evidencing the following indebtedness: Southwest Virginia Cable, Inc. (Cigna Note); Century Venture Corporation; Adelphia Communications Corporation 10.25% $110 million senior notes; Adelphia Communications Corporation 9.88% $130 million senior notes; Century Communications (Arahova) 9.50% $150 million notes; Century Communications (Arahova) 9.75% $200 million notes; Century Communications (Arahova) 8.88% $333 million zero-coupon notes; Century Communications (Arahova) 9.50% $250 million notes; Fort Meyers Acquisition, LP 6.0% $ 108 million notes.

**Response to Request No. 9:**

Plaintiff objects to this Request on the grounds that the Request was made after the close of fact discovery pursuant to the Fifth Amended Scheduling Order and is thus untimely. Plaintiff also objects to this Request on the grounds that propounding twenty-two new requests after representing to the Court that "document production is nearly complete" is improper and inappropriate, and Defendants are therefore estopped from propounding these requests.

Plaintiff further objects to this Request on the grounds that it is vague, ambiguous, overly

broad and unduly burdensome.  Plaintiff further objects to this Request on the grounds that it

seeks documents that are not relevant to the claims or defenses of any party.  Plaintiff further

objects to this Request on the grounds that information concerning many of these notes is

publicly available.

**Request No. 10:**

      To the extent not already requested, all spreadsheets containing the rollup of cost
centers and silos to Adelphia's consolidated balance sheet and income statement on an un-
restated basis for every quarter for the years 1999 and 2000. The file previously produced does
not tie to (agree with) the 10-K's and 10-Q's as originally filed.

**Response to Request No. 10:**

      Plaintiff objects to this Request on the grounds that the Request was made after the

close of fact discovery pursuant to the Fifth Amended Scheduling Order and is thus untimely.

Plaintiff also objects to this Request on the grounds that propounding twenty-two new requests

after representing to the Court that "document production is nearly complete" is improper and

inappropriate, and Defendants are therefore estopped from propounding these requests.

Plaintiff further objects to this Request on the grounds that the Request is duplicative of

Request No. 1 in Defendants' Third Request for Production of Documents, and documents

responsive to this request have already been produced.  Plaintiff further objects to this Request

on the grounds that it is vague, ambiguous, overly broad and unduly burdensome.

**Request No. 11:**

      Documents sufficient to show the assignment, allocation or coding of each loan or bond
agreement to the cost centers and individual silos that comprise Adelphia's consolidated
balance sheet on a restated basis for every quarter for the years 1999 and 2000. Include

documents sufficient to show the detail of the debt that is eliminated by Adelphia in the consolidation process (i.e. in the 4th quarter of 1999 approximately $431 million of debt was eliminated in the consolidation).

**Response to Request No. 11:**

Plaintiff objects to this Request on the grounds that the Request was made after the close of fact discovery pursuant to the Fifth Amended Scheduling Order and is thus untimely. Plaintiff also objects to this Request on the grounds that propounding twenty-two new requests after representing to the Court that "document production is nearly complete" is improper and inappropriate, and Defendants are therefore estopped from propounding these requests. Plaintiff further objects to this Request on the grounds that it seeks documents not relevant to the claims or defenses of any party.  Plaintiff further objects to this Request on the grounds that it is vague, confusing, ambiguous, overly broad and unduly burdensome.  Plaintiff further objects to this Request on the grounds that it is duplicative of earlier requests, and documents responsive to this Request have already been produced.

**Request No. 12:**

Documents sufficient to show the formula used by ESSBASE to compute EBITDA on a restated basis for the years 1999 and 2000, as referenced in ADPR 62518 and ADPR 62518(a).

**Response to Request No. 12:**

Plaintiff objects to this Request on the grounds that the Request was made after the close of fact discovery pursuant to the Fifth Amended Scheduling Order and is thus untimely. Plaintiff also objects to this Request on the grounds that propounding twenty-two new requests after representing to the Court that "document production is nearly complete" is improper and inappropriate, and Defendants are therefore estopped from propounding these requests.

12

Plaintiff further objects to this Request on the grounds that it is vague, confusing, overly broad and unduly burdensome. Plaintiff further objects to this Request on the grounds that it is duplicative of earlier requests, and documents responsive to this Request have already been produced.

**Request No. 13:**

To the extent not already requested, all federal tax returns filed by Adelphia and/or the Rigas Family Entities for fiscal 2000, as originally prepared and any amendments thereto relating to the Transaction and/or Highland Prestige's alleged acquisition of Prestige Georgia, including, but not limited to all supporting work papers, electronic spreadsheets, and subsidiary schedules which refer or relate to said return(S). Include all correspondence and work papers relating to the tax treatment of the Transaction and/or Highland Prestige's alleged acquisition of Prestige Georgia.

**Response to Request No. 13:**

Plaintiff objects to this Request on the grounds that the Request was made after the close of fact discovery pursuant to the Fifth Amended Scheduling Order and is thus untimely. Plaintiff also objects to this Request on the grounds that propounding twenty-two new requests after representing to the Court that "document production is nearly complete" is improper and inappropriate, and Defendants are therefore estopped from propounding these requests. Plaintiff further objects to this Request on the grounds that it seeks documents not relevant to the claims or defenses of any party. Plaintiff further objects to this Request on the grounds that the Request is duplicative of Request No. 8 in Defendants' Seventh Request for Production of Documents and Request No. 7 in Defendants' document subpoena to the Rigas Family. Plaintiff further objects to this Request on the grounds that it is vague, ambiguous, overly broad and unduly burdensome. Plaintiff further objects to this Request to the extent it seeks the production of documents protected by the attorney-client privilege, the attorney work-

13

product doctrine or any other privilege.  Plaintiff further objects to this Request because

Defendants have not demonstrated a compelling need for all of the documents being sought in

this Request.  Plaintiff additionally objects to this Request because Defendants have not

demonstrated that they cannot get the information they seek in this Request from another

source.  Subject to and without waiving the foregoing General and Specific Objections,

Plaintiff will produce those portions of the Adelphia and Rigas Family Entities fiscal 2000

federal tax returns within its possession, custody or control that relate to the Transaction and/or

Highland Prestige's Acquisition of Prestige Georgia, (i) if and when a new scheduling order is

entered in this case extending fact document discovery, and (ii) subject to Defendants

agreement that all such documents shall receive the same protection provided under the

Consent Tax Order signed by Judge McKenna on June 2, 2008.


**Request No. 14:**

       To the extent not already requested, all state tax returns filed by Adelphia and/or the Rigas Family Entities for fiscal 2000, as originally prepared and any amendments thereto relating to the Transaction and/or Highland Prestige's alleged acquisition of Prestige Georgia, including, but not limited to all supporting work papers, electronic spreadsheets, and subsidiary schedules which refer or relate to said return(s). Include all correspondence and work papers relating to the tax treatment of the Transaction and/or Highland Prestige's alleged acquisition of Prestige Georgia.

**Response to Request No. 14:**

       Plaintiff objects to this Request on the grounds that the Request was made after the

close of fact discovery pursuant to the Fifth Amended Scheduling Order and is thus untimely.

Plaintiff also objects to this Request on the grounds that propounding twenty-two new requests

after representing to the Court that "document production is nearly complete" is improper and

inappropriate, and Defendants are therefore estopped from propounding these requests.

14

Plaintiff further objects to this Request on the grounds that it seeks documents not relevant to

the claims or defenses of any party. Plaintiff further objects to this Request on the grounds that

it is duplicative of Request No. 8 in Defendants' Document subpoena to the Rigas Family.

Plaintiff further objects to this Request to the extent that the Request calls for the production of

information duplicative of the information contained in the federal tax returns. Plaintiff further

objects to this Request on the grounds that it is vague, ambiguous, overly broad and unduly

burdensome. Plaintiff further objects to this Request because Defendants have not

demonstrated a compelling need for all of the documents being sought in this Request.

Plaintiff additionally objects to this Request because Defendants have not demonstrated that

they cannot get the information they seek in this Request from another source. Plaintiff further

objects to this Request to the extent it seeks the production of documents protected by the

attorney-client privilege, the attorney work-product doctrine or any other privilege. Plaintiff

further objects to this Request on the grounds that any documents produced in response hereto

should receive the same protections as provided under the Consent Tax Order.


**Request No. 15:**

    To the extent not already requested, all documents relating to the tax treatment of the
Transaction and/or Highland Prestige's alleged acquisition of Prestige Georgia as a result of the
restatement.

**Response to Request No. 15:**

    Plaintiff objects to this Request on the grounds that the Request was made after the

close of fact discovery pursuant to the Fifth Amended Scheduling Order and is thus untimely.

Plaintiff also objects to this Request on the grounds that propounding twenty-two new requests

after representing to the Court that "document production is nearly complete" is improper and

inappropriate, and Defendants are therefore estopped from propounding these requests. Plaintiff further objects to this Request on the grounds that it is vague, confusing and ambiguous.  Plaintiff further objects to this Request on the grounds that it is duplicative of Request No. 13.  Plaintiff further objects to this Request to the extent it seeks the production of documents protected by the attorney-client privilege, the attorney work-product doctrine or any other privilege.  Plaintiff also objects to this Request to the extent it calls for the production of materials that are properly the subject of expert discovery.  Plaintiff further objects to this Request on the grounds that any documents produced in response hereto should receive the same protections as provided under the Consent Tax Order.

### Request No. 16:

To the extent not already requested, the balance sheets and income statements for the following Adelphia cost centers on a restated basis for every quarter from the fourth quarter of 1999 through the end of 2000: 326; 329; 330; 336. The file previously produced does not provide any detail with respect to these cost centers; the appropriate cells in the spreadsheet provided are blank or full of zeros.

### Response to Request No. 16:

Plaintiff objects to this Request on the grounds that the Request was made after the close of fact discovery pursuant to the Fifth Amended Scheduling Order and is thus untimely. Plaintiff also objects to this Request on the grounds that propounding twenty-two new requests after representing to the Court that "document production is nearly complete" is improper and inappropriate, and Defendants are therefore estopped from propounding these requests. Plaintiff further objects to this Request on the grounds that the Request is duplicative of Request No. 2 in Defendants' Third Request for Production of Documents.  Plaintiff further objects on the grounds that it has already produced documents responsive to this Request.

16

**Request No. 17:**

To the extent not already requested, the balance sheets and income statements for all "Non-Filers" (i.e. Adelphia-affiliated entities that did not file a discrete 10-K) on both an unrestated and a restated basis for every quarter from the fourth quarter of 1999 through the end of 2000, including, but not limited to the following cost centers: MLA; STE; MLE; 961; 962; 963; 964; 965; A96; 381; PRX; R01; R03; R04; R05; R06; R09; R16; R2I; R22; R23; R24; R30; R46; R54; R56; 162; STV. The file previously produced does not provide any detail with respect to the various cost centers that make up the "Non-Filers" silo.

**Response to Request No. 17:**

Plaintiff objects to this Request on the grounds that the Request was made after the

close of fact discovery pursuant to the Fifth Amended Scheduling Order and is thus untimely.

Plaintiff also objects to this Request on the grounds that propounding twenty-two new requests

after representing to the Court that "document production is nearly complete" is improper and

inappropriate, and Defendants are therefore estopped from propounding these requests.

Plaintiff further objects to this Request on the grounds that it seeks documents not relevant to

the claims or defenses of any party. Plaintiff further objects to this Request on the grounds that

it is vague, ambiguous, confusing, overly broad and unduly burdensome. Plaintiff further

objects to this Request on the grounds that it is duplicative of certain prior document requests,

and Plaintiff has already produced documents responsive to this Request.

**Request No. 18:**

To the extent not already requested, documents sufficient to show the following statistical calculations (as referenced in ADPR 000088330-34) by cost center on both an un-restated and a restated basis for every quarter from the fourth quarter of 1999 through the end of 2000: Homes Past; Basic Subscribers]; Digital Subscribers]; Hi Speed Data Subscribers]; Premium Units.

**Response to Request No. 18:**

Plaintiff objects to this Request on the grounds that the Request was made after the close of fact discovery pursuant to the Fifth Amended Scheduling Order and is thus untimely. Plaintiff also objects to this Request on the grounds that propounding twenty-two new requests after representing to the Court that "document production is nearly complete" is improper and inappropriate, and Defendants are therefore estopped from propounding these requests. Plaintiff further objects to this Request on the grounds that it seeks documents not relevant to the claims or defenses of any party. Plaintiff further objects to this Request on the grounds that it is vague, confusing, overly broad and unduly burdensome. Plaintiff further objects to this Request to the extent it calls for the production of documents that do not exist.

**Request No. 19:**

The corporate minute books of the following entities from 1998 through 2006; Highland Video Associates, LP; Bucktail Broadcasting Corporation; Coudersport Television Cable Company; Highland Holdings, GP; Highland Communications, LLC; Highland Pref. Communications, LLC; Highland Pref. Communications 2001, LLC; Hilton Head Communications, LP; Ionian Communications, LP; Dorellenic Cable Partners; Highland 2000, LLC; Highland 2000, LP; Doris Holdings, LP; NCAA Holdings, Inc.; Iliad Holdings, Inc.; and Highland Holdings II, GP.

**Response to Request No. 19:**

Plaintiff objects to this Request on the grounds that the Request was made after the close of fact discovery pursuant to the Fifth Amended Scheduling Order and is thus untimely. Plaintiff also objects to this Request on the grounds that propounding twenty-two new requests after representing to the Court that "document production is nearly complete" is improper and inappropriate, and Defendants are therefore estopped from propounding these requests. Plaintiff further objects to this Request on the grounds that it seeks documents not relevant to

the claims or defenses of any party. Plaintiff further objects to this Request on the grounds that

it is overly broad and unduly burdensome. Plaintiff also objects on the grounds that this

Request is duplicative of Defendants' document subpoena to the Rigas Family. Plaintiff

further objects to this Request to the extent it seeks the production of documents protected by

the attorney-client privilege, the attorney work-product doctrine or any other privilege.

**Request No. 20:**

    To the extent not already requested, the balance sheets and income statements on an
unrestated basis and a restated basis by cost center for every quarter for the years 1999 thru
2002 related to ADPR 000117800 thru ADPR 000117807.

**Response to Request No. 20:**

    Plaintiff objects to this Request on the grounds that the Request was made after the

close of fact discovery pursuant to the Fifth Amended Scheduling Order and is thus untimely.

Plaintiff also objects to this Request on the grounds that propounding twenty-two new requests

after representing to the Court that "document production is nearly complete" is improper and

inappropriate, and Defendants are therefore estopped from propounding these requests.

Plaintiff further objects to this Request on the grounds that it is vague, confusing, overly broad

and unduly burdensome. Plaintiff further objects to this Request on the grounds that it seeks

documents not relevant to the claims or defenses of any party.

**Request No. 21:**

    To the extent not already requested, all documents relating to any governmental
investigation concerning any alleged violations of federal and/or state tax laws allegedly
committed by Adelphia, the Rigas Family, the Rigas Family Entities and/or the Defendants in
the years 1999 or 2000.

**Response to Request No. 21:**

Plaintiff objects to this Request on the grounds that the Request was made after the close of fact discovery pursuant to the Fifth Amended Scheduling Order and is thus untimely. Plaintiff also objects to this Request on the grounds that propounding twenty-two new requests after representing to the Court that "document production is nearly complete" is improper and inappropriate, and Defendants are therefore estopped from propounding these requests. Plaintiff further objects to this Request on the grounds that it seeks documents not relevant to the claims or defenses of any party, except to the extent it seeks documents relevant to alleged violations of federal tax law or state tax law by the Defendants. Plaintiff further objects to this Request on the grounds that it is vague, confusing, overly broad and unduly burdensome. Plaintiff further objects to this Request to the extent it seeks the production of documents protected by the attorney-client privilege, the attorney work-product doctrine or any other privilege.

**Request No. 22:**

To the extent not already requested, Deloitte & Touche, LLP's work papers and correspondence related to the Transaction and/or Highland Prestige's alleged acquisition of Prestige Georgia.

**Response to Request No. 22:**

Plaintiff objects to this Request on the grounds that the Request was made after the close of fact discovery pursuant to the Fifth Amended Scheduling Order and is thus untimely. Plaintiff also objects to this Request on the grounds that propounding twenty-two new requests after representing to the Court that "document production is nearly complete" is improper and inappropriate, and Defendants are therefore estopped from propounding these requests.

20

Plaintiff further objects to this Request on the grounds that this Request calls for the production

of documents that are protected by a confidentiality agreement.  Subject to and without

waiving the foregoing General and Specific Objections, Plaintiff will produce documents

responsive to this Request, (i) if and when a new scheduling order is entered in this case

extending fact document discovery, and (ii) if any objections to production raised by Deloitte

and Touche are resolved.


Dated: June 23, 2008
       New York, New York


                              KASOWITZ, BENSON, TORRES
                              & FRIEDMAN LLP


                              David M. Friedman
                              Joseph A. Gershman
                              1633 Broadway
                              New York, New York 10019
                              (212) 506-1700
                              (212) 506-1800 (facsimile)
                              dfriedman@kasowitz.com
                              jgershman@kasowitz.com


                              *Counsel to Adelphia Recovery Trust*

21

# EXHIBIT "13"

**Winsberg, Harris B.**

| | |
|---|---|
| **From:** | Ernst, Douglas E. |
| **Sent:** | Tuesday, June 17, 2008 3:00 PM |
| **To:** | 'Joseph Gershman'; 'Jennifer Schwarz' |
| **Cc:** | Winsberg, Harris B.; Dailey, Sean P.; Smith, Yvonne R. |
| **Subject:** | Doc Production - Deloitte materials |

Hi Joe and Jen,

We would like to follow up with you by telephone regarding the ART's continuing and unexcused failure to produce the Deloitte materials and its failure to provide an explanation for its non-compliance.

Specifically, the Deloitte docs at issue are:

1. All summary judgment pleadings filed by ACC or the Rigas family.
2. ACC's expert reports, depo transcripts and exhibits.
3. Deloitte's expert depo transcripts and exhibits.

As you know we formally requested these docs a long time ago. We have followed up with letters and phone calls - explaining our request and reminding you of your client's responsibility to comply. Despite the passing of many months, however, we have not yet received a single doc from Adelphia.

We believe the parties should meet and discuss this matter in a last attempt to resolve any issues you may have.

Please let me know when you are available to discuss.

Thanks.

Doug

1

# EXHIBIT "14"

**Winsberg, Harris B.**

| | |
|---|---|
| **From:** | Ernst, Douglas E. |
| **Sent:** | Friday, June 20, 2008 3:02 PM |
| **To:** | 'Joseph Gershman'; 'Jennifer Schwarz' |
| **Cc:** | Winsberg, Harris B.; Dailey, Sean P.; Smith, Yvonne R. |
| **Subject:** | Results of today's meet and confer |

Hi Jen and Joe,

At the conclusion of our telephone conference this afternoon we agreed as follows:

1. I would respond to Teresa's May 8 letter, in writing, next week.

2. Also next week, the Art would produce to us all Deloitte summary judgment pleadings filed by ACC or the Rigas family.

3. The parties still disagree as to the production of the remaining Deloitte materials. Thus, we will submit a letter to Chambers indicating our desire to compel the production of the remaining docs listed in my 6/17/08 email. We will then move forward according to the Court's instruction.

4. We will send you a copy of the Deloitte correspondence consenting to the production of their expert's materials to us.

Thanks for your time.

Doug

# EXHIBIT "15"

# TROUTMAN SANDERS LLP

### ATTORNEYS AT LAW
#### A LIMITED LIABILITY PARTNERSHIP

BANK OF AMERICA PLAZA
600 PEACHTREE STREET, N.E. - SUITE 5200
ATLANTA, GEORGIA 30308-2216
www.troutmansanders.com
TELEPHONE: 404-885-3000
FACSIMILE: 404-885-3900

Douglas E. Ernst
douglas.ernst@troutmansanders.com

Direct Dial: 404-885-3334
Direct Fax: 404-962-6552

July 17, 2008

## VIA ELECTRONIC MAIL

Joseph A. Gershman
KASOWITZ, BENSON, TORRES & FRIEDMAN LLP
1633 Broadway
New York, NY 10019-6799

> RE: *Adelphia Recovery Trust v. Prestige Communications of NC, Inc. et al.*, Case No.
> <u>1:07-Civ-11152 (LMM) (S.D.N.Y.)</u>

Dear Joe:

I am writing to address two important issues.

First, we when we received the Deloitte summary judgment pleadings, we were surprised to discover that the documents you promised had been substantially redacted prior to copying. You made absolutely no mention of your intention to redact the pleadings before, during or after our June 20, 2008 conference call. We consider these documents to be very relevant to the case and, but for your representation during that call that you would provide them to us, we would have included them in the now pending motion to compel. I ask that you promptly honor our agreement and quickly provide unredacted versions of all summary judgment pleadings, including exhibits, filed in the Deloitte Litigation on behalf of Adelphia Communications Corporation and/or the Rigas Family.

Second, I have to express my dismay with your July 8, 2008 letter to Judge McKenna. With respect to the motions to compel the Deloitte materials, we never discussed stipulating to the results in the Bank case. Similarly, we have never discussed the prospect of mediation. Do you really think mediation is more likely to succeed if it is court-imposed versus consented to among the parties? Finally, your method of delivering the letter, with respect to me (and to Harris Winsberg), was obviously inappropriate. You hand delivered your letter to Judge McKenna on July 8, and yet you mailed our copies via U.S. Mail, which did not arrive until Monday, July 14. This was a violation of the Court's individual practices and was clearly

ATLANTA · HONG KONG · LONDON · NEW YORK · NEWARK · NORFOLK · RALEIGH
RICHMOND · SHANGHAI · TYSONS CORNER · VIRGINIA BEACH · WASHINGTON, D.C.

**TROUTMAN SANDERS LLP**
ATTORNEYS AT LAW
A LIMITED LIABILITY PARTNERSHIP

Joseph A. Gershman
July 17, 2008
Page 2

improper.  Please ensure that any and all future communications with the Court are simulatneously delivered to us.  Simultaneous notification is an important issue to us and we will likely feel compelled to take further action if this violation is repeated.

      As always, please feel free to call if you have any questions.

                              Sincerely,

                              Douglas E. Ernst

DEE:ys
cc:    Harris B. Winsberg (via email)
       Sean P. Dailey (via email)

# EXHIBIT "16"

KASOWITZ, BENSON, TORRES & FRIEDMAN LLP

1633 BROADWAY

NEW YORK, NEW YORK 10019-6799

212-506-1700

FACSIMILE: 212-506-1800

JOSEPH A. GERSHMAN
212-506-1774

ATLANTA
HOUSTON
NEWARK
SAN FRANCISCO

August 7, 2008

**VIA E-Mail and U.S. Mail**

Douglas E. Ernst
Troutman Sanders LLP
Bank of America Plaza, Suite 5200
600 Peachtree Street, N.E.
Atlanta, GA  30308

Re:     *Adelphia Recovery Trust v. Prestige Communications of NC, Inc., et al.,*
        Case No. 0711152 (S.D.N.Y.) (LMM)

Dear Doug:

I write in response to your letter dated July 17, 2008.

With respect to the summary judgment "pleadings", contrary to your accusation in fact no redactions were made by my firm prior to copying.  A sealing order governed the filing of summary judgment papers in the Deloitte litigation, and what was produced to you were the publicly filed summary judgment pleadings.  As to the unredacted versions of the summary judgments pleadings, the Trust has no objection to the production of the unredacted versions with one exception — to the extent that they contain discussions of our experts' opinions or the opinions themselves.  As the production of our experts opinions is the subject of a pending motion to compel before Judge McKenna, we agree to apply his ruling on that motion to the unredacted summary judgment pleadings as well.  John Higson has informed us that the Rigas Family does not object to production of the unredacted versions.  However, Deloitte has informed us that they do object to the production of exhibits in the summary judgment pleadings that Deloitte has designated confidential.  Should you wish to obtain the full, unredacted versions of the summary judgment pleadings (other than portions of those pleadings which contain discussions of our experts opinions or the opinions themselves), feel free to take this issue up with Cravath directly.  If Cravath authorizes us, in writing, to produce complete, unredacted versions of the summary judgment pleadings from the Deloitte case, we will do so (other than portions of those pleadings which contain discussions of our experts opinions or the opinions themselves).  Moreover, putting aside your inaccurate allegations that we redacted the summary judgment "pleadings" prior to copying, I am surprised that you were surprised that there were confidentiality issues with respect to the summary

KASOWITZ, BENSON, TORRES & FRIEDMAN LLP

judgment "pleadings", as we have repeatedly notified you of the confidentiality agreement in the Deloitte case in our objections, and have repeatedly told you that we would respect our obligations under that agreement.

With respect to our July 8 letter, with respect to stipulating to the results in the Bank case, we discussed your joining in the motion that had already been filed in the Bank litigation — I'm not sure what more can be said on this issue, or how we could have made it clearer for you. With respect to mediation, we suggested the court appoint a mediator for purposes of discovery disputes. I don't have a strong view on whether a mediator of discovery issues is more or less likely to succeed if court-imposed or agreed to by the parties. Moreover, it is curious that you appear to feel strongly that we should have discussed the appointment of a discovery mediator with you before proposing it to the Court in light of Harris's suggestion to Judge Morris that she appoint a special master for discovery — which he made without first discussing it with us.

Sincerely yours,

Joseph A. Gershman

cc:    David M. Friedman, Esq.